IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WI-LAN INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 15-379 (LPS) |
| | ) | |
| SHARP ELECTRONICS CORPORATION, | ) | REDACTED -- PUBLIC VERSION |
| | ) | |
| Defendant. | ) | |
| | ) | |
| WI-LAN INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 15-788 (LPS) |
| | ) | |
| VIZIO, INC., | ) | REDACTED -- PUBLIC VERSION |
| | ) | |
| Defendant. | ) | |

**DEFENDANTS' ANSWERING BRIEF IN OPPOSITION TO
WI-LAN'S MOTION TO EXCLUDE THE INFRINGEMENT
AND VALIDITY REPORTS OF CLIFFORD READER**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Stephen J. Kraftschik (#5623)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat.com
skraftschik@mnat.com

*Attorneys for Sharp Electronics Corporation*

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Pilar G. Kraman (#5199)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 576-3586
pkraman@ycst.com

*Attorneys for VIZIO, Inc.*

November 9, 2018

## **TABLE OF CONTENTS**

Page(s)

TABLE OF AUTHORITIES ................................................................................. ii

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ....................................................1

II.     STATEMENT OF FACTS ...................................................................................1

III.    DR. READER APPLIED THE COURT'S CLAIM CONSTRUCTIONS ...........................1

        A.      Dr. Reader Consistently Applied The Court's Claim Constructions For
                Both His Non-Infringement And Invalidity Analysis...............................1

                1.      Dr. Reader applied the Court's construction for "respective
                        buffers" .......**REDACTED -- PUBLIC VERSION** ........................2

                2.      Dr. Reader applied the Court's construction for "scaling"........................4

                3.      Wi-LAN's remaining criticisms do not show any
                        inconsistencies ...............................................................5

        B.      It Was Proper For Dr. Reader To Take Alternative Invalidity Positions
                By Applying The Court's Claim Constructions As Wi-LAN Applies
                Them For Infringement......................................................................7

IV.     DR. READER'S OPINIONS ARE HIS OWN AND PROPER.........................................8

        A.      Dr. Reader's Opinions Are Based On His Independent Analysis Of
                The Source Code...............................................................................9

        B.      Wi-LAN's Remaining Criticisms Of Dr. Reader's Source Code
                Analysis At Best Go To The Weight And Credibility Of His Opinions ..............14

V.      DR. READER'S OPINIONS REGARDING NON-INFRINGING ALTERNATIVES ARE
        PROPER ......................................................................................................15

VI.     DR. READER'S OPINIONS REGARDING INVALIDITY BASED ON §§ 101 AND 112
        ARE PROPER ...............................................................................................16

VII.    CONCLUSION...............................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acumed LLC v .Stryker Corp.*,
  483 F.3d 800 (Fed. Cir. 2007)................................................................................6

*Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*,
  672 F.3d 1335 (Fed. Cir. 2012)...........................................................................16

*Berkheimer v HP, Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018)...........................................................................17

*Bray & Gillespie Management LLC v. Lexington Ins. Co.*,
  2009 WL 1043974 (M.D. Fl. Apr. 17, 2009).................................................13, 14

*Carucel Investments, L.P. v. Novatel Wireless, Inc.*,
  2017 WL 6946641 (S.D. Cal. Mar. 2, 2017) ..........................................................8

*Cradle IP v. Texas Instruments*,
  5 F. Supp. 3d 626 (D. Del. 2013)..........................................................................18

*DL v. D.C.*,
  730 F. Supp. 2d 78 (D.D.C. 2010) ..........................................................................9

*EMC Corp. v. Pure Storage, Inc.*,
  154 F. Supp. 3d 81 (D. Del. 2016)........................................................................13

*Everlight Elecs. Co. v. Nichia Corp.*,
  2014 WL 4707053 (E.D. Mich. Sept. 22, 2014).......................................................6

*Exelis Inc. v. Cellco P'ship*,
  2012 WL 6043494 (D. Del. Nov. 6, 2012) ..............................................................8

*In re Tylenol*,
  2016 WL 4005765 (E.D. Pa. 2016) .......................................................................16

*Intel Corp. v. Future Link Sys., LLC*,
  268 F. Supp. 3d 605 (D. Del. 2017)........................................................................8

*Lowery v. Circuit City Stores, Inc.*,
  158 F.3d 742 (4th Cir. 1998) ...............................................................................13

*Masimo Corp. v. Philips Elec. N. Am. Corp.*,
  2014 WL 4246579 (D. Del. Aug. 27, 2014) ..........................................................13

*McReynolds v. Sodexho Marriott Servs., Inc.*,
  349 F. Supp. 2d 30 (D.D.C. 2004) ..........................................................................9

*Monsanto Co. v. David*,
    516 F.3d 1009 (Fed. Cir. 2008)............................................................................9

*Peters v. Active Mfg. Co.*,
    129 U.S. 530 (1889)...................................................................................15

*Pineda v. Ford Motor Co.*,
    520 F.3d 237 (3d Cir. 2008)........................................................................14, 15

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l*,
    763 F. Supp. 2d 671 (D. Del. 2010)................................................................6

*SRI v. Internet Security*,
    C.A. No. 04-1199-SLR, D.I. 718 (D. Del. Oct. 31, 2011)....................................16

*Tarkus Imaging, Inc. v. Adobe Sys., Inc.*,
    2012 WL 12904235 (D. Del. June 14, 2012)......................................................12

*Walker v. Gordon*,
    46 F. App'x 691 (3d Cir. 2002) ....................................................................12

**Rules and Statutes**

Fed. R. Civ. P. 26........................................................................................12

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

Wi-LAN's motion to exclude non-infringement and invalidity opinions of Defendants' technical expert, Dr. Clifford Reader, should be denied. As the Court has already concluded, there is no support for Wi-LAN's argument that Dr. Reader "misapplied" the Court's claim constructions. D.I. 439.[1] Wi-LAN's arguments here merely recycle its already-rejected motion to strike. In truth, it is Wi-LAN, not Dr. Reader, who seeks to disregard the Court's constructions and re-litigate claim construction. Having lost nearly every claim construction dispute, Wi-LAN has presented inconsistent theories between infringement and validity, and yet seeks to limit Dr. Reader from taking alternative positions in response. It is perfectly acceptable, and indeed commonplace, for an expert to take alternative positions between non-infringement and invalidity.

Wi-LAN also takes issue with Dr. Reader's source code analysis, and erroneously faults him for being assisted by a junior consultant. Dr. Reader repeatedly explained that the technical analysis and opinions in his non-infringement rebuttal report are his and his alone. Wi-LAN's criticisms at best go to the weight and credibility of Dr. Reader's opinions, and are issues for cross-examination, not reasons for exclusion of portions of his technical analysis.

## II.   STATEMENT OF FACTS

The relevant facts are set forth below in conjunction with Defendants' arguments.

## III.   DR. READER APPLIED THE COURT'S CLAIM CONSTRUCTIONS

### A.   Dr. Reader Consistently Applied The Court's Claim Constructions For Both His Non-Infringement And Invalidity Analysis

Wi-LAN (again) argues that Dr. Reader did not follow the Court's constructions. Wi-LAN previously raised this argument in a motion to strike the same rebuttal report at issue here. D.I. 391.

---

[1]   All citations are to *Wi-LAN, Inc. v. Sharp Electronics Corp.*, 15-cv-379-LPS, unless otherwise noted, and are equally applicable to filings and reports in *Wi-LAN, Inc. v. VIZIO, Inc.*, 15-cv-788. Citations to numbered exhibits refer to Defendants' exhibits filed in support of their opening and answering briefs, and lettered exhibits refer to exhibits filed with Wi-LAN's briefs.

Previously, Wi-LAN argued that Dr. Reader's analysis was at odds with the Court's constructions of the terms "respective buffers" and "scaling." *Id.* The Court, however, denied Wi-LAN's motion and held that "Dr. Reader's opinions with respect to 'respective buffers' and 'scaling' are not inconsistent with the Court's Claim Construction Order." D.I. 439. The futility of Wi-LAN's position was clear even without the benefit of expert depositions. Now, with a more complete record, it is even more apparent that W-LAN's criticisms of Dr. Reader's analysis are misguided. There is no basis for Wi-LAN's request for reconsideration of the Court's conclusion.

Dr. Reader has consistently and repeatedly confirmed that he followed the Court's claim constructions throughout his non-infringement and invalidity reports:



Ex. 73 (Reader Tr.) at 168; *see also id.* at 205-6 ████████████████████████████████ ██████████████████████████████████), 485-86 █████████████████████████████████ ████████████████████████████████████████████████████████████████████████████); D.I. 421, Ex. C ¶¶ 219-20 (same), Ex. D ¶ 154 (same). Wi-LAN has not (and cannot) point to any evidence that Dr. Reader did not apply the Court's constructions.

### 1. Dr. Reader applied the Court's construction for "respective buffers"

As Defendants explained in their motion for summary judgment of non-infringement, Wi-LAN's infringement theory depends on Wi-LAN's rejected construction that the claimed "respective buffers" require only "a first and second memory space" and that a single buffer with separate memory spaces is sufficient. D.I. 418 at 18-22; *see also* D.I. 272, 2/26/18 Tr. at 29:20-22 (Wi-LAN: "Our position is you don't need two separate buffers with two memories in them. You actually can have one buffer with enough memory to store both fields in them."); D.I. 280 at 7. However, the

Court agreed with Defendants that "the patent teaches there ***must be two distinct buffers*** for each of the two fields in the pair of fields," and thus claims "completely separate buffers, rather than just separate memory spaces in a single buffer." D.I. 280 at 7-8.

Following the Court's construction, Dr. Reader opines that ███████████████████ Wi-LAN points to do not meet the Court's construction of "respective buffers." D.I. 421, Ex. D (Reader Rebuttal Rpt.) ¶¶ 193-96. Wi-LAN contends that Dr. Reader's analysis depends upon adding limitations not found in the claim language or the Court's construction for "respective buffers." As the Court recently recognized, this is incorrect. D.I. 439.

Nevertheless, Wi-LAN continues to argue that Dr. Reader opines that "respective buffers" requires ████████████████ *See* D.I. 420 at 11, 7. Wi-LAN has yet to provide a single citation to any part of Dr. Reader's analysis where he states that the claimed buffers must be ████ ██████████████. Rather, during deposition Dr. Reader testified that ████████████████ ████████████████████. Ex. 73 at 488, 497-98. Dr. Reader has consistently explained that the specific evidence Wi-LAN points to does not show that ███████████ ██████████████

████████████████████████████

████████████████████████████

████████████████████████████

████████████████

*Id.* at 497-98; *see also id.* at 271, 488. Thus, for certain MediaTek SoCs, for example, Dr. Reader explains that ██████████████████████████ ███████████ and that ███████████████████████ ██████████████████████████ D.I. 421, Ex. D ¶ 203. This is precisely what the Court held: "***a single buffer***, despite having sufficient memory space to store both fields separately without overlap, ***is not covered by the patent***." D.I. 280 at 7.

- 3 -

Similarly, to try to salvage its ███████ theory, Wi-LAN argues that Dr. Reader imports

two additional limitations into claim 1 such that the term "respective buffers" requires ███████

███████████████████████████████████████████████████████████

███████████████ D.I. 420 at 7. Wi-LAN's complaints are yet another attempt at

rearguing its rejected construction, which omitted requirements found expressly in the plain claim

language—that the respective buffers capture "*fields*," and that the *same* buffer cannot be used to

capture *both* the first and second fields. As Wi-LAN is well aware, the ███████ it relies upon do

not meet these requirements. It is undisputed that these ███████ do not capture *fields*, but instead

only store portions of a field at a time. Ex. 71 (Mirel Tr.) at 215 (███████████████

███████████████████████████████████████████████████████████

███████████). It is also undisputed that ███████████████████████████

███████████████████████████████████████. *Id.* at 217, 238. Hence, Dr.

Reader explained that ███████████████████████████████████████

███████████████████████████████████████ D.I. 421,

Ex. D ¶ 196.

### 2.   Dr. Reader applied the Court's construction for "scaling"

As with the "respective buffers" limitation, Wi-LAN's criticism of Dr. Reader's "scaling"

analysis has already been rejected. D.I. 439. Rather than Dr. Reader misapplying the Court's

construction, it is Wi-LAN that refuses to accept the Court's ruling. The Court construed "scaling" to

require "changing the vertical resolution by changing by a constant factor the number of lines and/or

pixels in a field." D.I. 280 at 8-10. In so doing, the Court agreed with Defendants that claim 1(b)

"requires an actual *change* in *vertical* resolution" to "ensure that claim limitation (b) is not

eviscerated." *Id.* at 10 (emphasis in original).

Wi-LAN (again) accuses Dr. Reader of "inject[ing] an additional limitation" into the Court's construction. D.I. 420 at 4. But it is Wi-LAN who attempts to read out from the Court's construction that "scaling" requires, *inter alia*, "changing the vertical resolution." In contrast to the Court's actual construction, Wi-LAN asserts that "scaling" is met merely by ███████████████████ ██████████████████ D.I. 382 (stating that █████████████████████████ ██████████████████████); Ex. 2 (6/15/18 Mirel Rpt.) ¶ 181. But the Court unequivocally agreed with Defendants that "scaling" also requires a change in vertical resolution to avoid eviscerating the claim language. D.I. 280 at 9-10.

As Defendants explained in their motion for summary judgment of non-infringement, it is undisputed that doubling the number of lines does ***not*** double the vertical resolution, as taught by *Keith Jack* and the '654 patent. D.I. 418 at 22-25; *see also* Ex. 42 (*Keith Jack*) at 333; Ex. 1, '654 patent at 2:26-30. And Dr. Reader confirmed that his analysis was consistent those teachings:



Ex. 73 at 328-29. Applying the Court's construction, the accused televisions do not perform the claimed "scaling" step.

### 3.    Wi-LAN's remaining criticisms do not show any inconsistencies

Wi-LAN further faults Dr. Reader's analysis for each and every remaining limitation of claim 1. *See* D.I. 420 at 6-7. Wi-LAN does not (and cannot) identify any evidence that shows Dr. Reader's analysis runs afoul of the Court's constructions or the plain language of the asserted claims.

Wi-LAN assumes, incorrectly, that because Defendants' expert disagrees with Wi-LAN's expert, Defendants' expert must be misapplying the claim language. The Court has rejected this erroneous line of reasoning before, and should do so here. For example, in *Power Integrations, Inc. v. Fairchild Semiconductor Int'l*, the Court refused to strike portions of an expert's report because the expert testified he had relied on the Court's constructions, and the "implications of the Court's constructions are matters on which the parties' experts may opine, and may disagree." 763 F. Supp. 2d 671, 695 (D. Del. 2010). The Court further explained that the expert's conclusions are more appropriately challenged through cross-examination at trial. *Id.*; *see also Everlight Elecs. Co. v. Nichia Corp.*, 2014 WL 4707053, at *8 (E.D. Mich. Sept. 22, 2014) ("Here, [defendant] merely disagrees with [plaintiff's expert's] application of the Court's claim construction …. Such challenges are a matter for the jury during cross examination."). Wi-LAN's argument that *Defendants* are attempting a "do over" on claim construction has no support in the record (and is belied by common sense), and the authority Wi-LAN relies upon is inapposite.

Notably, Wi-LAN has yet to identify any instance where Dr. Reader does not follow the Court's constructions or the plain claim language. For instance, the parties agreed that "adjusting" requires "vertically repositioning." D.I. 280 at 10. Dr. Reader opines that the accused televisions do not perform "adjusting" because they do not "vertically reposition" one of the first field or second fields of a pair of fields. Wi-LAN may disagree with Dr. Reader, but it cannot show that Dr. Reader did not follow the Court's construction. Nor can Wi-LAN now manufacture a claim construction dispute merely because it disagrees with Dr. Reader's application of the Court's constructions. *See Acumed LLC v .Stryker Corp.*, 483 F.3d 800, 806 (Fed. Cir. 2007) (explaining that "a sound claim construction need not always purge every shred of ambiguity" and that "[t]he resolution of some line-drawing problems … is properly left to the trier of fact").

Similarly, for terms the Court did not construe, Wi-LAN has not identified a single instance where Dr. Reader did not apply the plain and ordinary meaning of such terms in his analysis. For example, claim 1 defines the specific interlaced format used in the claimed method, where each "pair of fields" is vertically offset relative to each other. It is undisputed the accused products do not support interlaced video formats with a vertical offset between the "pairs of fields," as required by claim 1. *See* Ex. 71 at 303 (admitting ████████████████████████████ ████████████████).Wi-LAN cannot ask the Court to strike Dr. Reader's opinions where they are firmly rooted in the plain meaning of the words of the claim. Likewise, claim 1 requires displaying "***the*** first field" and "***the*** second field" of each pair of fields. '654 patent, claim 1(d), (e). The "first field" and "second field" in these steps derive antecedent basis from step (a), which requires "capturing a first field and a second field..." '654 patent, claim 1(a). Consistent with the claim language, Dr. Reader opines the accused televisions do not perform steps (d) and (e) because ██████ ████████████████████████████████████████████████ ██████████████. D.I. 420, Ex. D ¶¶ 463, 465. This analysis is sound—not improper.

**B.     It Was Proper For Dr. Reader To Take Alternative Invalidity Positions By Applying The Court's Claim Constructions As Wi-LAN Applies Them For Infringement**

As explained above, Dr. Reader repeatedly confirmed that he applied the same claim constructions—this Court's constructions—across all his reports in this case. Ex. 73 at 168; *see also id.* at 205-6, 485-86; D.I. 421, Ex. C ¶¶ 219-20, Ex. D ¶ 154. Wi-LAN criticizes Dr. Reader for taking ***alternative*** positions between non-infringement and invalidity, based on Wi-LAN's inconsistent theories. But Dr. Reader is certainly permitted to apply the construed claims to the prior art as Wi-LAN applies the construed claims to the accused products, and that is precisely what Dr, Reader explained he did:



Ex. 73 at 171-72.

Dr. Reader's approach is identical to the approach taken by the expert, and approved by this Court, in *Intel Corp. v. Future Link Sys., LLC*, 268 F. Supp. 3d 605, 621 (D. Del. 2017). There, the expert provided an alternative invalidity analysis based on the "the assumption … that [plaintiff's] infringement allegations are proven correct." *Id.* The Court approved, explaining that offering such alternative opinions was not a basis to strike an expert's opinions. *Id.*; *see also id.* at 614 ("alterative arguments, and arguments analyzed under an opposing party's interpretation of the claims, are permissible"); *Exelis Inc. v. Cellco P'ship*, 2012 WL 6043494, at *15 (D. Del. Nov. 6, 2012) ("Defendants offer [their expert's] analysis of prior art as an alternative theory of invalidity…. The Court finds nothing improper in Defendants' approach."); *Carucel Investments, L.P. v. Novatel Wireless, Inc.*, 2017 WL 6946641, at *3 (S.D. Cal. Mar. 2, 2017) (same).

## IV. DR. READER'S OPINIONS ARE HIS OWN AND PROPER

Wi-LAN further seeks to exclude portions of Dr. Reader's opinions because Dr. Reader had assistance from a junior consultant, Mr. Walter Overby, in reviewing source code. D.I. 420 at 11-15. Wi-LAN's suggestion that Mr. Overby's assistance was somehow improper is wrong and plainly contradicted by the record. Wi-LAN's remaining criticisms of Dr. Reader's source code review and analysis are equally misguided and, at best, go to the weight and credibility of Dr. Reader's opinions,

not wholesale exclusion of these portions of his detailed technical analysis.

**A.      Dr. Reader's Opinions Are Based On His Independent Analysis Of The Source Code**

It is well-settled that an expert may rely on assistants to perform analysis under the expert's direction or supervision. *Monsanto Co. v. David*, 516 F.3d 1009, 1015-16 (Fed. Cir. 2008) (finding it proper for expert to form opinions based on test reports prepared by expert's team); *McReynolds v. Sodexho Marriott Servs., Inc.*, 349 F. Supp. 2d 30, 36-37 (D.D.C. 2004) (expert could form opinions based on data generated by computer code that expert designed but was actually written by assistant); *DL v. D.C.*, 730 F. Supp. 2d 78, 82 (D.D.C. 2010) (finding it proper for expert to have a computer programmer assistant help write computer code and carry out analyses). In none of these cases (or any cited by Wi-LAN) did the court hold that it was impermissible for an expert to have another provide assistance at the expert's own direction.



Dr. Reader made clear that █████████████████████████████████████████████████████████████████ D.I. 421, Ex. D ¶¶ 5, 18. Dr. Reader also confirmed that ████████████████████████████████████████████████████████████████████████: ████████████

Ex. 73 at 86.

Contrary to Wi-LAN's mischaracterizations, Dr. Reader testified that ██████████████████. Indeed, Dr. Reader explained that ██████████████████████████████████████████████:



Ex. 73 at 127-28. Nor is there any doubt that Dr. Reader then ████████████████████ ██████████████████:

Id. at 145-46, 485 ██████████████████████████████████).

This was further confirmed by the fact that ████████████████████████████████ ███. Id. at 136 (██████████████████████████████").

The specific portions of Dr. Reader's report that Wi-LAN seeks to strike are not based on any opinion or judgment exercised by Mr. Overby. Wi-LAN specifically takes issue with paragraphs of Dr. Reader's report where he states that ████████████████████ (████████ ███████████████████████). See D.I. 420 at 12-13 (citing Ex. D ¶¶ 197, 208, 218, 231, 240, 251, 258, 263, 276, 289, 304, 317, 329, 345, 358, 371, 467, 470, 473, 476, 479, 482, 485, 488). But nowhere did Dr. Reader testify that he asked for Mr. Overby's opinion as to ██████████████████████. The mere fact that Mr. Overby helped confirm ███████████████████████████████████████. See Ex. 73 at 128 ("█████████

██████ ), 485 ███████████████████████████████ ").

Moreover, the fact the SoC manufacturers did not ██████████████████████ ████████████████████. Wi-LAN's own expert admitted ████████ ████████████████████████████████████████████████. Ex. 71 at 311-12; *see also id.* at 47-48, 85 (admitting ██████████████████████ ████████████████████ ). The SoC manufacturers have themselves confirmed █████████ ████████████████████████████. *See* Ex. 34 (6/6/18 Chang Decl.) ¶¶ 5-8 (MediaTek); Ex. 39 (6/22/18 Y.S. Lin Decl.) ¶¶ 5-6 (MStar); Ex. 37 (6/6/18 M. Ignaszewski Decl.) ¶¶ 5-8 (Sigma). Wi-LAN's attempt to exclude Dr. Reader's testimony regarding ████████████████ should be seen for what it is—an attempt to hide Wi-LAN's own failure to obtain and analyze evidence it needed to show infringement.

Wi-LAN's criticism that Dr. Reader did not review "all" of the ████ code made available by the SoC manufacturers is also off-target. The SoC manufacturers made certain code available for inspection on source code review computers, but the parties ultimately chose to have only a portion of this code produced in hard-copy form. It is this printed code that Wi-LAN's expert cites in his analysis, and there is no question that Dr. Reader reviewed and relied upon this same code:



*Id.* at 484. In providing a ***rebuttal*** analysis to Wi-LAN's infringement allegations, it was completely appropriate for Dr. Reader to focus his review on the code potentially relevant to this case—the code Wi-LAN itself identified as alleged evidence of infringement. Indeed, experts are granted wide

latitude in determining what data is needed to reach a conclusion, and questions as to the sufficiency of an expert's factual basis are issues of weight and credibility generally left to the jury. *Walker v. Gordon*, 46 F. App'x 691, 695-96 (3d Cir. 2002); *see also Tarkus Imaging, Inc. v. Adobe Sys., Inc.*, 2012 WL 12904235, at *1 (D. Del. June 14, 2012) (holding that potential "deficiencies in [expert's] analysis or ability to understand the source code are issues of weight and credibility—to be determined by the jury—rather than admissibility.").

Wi-LAN's argument that it was somehow deprived of meaningful cross-examination under Rule 26 given Mr. Overby's involvement is not credible. Dr. Reader disclosed all the underlying facts and data (including the source code) that he relied upon in forming his opinions contained in his reports. Ex. 69 (Reader Rebuttal Rpt.) ¶¶ 18-19; Ex. 59 (Reader Materials Considered). Throughout his non-infringement analysis, Dr. Reader provides detailed descriptions of the ▆▆ code, accompanied by pin-point citations to specific pages and lines of code, along with other technical documentation produced by the SoC manufacturers. *See* D.I. 421, Ex. D. Wi-LAN then deposed Dr. Reader for sixteen hours over two days, and cannot claim it did not have a meaningful opportunity to inquire about his opinions or the bases underlying those opinions.

Of course, the fact that Mr. Overby assisted Dr. Reader as described above does not somehow grant Wi-LAN the right to take discovery from Mr. Overby. Mr. Overby is Defendants' ***non-testifying*** consultant,[2] and under Rule 26(b)(4)(D), Wi-LAN is not entitled to discovery from a non-testifying expert unless it can show "exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means." Fed. R. Civ. P. 26. Wi-LAN has not established (nor can it) that exceptional circumstances exist here so as to necessitate deposition of Mr. Overby. As detailed above, Mr. Overby was acting under Dr. Reader's direction,

---

[2]    Mr. Overby's identity as Defendants' technical consultant was disclosed to Wi-LAN on October 3, 2017, long before Dr. Reader served his expert report. Ex. 76.

and provided no independent analysis that Dr. Reader relied upon for the opinions in his reports. Wi-LAN has already obtained ample discovery into Dr. Reader's methods and opinions from Dr. Reader himself. *See Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 765 (4th Cir. 1998) (upholding district court's denial of discovery of plaintiff's non-testifying consultants because the testifying expert "submitted a detailed expert report" and defendants were able to "thoroughly examine" the expert), *vacated on other grounds by* 527 U.S. 1031 (1999).[3] Wi-LAN's own experts testified as having received assistance, as is commonly the case when experts seek to work efficiently. *See, e.g.*, Ex. 74 at 73 (describing ██████████████████████████████████████); Ex. 71 at 451-54 (referring to ██████████████████████").

Finally, the authority Wi-LAN relies upon in its motion is readily distinguishable. In *EMC Corp. v. Pure Storage, Inc.*, the testifying expert relied solely on conversations with other lay and expert witnesses to obtain certain facts necessary to support her opinions. 154 F. Supp. 3d 81, 115-16 (D. Del. 2016). As explained above, Dr. Reader did not rely at all on any independent analysis from Mr. Overby to form his opinions. Here, both parties' testifying experts based their opinions on the same underlying data, *i.e.*, source code produced by the SoC manufacturers. Moreover, in *EMC*, the Court did not strike the testifying expert's opinions, contrary to Wi-LAN's misleading citation. In *Bray & Gillespie Management LLC v. Lexington Ins. Co.*, the expert refused to *identify* the individuals interviewed and consulted, even after a specific admonition by the court to do so. 2009 WL 1043974, at *4 (M.D. Fl. Apr. 17, 2009). The expert in *Bray* also failed to disclose all data "upon which [the expert] *relied* to support its programming opinions and the basis and reasons for

---

[3]   Wi-LAN's complaint regarding prior conversations Dr. Reader had with MediaTek engineers is similarly flawed, as Dr. Reader expressly references declarations from MediaTek engineers in his report. Regardless, Dr. Reader's deposition testimony forms part of his overall opinions disclosed to Wi-LAN before trial. *See, e.g., Masimo Corp. v. Philips Elec. N. Am. Corp.*, 2014 WL 4246579, at *1 (D. Del. Aug. 27, 2014) (disclosed expert testimony "include[s] anything that was disclosed by an expert in any expert report, any expert declaration and/or any expert deposition testimony").

those opinions." *Id.* at *5. But these extraordinary facts are simply not present here. Dr. Reader did

not rely on any undisclosed information to form his opinions, and he readily answered all of Wi-

LAN's questions about Mr. Overby's assistance.

### B. Wi-LAN's Remaining Criticisms Of Dr. Reader's Source Code Analysis At Best Go To The Weight And Credibility Of His Opinions

Wi-LAN's insinuation that Dr. Reader is not qualified to provide the technical opinions in his

reports is meritless. Dr. Reader has over ***forty years*** of experience with digital video, including

algorithm design, system design, and semiconductor chip design. Ex. 61 (Reader CV) at 1.

Currently, Dr. Reader provides technical consulting services to dozens of industry leaders in the

fields of digital imaging and digital video, including video system and chip architecture. *Id.* at 2.

Prior to his consulting work, Dr. Reader led design teams at companies such as Cypress

Semiconductor and Samsung Semiconductor, developing products for digital televisions, including

chips for deinterlacing video in televisions and DVD players. *Id.* at 3; Ex. 69 ¶¶ 15-16; *see also* Ex.

73 (Reader Tr.) at 76 (describing development of deinterlacing algorithm). Over the course of his

career, he has authored over twenty technical papers, two book chapters, and has patents in digital

video processing, display, and compression.

Wi-LAN's suggestion that Dr. Reader is not qualified to analyze and opine on the ▮▮▮ code

at issue in this case is wholly unsupported by the record. Dr. Reader explained to Wi-LAN that he

had significant experience in reviewing and analyzing ▮▮▮ code:



Ex. 73 at 71; *see also id.* at 72-73 (testifying he led engineering teams designing SoCs). In fact, the

sole case cited by Wi-LAN supports Defendants. In *Pineda v. Ford Motor Co.*, which involved an

auto-related accident, the district court determined that "the only permissible expert was a 'warnings

- 14 -

expert,'" and precluded plaintiff's expert because he was not one. 520 F.3d 237, 244-45 (3d Cir. 2008). The appellate court, however, reversed because the expert had significant "expertise in the stresses and other forces that might cause a material such as glass to fail," and thus could offer relevant opinions. *Id.* at 245 (holding he "should have been qualified as an expert even though he may not have been the 'best qualified' expert or did not have the 'specialization' that the District Court deemed necessary."). Here, the record demonstrates that Dr. Reader is clearly qualified to analyze ██ code used to manufacture SoCs and offer his opinions on whether the accused televisions perform the claimed methods of the '654 patent.

## V.    DR. READER'S OPINIONS REGARDING NON-INFRINGING ALTERNATIVES ARE PROPER

Wi-LAN's argument that "Defendants failed to carry their burden" on two non-infringing alternatives (D.I. 420 at 15) is a misplaced summary judgment argument that has no merit.

*First*, Wi-LAN incorrectly argues that Dr. Reader was unable to state that the non-infringing alternative of "advanced field merging as taught by Keith Jack" does not infringe. *Keith Jack* was published several years before the priority date of the '654 patent and is cited extensively therein. It is fundamental that the advanced field merging techniques taught by *Keith Jack* (Ex. 42 at 333-34) cannot infringe, as "that which infringes, if later, would anticipate, if earlier." *Peters v. Active Mfg. Co.*, 129 U.S. 530, 537 (1889). Even Wi-LAN's own expert did not (and cannot) claim they would infringe, as field merging involves combining both fields into a single frame, rather than performing operations on each field. *See, e.g.*, '654 patent, claim 1(b) ("scaling each of the first field and second field…"). When asked if *Keith Jack*'s advanced field merging techniques infringe the '654 patent, Dr. Reader repeatedly explained that field merging is a technique unrelated to the asserted claims. *See, e.g.*, Ex. 73 at 403 ██████████████████████████████ ██████████████████████████████████████████████████████."), 400 ██████████████████████████████████████

██████."), 402-5 (████████████████████████████). Wi-LAN ignores this testimony and instead cites to an out-of-context passage where Wi-LAN's counsel sought to keep Dr. Reader from reviewing his own report. D.I. 420 at 16-17.

*Second*, Wi-LAN argues that unaccused SoCs may not be "non-infringing." However, there are over 100 televisions that Wi-LAN initially accused of infringement in this case, but then failed to obtain any evidence of infringement. Ex. 71 at 485-87 (████████████████████████████████ ████████████████████████████). These formerly accused products include ████████████████████████████, and Wi-LAN cannot now say that they infringe. *See Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1341-42 (Fed. Cir. 2012) (barring claims under res judicata). Such unaccused products are commonly considered to be non-infringing alternatives. *See, e.g.*, *SRI v. Internet Security*, C.A. No. 04-1199-SLR, D.I. 718, at *3 (D. Del. Oct. 31, 2011) ("Generally, noninfringing alternatives include any products found to be noninfringing or products not accused of infringement."). Wi-LAN's suggestion that Dr. Reader's opinions are not amenable to testing, and its citation to *In re Tylenol*, are misplaced. In that case, an expert opined that Tylenol was the cause of liver damage, and the court found the expert qualified to opine on causation and that his opinions were appropriate. 2016 WL 4005765 (E.D. Pa. 2016). Dr. Reader is likewise a highly qualified expert, and his opinions supporting the availability of non-infringing alternatives are set forth in his report. Wi-LAN's expert purported to rebut these opinions without issue.

## VI. DR. READER'S OPINIONS REGARDING INVALIDITY BASED ON §§ 101 AND 112 ARE PROPER

Wi-LAN argues that Dr. Reader's § 101 and § 112 opinions are improper, but Wi-LAN's arguments are void of substance and unsupported by the record. The Court should not strike Dr. Reader's analysis regarding these significant invalidity issues, contested throughout discovery.

Wi-LAN first suggests that because patent eligibility is a legal issue, Dr. Reader's opinions are unnecessary. D.I. 420 at 16. Wi-LAN appears to ignore recent Federal Circuit precedent confirming the factual nature of the § 101 analysis. *See, e.g.*, *Berkheimer v HP, Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018) ("Whether something is well-understood, routine, and conventional to a skilled artisan at the time of the patent is a factual determination."). Wi-LAN then disparages Dr. Reader's § 101 analysis as "conclusory," "*ipse dixit*," and "circular." Dr. Reader, however, supported his analysis by expressly citing several key sources, including the '654 patent, *Keith Jack*, and the testimony of the named inventors, and further relied on his own extensive experience working with deinterlacing systems at the relevant time. Ex. 60 ¶¶ 229-33; Ex. 70 ¶¶ 39-44.

Wi-LAN's expert did not dispute the vast majority of Dr. Reader's § 101 analysis, and opined only that the "adjusting step" of claim 1(c) provides an inventive concept. Ex. 70 ¶¶ 39-44. As Dr. Reader explained in his reply report, Wi-LAN's expert did not even dispute Dr. Reader's opinions that the claimed steps "reduce to mathematical operations performed by generic computer components" and are merely directed to converting data from one format (interlaced) to another format (non-interlaced) for display. Ex. 70 ¶ 41; Ex. 60 ¶¶ 222-23. Should Wi-LAN reverse course and decide to challenge Dr. Reader's analysis, Wi-LAN had a full opportunity to cross-examine Dr. Reader at deposition, and would likewise have a full opportunity to cross-examine him at trial.

Dr. Reader also analyzed the lack of written description support for the "concurrently" limitation, eventually added to claim 1 via amendment late in prosecution to attempt to overcome prior art. Ex. 60 ¶¶ 238-245; Ex. 70 ¶¶ 45-61. Wi-LAN plainly mischaracterizes Dr. Reader's opinions when it argues that Dr. Reader's written description analysis is limited to him stating that "concurrently" is not recited in the specification. D.I. 420 at 17. It is true that "concurrently" is not recited in the specification, but Dr. Reader also analyzed the entirety of the provisional application,

- 17 -

non-provisional application, file history, and inventor deposition testimony, and specifically rebutted each of Mr. Tanner's misstatements, to conclude that there is insufficient written description support for the limitation. Ex. 60 ¶¶ 238-245; Ex. 70 ¶¶ 45-61. Wi-LAN ignores Dr. Reader's analysis, and instead argues that his opinions "do not sustain a fact issue much less constitute the clear and convincing evidence required to demonstrate invalidity." D.I. 420 at 17. Again, this amounts to a summary judgment argument, and an incorrect one. Tellingly, in the case Wi-LAN cites, *Cradle IP v. Texas Instruments*, the court denied summary judgment, denied excluding timely filed expert reports, and excluded only improperly served expert declarations. 5 F. Supp. 3d 626, 641 (D. Del. 2013). Wi-LAN's attempts to use a motion to exclude to overcome the fact that it does not have a substantive response to Dr. Reader's analysis must be rejected.

Finally, Wi-LAN's argument that Dr. Reader "fail[ed] to apply the proper standard" in his related enablement opinions is unsupported. D.I. 420 at 17. Wi-LAN chose not to question Dr. Reader about these opinions. Wi-LAN again ignores Dr. Reader's analysis that the '654 patent is silent as to how to perform scaling and adjusting concurrently, and it would have been unknown to one skilled in the art. Ex. 60 ¶¶ 246-52; Ex. 70 ¶¶ 45-61. The *Wands* factors listed by Wi-LAN are simply useful criteria and described throughout Dr. Reader's reports. *See, e.g.*, Ex. 60 ¶¶ 54-103, 118-153, 246-252; Ex. 70 ¶¶ 12-24, 34-36, 45-61. Dr. Reader's analysis that the "concurrently" limitation is neither disclosed nor enabled is appropriate and correct.

**VII. CONCLUSION**

For the foregoing reasons, Defendants request that the Court deny Wi-LAN's motion.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Stephen J. Kraftschik
Jack B. Blumenfeld (#1014)
Stephen J. Kraftschik (#5623)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@mnat.com
skraftschik@mnat.com

OF COUNSEL:

Gianni Cutri
Joel Merkin
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

Michael W. De Vries
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, CA 90071
(213) 680-8400

Adam R. Alper
James Beard
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
(415) 439-1400

*Attorneys for Sharp Electronics Corporation*

November 9, 2018
12355947

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Pilar G. Kraman
Pilar G. Kraman (#5199)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 576-3586
pkraman@ycst.com

OF COUNSEL:

Rex Hwang
Stanley M. Gibson
Jessica Newman
JEFFER MANGELS BUTLER & MITCHELL LLP,
1900 Avenue of the Stars, 7th Floor, Los
Angeles, California 90067
(310) 203-8080

*Attorneys for VIZIO, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, Pilar G. Kraman, Esquire, hereby certify that on November 16, 2018, I caused to be electronically filed a copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Brian E. Farnan
> Michael J. Farnan
> FARNAN LLP
> 919 N. Market Street, 12th Floor
> Wilmington, DE 19801
> *bfarnan@farnanlaw.com*
> *mfarnan@farnanlaw.com*
>
> *Attorneys for Plaintiff*

I further certify that on November 16, 2018, I caused a copy of the foregoing document to be served by e-mail on the above-listed counsel and on the following:

> Jeffrey R. Bragalone
> Patrick J. Conroy
> Monte M. Bond
> Terry A. Saad
> Nicholas C. Kliewer
> James R. Perkins
> Brian P. Herrmann
> BRAGALONE CONROY PC
> Chase Tower
> 2200 Ross Avenue, Suite 4500W
> Dallas Texas 75201-7924
> *jbragalone@bcpc-law.com*
> *pconroy@bcpc-law.com*
> *mbond@bcpc-law.com*
> *tsaad@bcpc-law.com*
> *nkliewer@bcpc-law.com*
> *jperkins@bcpc-law.com*
> *bherrmann@bcpc-law.com*

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

 */s/ Pilar G. Kraman*
Adam W. Poff (No. 3990)
Pilar G. Kraman (No. 5199)
Rodney Square
1000 N. King Street
Wilmington, DE 19801
(302) 571-6600
*apoff@ycst.com*
*pkraman@ycst.com*

Dated: November 16, 2018          *Attorneys for Defendant VIZIO, Inc.*

01:17917390.1