# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WI-LAN INC., | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 15-379-LPS |
| SHARP ELECTRONICS CORPORATION, | : | |
| Defendant. | : | |

| | | |
|---|---|---|
| WI-LAN INC., | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 15-788-LPS |
| VIZIO, INC., | : | |
| Defendant. | : | |

## MEMORANDUM ORDER

At Wilmington this **10th** day of **December, 2018**:

Pending before the Court is Plaintiff Wi-LAN Inc.'s ("Plaintiff") Motion for

Reconsideration (C.A. No. 15-379 D.I. 364; C.A. No. 15-788 D.I. 281), Plaintiff's Motion for

Leave to Supplement the Initial Expert Reports of David Kennedy (C.A. No. 15-379 D.I. 365;

C.A. No. 15-788 D.I. 282), and Defendants Sharp Electronics Corporation and Vizio, Inc.'s

("Defendants") Motion to Strike Portions of Plaintiff's Supplemental and Rebuttal Expert

Reports (C.A. No. 15-379 D.I. 374; C.A. No. 15-788 D.I. 290).[1] Having reviewed the parties'

submissions (D.I. 364, 365, 368, 373, 375, 379, 384, 394), **IT IS HEREBY ORDERED** that, for

the reasons set forth below, Plaintiff's Motion for Reconsideration is **GRANTED IN PART** and

**DENIED IN PART**, Plaintiff's Motion for Leave to Supplement is **DENIED**, and Defendants'

Motion to Strike is **DENIED**.[2]

## I.      WI-LAN'S MOTION FOR RECONSIDERATION

1.      On June 27, 2018, Defendants filed a Motion to Preclude Portions of Plaintiff's

Expert Reports on Infringement that, in relevant part, sought to strike Plaintiff's induced

infringement theory and sought to strike the Tanner Report in its entirety. (D.I. 336) Following

briefing (D.I. 337, 351, 354), during a teleconference on July 31, 2018 the Court granted those

portions of the motion. (*See* D.I. 362 at 25-28, 38) The Court ruled that Plaintiff's late

disclosure of its indirect infringement theories must be stricken because Plaintiff repeatedly

assured both the Court and Defendants that all of its liability theories had been disclosed during

the multiple reviews of Plaintiff's infringement contentions. (*See id.* at 26) The Court further

found that the *Pennypack* factors supported striking Plaintiff's indirect infringement theory. (*See

id.* at 26-28) Based on this ruling, the Court then determined that the Tanner Report became

"largely or at least entirely irrelevant;" however, the Court also felt that Mr. Tanner's reliance on

reports of other experts not in this case was not proper. (*See id.* at 38) On August 14, Plaintiff

moved for reconsideration of these rulings. (D.I. 364)

---

[1] While this Order will resolve the motions on both dockets, all further docket citations
will be to the C.A. No. 15-379 action.

[2] While these motions were set for oral argument on December 19, 2018 (*see* D.I. 439),
the Court finds that further argument on these motions is not needed.

2.      Pursuant to Local Rule 7.1.5, motions for reconsideration should be granted only "sparingly." The decision to grant such a motion lies squarely within the discretion of the district court. *See Dentsply Int'l, Inc. v. Kerr Mfg. Co.*, 42 F. Supp. 2d 385, 419 (D. Del. 1999); *Brambles USA, Inc. v. Blocker*, 735 F. Supp. 1239, 1241 (D. Del. 1990). These types of motions are granted only if the Court has patently misunderstood a party, made a decision outside the adversarial issues presented by the parties, or made an error not of reasoning but of apprehension. *See Shering Corp. v. Amgen, Inc.*, 25 F. Supp. 2d 293, 295 (D. Del. 1998); *Brambles*, 735 F. Supp. at 1241. "A motion for reconsideration is not properly grounded on a request that a court rethink a decision already made." *Smith v. Meyers*, 2009 WL 5195928, at *1 (D. Del. Dec. 30, 2009); *see also Glendon Energy Co. v. Borough of Glendon*, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993). It is not an opportunity to "accomplish repetition of arguments that were or should have been presented to the court previously." *Karr v. Castle*, 768 F. Supp. 1087, 1093 (D. Del. 1991). A motion for reconsideration may generally be granted only if the movant can show at least one of the following: (i) there has been an intervening change in controlling law; (ii) the availability of new evidence not available when the court made its decision; or (iii) there is a need to correct a clear error of law or fact to prevent manifest injustice. *See Max's Seafood Café by Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). However, in no instance should reconsideration be granted if it would not result in amendment of an order. *See Schering*, 25 F. Supp. 2d at 295.

3.      With respect to the ruling striking Plaintiff's indirect infringement theory, Plaintiff substantially restates its prior arguments that were already considered and rejected by this Court, adding that the Court should have applied the *Poulis* factors rather than the

*Pennypack* factors. (*See* D.I. 364 at 8-10) Since Plaintiff relied on the *Pennypack* factors in its initial motion (*see* D.I. 351 at 4; D.I. 354 at 2), the Court will not reconsider its prior decision based on a standard Plaintiff could have asked the Court to have applied initially.

4.　　With respect to the ruling relating to the Tanner Report, Plaintiff argues that the Court's understanding that its order striking the indirect infringement theories renders the Tanner Report irrelevant is incorrect. Plaintiff argues that Mr. Tanner did not opine on indirect infringement, but rather "demonstrate[d] the extent of use of the methods of the '654 patent by the accused products," which is relevant to damages for direct infringement, observing that the only expert who relied on Mr. Tanner's opinions was Plaintiff's damages expert, Dr. Kennedy. (D.I. 364 at 4-5) Defendants argue that Plaintiff's own citation to Dr. Kennedy's report shows that he "relied on the Tanner Report for his opinions that users likely infringe, not for damages." (D.I. 368 at 7) Based on the limited excerpts of Mr. Kennedy's report provided to the Court, it appears that Mr. Kennedy did, indeed, rely on Mr. Tanner's opinions for the extent of use of the patented invention, i.e., the ubiquity of the invention, which is relevant to damages. Accordingly, the Court will amend its prior ruling as follows: the portions of the Tanner Report that cite to and rely on the Wallace and Frankel Reports remain stricken for the reasons stated during the teleconference (*see* D.I. 362 at 38), but the remainder of the Tanner Report is not stricken from this case.

## II.　WI-LAN'S MOTION FOR LEAVE TO SUPPLEMENT
##　　THE INITIAL EXPERT REPORTS OF DAVID KENNEDY

5.　　On August 17, 2018, Plaintiff moved for leave to supplement the initial expert reports on damages of David Kennedy, in light of the Court's July 31 Order striking the initial

Tanner Report. (D.I. 365 at 1)  As Plaintiff notes, "Mr. Kennedy's reports were submitted before the Court precluded Mr. Tanner's report." (*Id.* at 5)  With portions of the Tanner Report reinstated pursuant to the Court's ruling above, the request to supplement is moot.

## III.   DEFENDANTS' MOTION TO STRIKE PORTIONS OF PLAINTIFF'S SUPPLEMENTAL AND REBUTTAL EXPERT REPORTS

6.      On September 10, 2018, Defendants moved to strike Section IV of Ionut Mirel's Supplemental Expert Report and Section VIII.D.7 of Craig Tanner's Rebuttal Expert Report, on two grounds. (*See* D.I. 374)  First, Defendants argue that the two reports improperly circumvent the Court's July 31, 2018 Order striking the initial Tanner Report.  Given the Court's ruling above, and the fact that the two reports do not rely on the Wallace or Frankel Reports, this argument is now moot.

7.      Second, Defendants argue that the Mirel Supplemental Report improperly contains new opinions that are not proper supplementation under the Court's July 30 Order, which limited the supplemental report to "(i) discovery produced by Defendants after June 15, 2018, and (ii) additional discovery ordered by the Court during the June 15, 2018 Discovery Hearing and in C.A. No. 15-379, D.I. 344." (D.I. 360 at 2 n.1)  Plaintiff contends that Section IV of the Mirel Supplemental Report, which is entitled "Interlaced Video Sources," provides an "evidence-based description of the [four] sources from which the accused televisions receive interlaced video." (D.I. 384 at 2)  Plaintiff further contends that these opinions demonstrate Defendants' direct infringement, particularly through "testing of the accused television[s] using one or more of the discussed interlaced video sources." (*Id.*)  The discovery produced by Defendants after June 15, 2018 included evidence of testing. (*See* D.I. 344; D.I. 384 at 4)

5

Plaintiff argues that it became necessary for Dr. Mirel to explain the interlaced video sources in order to arrive at his ultimate conclusion that the testing constitutes direct infringement, because Defendants had not described the format of the video signals used in their testing. (*See* D.I. 384 at 3-4) Defendants argue that Dr. Mirel cites evidence that was available prior to June 15, 2018, but they fail to respond to Plaintiff's explanation as to how citation to this earlier-produced evidence only became necessary after Defendants' testing evidence was produced. (*See* D.I. 394 at 2) Under the circumstances, Plaintiff properly supplemented Dr. Mirel's report.

8. Additionally, the *Pennypack* factors do not support striking Section IV of the Mirel Supplemental Report. The evidence is important, as it relates to Dr. Mirel's direct infringement opinions. Defendants are not prejudiced by the disclosures and have had an opportunity to have their own expert rebut Dr. Mirel's opinions and to have deposed Dr. Mirel. Finally, Defendants' concern about Dr. Mirel relying on already stricken opinions is moot given the Court's ruling in Section I above.

\* \* \*

**IT IS FURTHER ORDERED** that the parties shall meet and confer and, no later than December 13, submit a joint status report regarding the impact, if any, of this Order on the pending cases and motions.

HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT JUDGE