# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WI-LAN INC., | : | UNSEALED ON |
| | : | FEBRUARY 19, 2019 |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 15-379-LPS |
| | : | |
| SHARP ELECTRONICS CORPORATION, | : | |
| | : | |
| Defendant. | : | |

| | | |
|---|---|---|
| WI-LAN INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 15-788-LPS |
| | : | |
| VIZIO, INC., | : | |
| | : | |
| Defendant. | : | |

Brian E. Farnan and Michael J. Farnan, FARNAN LLP, Wilmington, DE

Monte M. Bond, Jeffrey R. Bragalone, Patrick J. Conroy, Terry Saad, and James R. Perkins, BRAGALONE CONROY P.C., Dallas, TX

    Attorneys for Wi-Lan Inc.

Jack B. Blumenfeld and Stephen J. Kraftschik, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE

Gianni Cutri and Joel Merkin, KIRKLAND & ELLIS LLP, Chicago, IL

Michael W. De Vries, KIRKLAND & ELLIS LLP, Los Angeles, CA

Adam R. Alper and James Beard, KIRKLAND & ELLIS LLP, San Francisco, CA

Jared Bárcenas, KIRKLAND & ELLIS LLP, New York, NY

    Attorneys for Sharp Electronics Corporation.

Pilar Gabrielle Kraman, YOUNG, CONAWAY, STARGATT & TAYLOR, LLP, Wilmington, DE,

Rex Hwang, Stanley M. Gibson, and Jessica Newman, JEFFER MANGELS BUTLER & MITCHELL LLP, Los Angeles, CA,

    Attorneys for Vizio, Inc.

## MEMORANDUM OPINION

February 14, 2019
Wilmington, Delaware

**STARK, U.S. District Judge:**

Pending before the Court are Plaintiff Wi-LAN Inc.'s ("Plaintiff") Motions for Summary Judgment of Infringement (C.A. No. 15-379 D.I. 406; C.A. No. 15-788 D.I. 334), Defendants Sharp Electronics Corporation and Vizio, Inc.'s (collectively, "Defendants") Motions to Preclude the Expert Opinions of Craig K. Tanner (C.A. No. 15-379 D.I. 408; C.A. No. 15-788 D.I. 329), Defendants' Motions to Preclude the Analysis of Rebecca Reed-Arthurs (C.A. No. 15-379 D.I. 410; C.A. No. 15-788 D.I. 330), Defendants' Motions to Preclude the Expert Opinions of Ionut Mirel (C.A. No. 15-379 D.I. 411; C.A. No. 15-788 D.I. 331), Defendants' Motions to Preclude the Expert Opinions of David A. Kennedy (C.A. No. 15-379 D.I. 412; C.A. No. 15-788 D.I. 332), Plaintiff's Motions for Partial Summary Judgment of No Invalidity (C.A. No. 15-379 D.I. 414; C.A. No. 15-788 D.I. 339), Defendants' Motions for Summary Judgment of Non-Infringement (C.A. No. 15-379 D.I. 416; C.A. No. 15-788 D.I. 337), and Plaintiff's Motions to Preclude the Infringement and Validity Expert Reports of Clifford Reader (C.A. No. 15-379 D.I. 419; C.A. No. 15-788 D.I. 344). The Court heard arguments on these motions on December 19, 2018 and took all motions under advisement. (*See* D.I. 471 ("Tr.")) The Court has also considered the parties' supplemental briefs and letters responding to the Court's post-hearing questions (C.A. No. 15-379 D.I. 470; C.A. No. 15-788 D.I. 399). (*See* C.A. No. 15-379 D.I. 472, 473, 474, 475, 481, 482; C.A. No. 15-788 D.I. 401, 402, 403, 404, 410, 411)[1]

## I. BACKGROUND

While this was initially a three-patent case, only one patent remains asserted in this

---

[1] Further docket citations will be made to the C.A. No. 15-379 docket, but apply equally to corresponding filings in the C.A. No. 15-788 action, unless specified otherwise.

action: U.S. Patent No. 6,359,654 (the "'654 patent"). Plaintiff alleges that Defendants each infringe claims 1, 4, and 9 of the '654 patent, which are methods of displaying interlaced video data on non-interlaced monitors. The claimed methods require four steps: "capturing" two fields into buffers, "scaling" the fields, "adjusting" one of the fields, and "displaying" the two fields sequentially on a non-interlaced monitor. ('654 patent, cls. 1, 4, 9)

## II. LEGAL STANDARDS

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the nonmoving party. *Anderson*, 477 U.S. at 252.

### III. DISCUSSION

The parties filed cross-motions for summary judgment regarding infringement of the '654 patent.[2] (*See* D.I. 406, 416) Plaintiff's case presents two theories of infringement against two

---

[2]The parties' *Daubert* motions do not impact the Court's analysis of the parties' cross-motions regarding infringement, so the Court need not first decide the *Daubert* motions.

3

sets of accused products. Plaintiff's first theory of infringement, asserted against a substantial majority of the accused products, is that Defendants directly infringe by selling televisions that automatically perform each step of the claimed methods. This theory of infringement is based on the Federal Circuit's decision in *SiRF Technology, Inc. v. International Trade Commission*, 601 F.3d 1319 (Fed. Cir. 2010). For the remaining accused products, Plaintiff asserts that Defendants directly infringe by testing those televisions in the United States in a manner that practices the claimed methods.

Plaintiff's evidence of infringement includes (and essentially depends on) two sets of declarations from the companies that manufacture for Defendants the System-on-Chips ("SoCs") which house the accused functionality (the "SoC declarations"). Plaintiff's other principal evidence of infringement is Register Transfer Level ("RTL") source code that provides the blueprint to manufacture the hardware of the SoCs. As Plaintiff cannot prove infringement without the source code, the Court will first consider the admissibility of the source code and the SoC declarations.

For purposes of this Opinion, the Court will assume that every limitation of the asserted claims is met by the accused products.[3] Under that assumption, it is undisputed that the accused products themselves perform every step of the asserted claims. (*See, e.g.*, D.I. 407 at 1; D.I. 447 at 17-18)

---

[3] The Court recognizes that the parties dispute whether each limitation of the asserted claims is met by the accused products. Indeed, both parties moved for summary judgment on precisely whether or not certain limitations are met. As a result of the Court's conclusions in this Opinion, it need not rule on those portions of the parties' motions.

### A.     Admissibility of Source Code and SoC Declarations

Given the nature of the alleged infringement, and Defendants' relationship to the asserted patented methods, Plaintiff has "been on notice since the very beginning of the case that [it was] going to need source code from third parties." (D.I. 182 at 25; *see also* D.I. 91 at 33)  That is, in order to meet its burden to prove infringement, Plaintiff has known that it would need to obtain source code from MediaTek, MStar, and Sigma (the "SoC manufacturers") – those third parties manufacture the SoCs that are accused of containing the infringing functionality in this case. (*See* D.I. 91 at 33; D.I. 182 at 25-26)  When Plaintiff approached the SoC manufacturers, they did not easily and voluntarily produce their proprietary code.  For example, in April 2017, MediaTek's counsel told Plaintiff's counsel that "MediaTek Inc. is not going to voluntarily produce each version of code that has existed for 15 chips over almost 8 years." (D.I. 423 Ex. 50 at 2; *see also id.* at 3 ("MediaTek Inc. does not have a single person, or even multiple people, who could state under oath that there are no 'material differences' for 15 chips over almost 8 years."))  The following month, Plaintiff sued the SoC manufacturers in this Court for patent infringement. (*See* D.I. 418 at 13)  Shortly thereafter, Plaintiff entered into termination agreements with the SoC manufacturers which provided that the SoC manufacturers would produce source code and the lawsuits against them would be dismissed without prejudice. (*See* D.I. 445 at 30; D.I. 446 Exs. 16-17)  Ultimately, the SoC manufacturers produced a single version of RTL source code with accompanying declarations stating that the code produced provides the implementation of the deinterlacing process for digital video data in a specified list

of chips, adding that there are "no material differences"[4] between the version of code produced and any versions used since 2009. (*See* D.I. 446 Exs. 9-14) Following this production, Defendants obtained a second set of SoC declarations in which the same declarants describe the circuitry and operation of the SoCs at issue. (*See* D.I. 418 at 27-28) Neither party has deposed any of the declarants. (*See id.* at 27) At the recent hearing, the parties told the Court that none of the declarants will appear at trial. (*See* Tr. at 43-44)

Plaintiff argues that the source code and the first set of SoC declarations are admissible, citing several grounds for admissibility. The Court addresses, and rejects, each in turn.[5]

First, Plaintiff argues that the source code and SoC declarations are admissible as records of a regularly conducted business activity under Federal Rule of Evidence 803(6). (*See* D.I. 472 at 1-3; D.I. 474 at 1-2) Rule 803(6) provides that a business record is not excluded as hearsay if "(A) the record was made at or near the time by . . . someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business . . . ; (C) making the record was a regular practice of that activity; (D) all these conditions are shown . . . by a certification that complies with Rule 902(11) or (12) . . . ; and (E) the opponent does not show that the source of information or the method of circumstances of preparation indicate a lack of trustworthiness." A business record is self-authenticating under Rule 902(11) as long as the requirements of Rule

---

[4] As almost all of the declarations that Plaintiff relies on predate the Court's issuance of its claim construction order (*see* Tr. at 46), the Court struggles to understand how the declarants could know whether distinctions among versions of the source code are "material" in a manner pertinent to this case. Plaintiff's counsel admitted at the hearing "clearly, there have been revisions to the source code." (*Id.* at 43)

[5] Defendants' position is that none of the SoC declarations should be admitted, but if the Court finds that the first set is admissible then the second set of SoC declarations should also be admitted for completeness. (*See* D.I. 418 at 27; D.I. 473 at 5 n.3)

6

803(6)(A)-(C) are shown by a certification of a qualifying person and the adverse party had reasonable notice of the record and certification. *See* Fed. R. Evid. 803(6)(D) & 902(11).

The SoC declarations, which Plaintiff contends are the Rule 902(11) certifications for the source code, state that the declarant either is familiar with or has personal knowledge of the contents and functionality of the code and that the declarant understands that the code is maintained as a business record in the ordinary course of the company's business. (*See* D.I. 446 Exs. 9-14) However, as Defendants argue, the SoC declarations fail to demonstrate that the source code meets the requirements of Rule 803(6). The SoC declarations merely provide conclusory statements that the code is a business record without providing any factual basis for those statements, let alone addressing the three requirements of 803(6).

Mere "boilerplate recitation of the requirements under 803(6) fails to provide sufficient detail necessary to authenticate the exhibits or satisfy the requirements of Rule 803(6)." *JPMorgan Chase Bank, N.A. v. AME Fin. Corp.*, 2009 WL 10668518, at *3 (N.D. Ga. Sept. 25, 2009). In *JPMorgan*, the declarant attested that she is an employee of a particular office of the plaintiff, "that she has personal knowledge of Plaintiff's practice of maintaining these records; that these records were created or received by Plaintiff in its regularly conducted business activity; and that they were retained by Plaintiff in its file on Defendant in the course of its regular practice for making and keeping such records." *Id.* The Court determined that such statements were too vague to meet the requirements of the Rule because the declarant failed to show her "familiarity with the creation and maintenance of these records" and failed to describe "any details about Plaintiff's record-keeping procedures." *Id.* Here, the SoC declarations provide even less information regarding the SoC manufacturers' creation and maintenance of the

7

source code and, therefore, are not adequate Rule 902(11) certifications.

Moreover, Plaintiff cannot satisfy the fifth requirement of Rule 803(6). Defendants have demonstrated a lack of trustworthiness in the materials; the source code contains inconsistent dates in the metadata, copyright, and revision histories[6] as well as added commentary on the printed excerpts. (*See* D.I. 456 at 4-5; D.I. 473 at 7-8) Plaintiff also failed to obtain change logs, file comparisons, or other evidence of code revisions that might clear up the inconsistencies in the code. (*See* D.I. 456 at 5) The circumstances surrounding the production, including the fact that the SoC manufacturers originally claimed that they could not produce one version of source code for all SoCs at issue in the case, raises further concern as to the credibility of both the source code and the SoC declarations seeking to authenticate the code. Accordingly, the source code is not admissible under Rule 803(6).

The SoC declarations, too, are not admissible under Rule 803(6) because they were prepared for purposes of litigation, nor in the ordinary course of business, and, further, do not contain much indicia of trustworthiness. (*See* D.I. 473 at 2-3; *see also United States v. Casoni*, 950 F.2d 893, 912 (3d Cir. 1991) (finding document not to be business record where it was "a tool of controversy, not a routine record of fact"); *Sommerfield v. City of Chicago*, 254 F.R.D. 317, 323 (N.D. Ill. 2008) (noting "guarantors of reliability," such as employee's "strong motive to be accurate," are absent "when a document is created for a particular use that lies outside the business's usual operations – especially when that use involves litigation"))

Plaintiff's second asserted basis for admissibility of the source code is that it may be

---

[6]For example, the 2017 source code has a copyright date of 2006, a last modified date of 2010, and many undated revisions in the revision history. (*See* D.I. 473 at 7)

8

authenticated under Rules 901(b)(1) and 901(b)(4). However, Rule 901(b)(1), which permits authentication via testimony, is not met because the SoC declarations are not trustworthy and neither the declarants nor anyone else with knowledge of the source code has been deposed or will be coming to trial. (*See* Tr. at 43-44) While Rule 901(b)(4) allows evidence to be authenticated by distinctive characteristics, such as the "appearance, contents, substance, internal patterns . . . taken together with all the circumstances," this provision is not satisfied here – even if the source code is distinctive – given the highly dubious circumstances surrounding the production and the lack of indicia of trustworthiness in the source code. Furthermore, even if the source code could be authenticated, it does not necessarily follow that the source code would also be admissible. *See, e.g.*, *Acceleration Bay LLC v. Activision Blizzard Inc.*, 2018 WL 5045186, at *3 (D. Del. Oct. 17, 2018) ("Evidence that is properly authenticated may nonetheless be inadmissible hearsay."). Accordingly, the Court concludes that the source code and SoC declarations are not admissible under Rules 901(b)(1) or 901(b)(4).

Plaintiff next argues that the source code is admissible under Federal Rule of Evidence 807(a)(3), because the SoC declarations are "more probative on the point for which [they are] offered than any other evidence that the proponent can obtain through reasonable efforts." (*See* D.I. 472 at 5 n.6) However, "equivalent circumstantial guarantees of trustworthiness" is also a prerequisite under Rule 807 and, as already explained, the source code and declarations lack such characteristics. Fed. R. Evid. 807(a)(1).

Plaintiff additionally argues that, pursuant to Rule 703, its experts may reasonably rely on the source code in forming their opinions and may also disclose the contents of the source code to the jury because "their probative value in helping the jury evaluate the opinion substantially

9

outweighs their prejudicial effect." (*See* D.I. 472 at 5-6) Plaintiff's interpretation of this provision lacks merit. Rule 703 allows an expert to rely on his or her own experiences, statements made by others, and data presented by others even when that evidence on which the expert has relied would itself be admissible only if it was authenticated. *See* Fed. R. Evid. 703, advisory committee's note on proposed rules. The Rule was not intended to create a "backdoor" to allow the admission into evidence of otherwise inadmissible declarations and other materials simply because they might assist the jury's evaluation of an expert's opinions.

Plaintiff also argues that the SoC declarations are admissible under Rule 801(d)(2)(B) as statements offered against Defendants that Defendants have "adopted or believed to be true." In particular, Plaintiff insists that since Defendants submitted their own SoC declarations and relied on them in support of their motions for summary judgment and expert reports, "the statements of authenticity and admissibility in those declarations that mirror the statements in Wi-LAN's SoC Declarations are ***not hearsay***," because "Defendants have adopted these statements as true and therefore are precluded from now claiming them to be hearsay." (D.I. 472 at 2) This contention is, in the apt characterization of Defendants, "wildly inaccurate." (D.I. 475 at 1) Defendants' primary – and vehement – position has always been that all of the SoC declarations are inadmissible;[7] any reliance on them in Defendants' papers has been argued in the alternative, in case the Court were to find them to be admissible.

---

[7]*See* D.I. 332 at 2 (June 22, 2018 letter arguing declarations cannot substitute for trial testimony); D.I. 342 at 1-2 (July 2, 2018 letter arguing declarations are inadmissible); D.I. 418 at 2 (arguing in opening summary judgment brief that declarations are "wildly unreliable and inadmissible"); D.I. 456 at 1 (arguing in reply summary judgment brief declarations are "inadmissible hearsay"); D.I. 473 at 5 n.2 ("Defendants do not believe either set of SoC declarations should be admitted into evidence.").

Finally, and most recently, Plaintiff requests that, should the Court finds the source code and SoC declarations inadmissible, it be given a further opportunity to cure any defects, citing Federal Rule of Civil Procedure 56(c)(2) as support. (*See* D.I. 474 at 2-3; D.I. 482 at 1) Rule 56(c)(2) allows a party to object to material cited in a summary judgment motion if it cannot be presented in a form that would be admissible in evidence. "The objection functions much as an objection at trial." Fed. R. Civ. P. 56, committee notes on 2010 amendment. If the inadmissible evidence cannot be converted into admissible form, it must be excluded.

Rule 56(c)(2) does not help Plaintiff here. Plaintiff has had ample time and opportunities over years of litigation to obtain evidence of infringement from the SoC manufacturers. As but one example, as long ago as September 2017 the Court stated there was already at that time "a really strong case" to deny Plaintiff another opportunity to obtain source code from third parties, as the issue had been litigated since early 2016. (D.I. 182 at 25-26) (Sept. 11, 2017 Transcript) This has now been an issue for approximately three years – and trial is now just two months away. There is simply no reason to provide Plaintiff still another opportunity to fix its evidentiary deficiencies (even assuming Plaintiff could, somehow, do so).

Thus, the Court concludes that the source code and SoC declarations are inadmissible. They will be excluded from trial.[8] Accordingly, the Court grants Defendants' objection to the evidence and excludes them from the record on which it must base its summary judgment determination. *See* Fed. R. Civ. P. 56(c)(2).

---

[8] Given the Court's conclusions, it is unnecessary for the Court to evaluate Defendants' additional argument that the 2017 version of source code – which post-dates the expiration of the '654 patent and post-dates the period relevant to infringement, which begins in 2009 – is irrelevant. (*See* D.I. 418 at 6-10)

Without source code from the SoC manufacturers, no reasonable juror could find that Defendants' accused televisions practice the limitations of the asserted claims. Therefore, Plaintiff cannot prove that Defendants directly infringe the '654 patent through sales or testing. It follows, then, that the Court must grant Defendants' motions for summary judgment of non-infringement and deny Plaintiff's motions for summary judgment of infringement.

### B. Direct Infringement Through Sales Under *SiRF*

Defendants present an alternative basis on which the Court may – and is – also granting summary judgment of non-infringement. "A method claim is directly infringed when someone practices every step of the patented method." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1219 (Fed. Cir. 2014). Direct infringement may also be present when certain steps are performed by the accused product so long as that performance is controlled by the accused infringer. *See SiRF*, 601 F.3d at 1329. Plaintiff's contention that this latter theory of direct infringement can be found on the present record is unavailing.

In *SiRF*, the defendant developed, manufactured, and sold GPS chips to customers who incorporated the chips into end-user GPS devices. *See id.* at 1323. That defendant also provided data generated from its own servers to the end-user GPS devices. *See id.* at 1324. The defendant designed and built the technology such that when the GPS device was activated by the end-user, the defendant's servers, software, and chips automatically performed the method steps. *See id.* at 1331. Under these circumstances, the Federal Circuit found that the defendant directly infringed the patent-in-suit, because the defendant controlled the equipment that automatically performed the claimed method.

The Federal Circuit has explained that its "decision in *SiRF* did not create direct

infringement liability whenever an alleged infringer sells a product that is capable of executing the infringing method." *Ericsson*, 773 F.3d at 1221. In fact, the Federal Circuit has never "found direct infringement of a method claim by sales of an end user product which performs the entire method." *Id.* at 1222.

Here, it is undisputed that no person or entity performs any steps of the asserted method claims; rather, it is the accused products themselves that perform every step of the claims. (*See, e.g.*, D.I. 407 at 1-3; D.I. 447 at 17-18) *SiRF*, then, is inapplicable. No reasonable juror could find on the present record that Defendants control the performance (automatically or not) of the claimed method. *See Ericsson*, 773 F.3d at 1221-22.

Plaintiff argues that Defendants directly infringe because they "control all aspects of the hardware within the accused televisions, including the [SoCs] and display modules." (D.I. 407 at 2) In fact, as any reasonable factfinder would have to conclude, if anyone actually controls the performance of the steps of the method it is not Defendants ***but the SoC manufacturers***, because the SOC manufacturers design and implement the allegedly infringing deinterlacing functionality, which is protected by confidential and proprietary source code to which Defendants do not even have access. (*See* D.I. 447 at 19) While Defendants incorporate the SoCs into their televisions, there is no evidence that Defendants assert any control over the precise functionality of those chips. Further, unlike in *SiRF*, where the defendant physically possessed and controlled the servers at the time of performance of the method, Defendants here have no control over performance of the method after they sell their televisions to end users. As "there are no steps automatically performed by equipment controlled by [Defendants]," *SiRF* does not apply. *Ericsson*, 773 F.3d at 1222; *see also Adaptix, Inc. v. Apple, Inc.*, 78 F. Supp. 3d 952, 957 (N.D.

13

Cal. 2015) (noting *SiRF* does not apply when defendant does not "perform or control any claim step").[9] Accordingly, Defendants are not direct infringers.

Plaintiff argues that having no direct infringer "provides an unjust and prejudicial exemption for Defendants' infringement" and that "*SiRF* serves the purpose of foreclosing such unintended results." (D.I. 472 at 9) The Court is not persuaded that there must be a direct infringer in this case.[10] While it seems likely that if the '654 patent claimed systems, rather than methods, Defendants would be direct infringers, the patentee here chose (for whatever reason) to claim methods. If no one performs (or controls the performance of) the claimed methods (as is the case here), then it may be that those methods cannot be infringed by anyone.

Thus, again, the Court will grant Defendants' motions for summary judgment of non-infringement and deny Plaintiff's motions for summary judgment of infringement.

### C.  Direct Infringement By Testing

Plaintiff also contends that a reasonable jury could find infringement for a small portion of the accused products based on Defendants' testing of those products in a way that practices the claimed methods. Defendants counter that Plaintiff has failed to identify evidence sufficient to

---

[9]Plaintiff's reliance on *Vehicle IP, LLC v. AT&T Mobility LLC*, 227 F. Supp. 3d 319 (D. Del. 2016), is misplaced. There, unlike here, the claimed steps were performed by both the products and the defendants.

[10]Defendants' customers who purchase the accused televisions also do not control any steps of the asserted methods. Even though they may choose to use their televisions in either an infringing or non-infringing manner (by using input sources that broadcast either interlaced or progressive signals, respectively), turning the television on, changing the channel, or changing the input is not part of the claimed methods. As such, Defendants' customers neither perform nor control any steps of the claims and are not direct infringers. *See SiRF*, 601 F.3d at 1331 (refusing to read limitations, such as "activating" device, into claims); *see also* D.I. 407 at 3; D.I. 445 at 4-6.

prove by a preponderance of the evidence that Defendants performed tests that practiced the claimed methods in the United States. (*See* D.I. 418 at 31-37)

Even assuming that a reasonable factfinder could find that Defendants have performed tests practicing the claimed methods in the United States, this evidence could not support a finding of direct infringement. This is because just as Defendants' end user customers are not direct infringers (*see supra* n.10), so, too, Defendants are not direct infringers by virtue of those occasions on which they plug in and turn on the accused televisions and obtain an interlaced signal. Additionally, Defendants have no control over the functionality in the SoCs installed in their televisions. Accordingly, those performing the testing on the accused products do not directly infringe the asserted claims.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motions for summary judgment of infringement will be denied and Defendants' motions for summary judgment of non-infringement will be granted. The Court will confer with the parties before determining whether it must resolve any or all of the remaining motions or any other issues.[11] An appropriate order follows.

---

[11] The Court understands that, as a result of the accompanying Order, the only remaining claim in this lawsuit is Defendants' counterclaim for declaratory judgment of invalidity of the '654 patent. (*See* D.I. 472 at 10; D.I. 473 at 9) The parties will be ordered to meet and confer and advise the Court as to whether this understanding is correct.