IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WI-LAN INC., | ) | Public Version Filed: |
| Plaintiff, | ) | March 2, 2022 |
| | ) | |
| v. | ) | C.A. No. 15-379 (LPS) |
| | ) | |
| SHARP ELECTRONICS CORPORATION, | ) | |
| Defendant. | ) | |
| WI-LAN INC., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 15-788 (LPS) |
| | ) | |
| VIZIO, INC., | ) | |
| Defendant. | ) | |

## DEFENDANTS' OPPOSITION TO WI-LAN'S MOTION FOR RECONSIDERATION OF ORDER GRANTING IN PART DEFENDANTS' RENEWED MOTION TO DECLARE CASE EXCEPTIONAL PURSUANT TO 35 U.S.C. § 285 AND AWARD ATTORNEYS' FEES AND COSTS

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Sharp Electronics Corporation*

February 23, 2022

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Pilar G. Kraman (#5199)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
pkraman@ycst.com

*Attorneys for VIZIO, Inc.*

# TABLE OF CONTENTS

I.     **INTRODUCTION**.................................................................................................... 1

II.    **ARGUMENT** ....................................................................................................... 2

     A.    This Court Did Not Misapprehend The Date By Which Wi-LAN Did Or Should
          Have Realized That It Lacked Admissible Evidence Of Infringement. ................. 3

          1.    Wi-LAN's Claim That Defendants Did Not Challenge The Admissibility
               of The Code Until December 19, 2018 Is Simply Wrong .......................... 4

          2.    Wi-LAN Knew Or Should Have Known That The Code Was Not
               Admissible By No Later Than April 26, 2018........................................... 5

          3.    The Court Did Not Misapprehend Wi-LAN's Arguments Concerning
               Admissibility........................................................................................... 6

          4.    Wi-LAN's Assertion That Its Exceptional Misconduct Was Permissible
               Until The Defendants Challenged It Is Unavailing.................................... 8

     B.    This Court Did Not Misapprehend The Date Through Which Defendants Suffered
          Losses Due To Wi-LAN's Continued Assertion of the '654 Patent....................... 8

     C.    The Court Did Not Misapprehend Any Other "Facts" .......................................... 9

III.    **CONCLUSION** ................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**          **Page(s)**

*Brambles USA, Inc. v. Blocker*,
  735 F. Supp. 1239 (D. Del. 1990)............................................................2

*Dentsply Int'l, Inc. v. Kerr Mfg. Co.*,
  42 F. Supp. 2d 385 (D. Del. 1999)....................................................2, 10

*Inline Connection Corp. v. AOL Time Warner Inc.*,
  395 F. Supp. 2d 115 (D. Del. 2005)........................................................2

*Mathis v. Spears*,
  857 F.2d 749 (Fed. Cir. 1988)................................................................3

*Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*,
  726 F.3d 1359 (Fed. Cir. 2013)..............................................................3

*In re Rembrandt Techs. LP Patent Litig.*,
  899 F.3d 1254 (Fed. Cir. 2018)..............................................................9

*Wi-LAN Inc. v. Sharp Elecs. Corp.*,
  992 F.3d 1366 (Fed. Cir. 2021)........................................................7, 10

**Other Authorities**

Fed. R. Civ. P. 56(c)(2) advisory committee notes on 2010 amendments ....................................6

Fed. R. Evid. 703 ..................................................................................7

Fed. R. Evid. 803(6).........................................................................6, 7

Fed R. Evid. 901(b)(4) ..........................................................................7

4 *Weinstein's Federal Evidence* § 703.05 n.12...............................................7

## I.    INTRODUCTION

After years of prolonging this litigation in pursuit of meritless claims, Wi-LAN[1] now claims that reargument is warranted as to the Court's award of attorneys' fees because Wi-LAN "could not have known" the lack of support for its claims.  There is no basis for reargument.

Wi-LAN has "been on notice since the very beginning of the case that they were going to need source code from third parties" in order to prove infringement.  D.I. 182 at 25-26; *see also* D.I. 71 at 3; D.I. 25 at 14; ; D.I. 91 at 16, 32-33.  In particular, Wi-LAN needed source code dated 2009 to 2017 from third-party SoC (system-on-chip) manufacturers.  Wi-LAN failed to diligently pursue that necessary discovery.  D.I. 565 at 4.  After seeking multiple extensions of deadlines to obtain the source code, Wi-LAN resorted to an unusual strategy:  It filed lawsuits against the relevant third parties and then offered to dismiss the suits only if the third parties signed declarations (authored by Wi-LAN) regarding the source code.  Although some of the third parties ultimately capitulated, Wi-LAN still came up short.  By April 26, 2018, Wi-LAN had just a single version of source code, accompanied by a declaration claiming that there were "no material differences" between the 2017 source code produced and any versions used since 2009. D.I. 565 at 8. That assertion was not only provably wrong, but also inherently unreliable due to the circumstances in which the declarations were was obtained. *Id*. at 6.  D.I. 446, Exs. 9-14. Wi-LAN "should have realized" it lacked admissible evidence that was "absolutely critical" to its claims.

---

[1] Defendants' Motion to Declare the Case Exceptional sought fees against "Wi-LAN," which was defined to include Wi-LAN Inc. and Quarterhill Inc.  *See* C.A. No. 15-379, D.I. 546 at 1. Wi-LAN did not oppose this request in its opposition or reconsideration motion and the Court granted the motion against Wi-LAN.  Nor could Wi-LAN oppose the inclusion of Quarterhill, pursuant to its agreement that "[f]or purposes of . . . any attempt by SEC to obtain attorneys' fees or costs, or any other issue in this case, the new Wi-LAN Inc. plaintiff will not contend that . . . SEC is limited in any way from seeking or recovering attorneys' fees or costs from either the original [plaintiff, *i.e.,* the Wi-LAN entity that changed its name to Quarterhill, Inc.] or new Wi-LAN Inc. plaintiff."  C.A. No. 15-379, D.I. 202 at 1 n.1; C.A. No. 15-788, D.I. 150 at 1 n.1.

*Id.* at 6-7.  Undeterred, Wi-LAN continued to assert the '654 patent, forcing Defendants to expend significant resources demonstrating why those claims were wholly lacking in merit.

After Wi-LAN lost on all of its claims both in this Court and on appeal in the Federal Circuit, Defendants moved for attorneys' fees based, among other things, on Wi-LAN's refusal to give up its '654 patent claims despite the utter lack of evidence in support.  The Court agreed that the case was exceptional, including because Wi-LAN had to have known that its only evidence to show infringement of the '654 patent was not credible or admissible.  The Court then granted attorneys' fees from April 26, 2018—when Wi-LAN obtained the last third-party source code declaration—through September 19, 2019, the entry of final judgment.  Wi-LAN now seeks reargument on the award of attorneys' fees.

## II.    ARGUMENT

Motions for reargument "should only be granted sparingly and should not be used to rehash arguments already briefed or to allow a 'never-ending polemic between the litigants and the Court."  *Dentsply Int'l, Inc. v. Kerr Mfg. Co.*, 42 F. Supp. 2d 385, 419 (D. Del. 1999); *see also Brambles USA, Inc. v. Blocker*, 735 F. Supp. 1239, 1240 (D. Del. 1990) (reargument does not "allow for endless debate between the parties and the Court").  As such, reargument is granted "only in narrow circumstances": "when (i) the court has patently misunderstood a party; (ii) the court has made a decision outside of the adversarial issues presented to the court by the parties, or (iii) the court has made an error not of reasoning but of apprehension."  *Inline Connection Corp. v. AOL Time Warner Inc.*, 395 F. Supp. 2d 115, 117 (D. Del. 2005).

Invoking only the last of these circumstances, Wi-LAN argues that this Court "misapprehended" the proper start and end dates for the period of attorneys' fees, as well as other supposed facts bearing on the admissibility of the source code.  In reality, Wi-LAN's arguments ignore the record and merely disagree with the Court's reasoning; they come nowhere close to

demonstrating a misapprehension of facts or the law.  Reargument thus is not available to air Wi-LAN's grievances.  And Wi-LAN is wrong on the merits in any event.

An award of attorneys' fees, Wi-LAN maintains, "is intended to 'serve the important interest of deterrence.'"  D.I. 567 at 4 (quoting D.I. 565 at 11).  Here, Wi-LAN wasted enormous resources by continuing to assert the '654 patent long after it had to have realized—or at very least "could have realized," *Id.* at 2 (capitalization omitted)—that it lacked any credible, admissible evidence to support its claim.  Given the glaring nature of the defects in Wi-LAN's case,  Wi-LAN escalated Defendants' litigation costs and sought to pressure them into settlement.[2]

### A.  This Court Did Not Misapprehend The Date By Which Wi-LAN Did Or Should Have Realized That It Lacked Admissible Evidence Of Infringement.

Wi-LAN principally objects to the Court's determination that attorneys' fees should be awarded starting April 26, 2018—when Wi-LAN received the final third-party declaration and thus the latest date by which this Court found that Wi-LAN must have realized that it had insufficient evidence to prove its '654 patent infringement claims.  Wi-LAN's objection boils down to the incredible claim that Wi-LAN "could not have realized" its evidentiary problem until Defendants later raised an admissibility challenge in their summary-judgment filings.  D.I. 567 at 2 (capitalization omitted).  Wi-LAN is simply disagreeing with the Court's reasoning, which is not a basis for reargument.  Regardless, on the merits, the Court's reasoning is unquestionably sound.

---

[2] Wi-LAN is a large patent holder whose sole business is patent assertion.  The business is lucrative; Wi-LAN's market capitalization is over $400 million.  *See History of Wi-LAN*, http://www.wilan.com/company/wilanhistory/default.aspx (last visited Feb. 23, 2022).  It settles half of its cases, typically within 6 months of filing and at little cost to itself.  *See* D.I. 409, Ex. 33 at 1-2 (showing likely settlement in 29 of 61 cases, with a median time-to-settlement of 6.2 months).  Awarding fees is the "only deterrent to [Wi-LAN's] improper bringing of clearly unwarranted suits" to force settlement.  *Mathis v. Spears*, 857 F.2d 749, 754 (Fed. Cir. 1988).  Meanwhile, Defendants have had to spend more than ████████ to defeat Wi-LAN's meritless but persistent claims.  The ██████ in attorneys' fees sought from this Court is at minimum a reasonable—if not modest—sum for deterring Wi-LAN's "modus operandi."  *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 726 F.3d 1359, 1367 (Fed. Cir. 2013).

**1.    Wi-LAN's Claim That Defendants Did Not Challenge The Admissibility of The Code Until December 19, 2018 Is Simply Wrong.**

Wi-LAN's motion is premised on the assertion that "Defendants did not actually challenge the admissibility of the source code and SoC declarations (as a whole) until the summary judgment hearing on December 19, 2018, nearly eight months later" than the April 26, 2018. D.I. 567 at 1; *id.* at 3-4. This assertion is incorrect. Defendants repeatedly challenged the admissibility of the source code well before the summary judgment hearing. For example, on June 22, 2018, shortly after the Defendants received the declarations, they informed the Court and Wi-LAN that, even though the "Court [had] repeatedly ordered Wi-LAN to obtain the relevant code[,] … Wi-LAN failed to obtain evidence establishing that it ha[d] th[e] code." D.I. 332 at 2. Although Wi-LAN had obtained a third-party declaration, Defendants explained that Wi-LAN did "not have the declarant on its witness list and th[e] declaration [could not] substitute for Wi-LAN actually obtaining code going back to 2009 (which it admittedly did not do)." *Id.* Defendants also repeatedly argued throughout the summary-judgment briefing process that Wi-LAN had massive failures of proof. The first page of their motion stated that, although Wi-LAN was required to "show that each of the televisions sold from 2009 through 2017" was infringing, Wi-LAN "never obtained … evidence" to "carry its burden at trial." D.I. 418 at 1. Instead, Wi-LAN "obtained only a single version of code … dated 2017," and then coerced third parties into signing "███████████████████████████████████████████████████████ ███████████████████████████████████'" *Id.* at 1-2. "Not only [were] these paid for, out-of-court statements *wildly unreliable and inadmissible*," Defendants continued, "they [were] plainly contradicted by the SoC manufacturers' own admissions that ███████████████████ ██████████████████████████████████████" *Id.* at 2 (emphasis added). Thus, Wi-LAN's assertion that Defendants "first challenged the admissibility of the source code" on

4

December 19, 2018 is incorrect.[3]

**2.      Wi-LAN Knew Or Should Have Known That The Code Was Not Admissible By No Later Than April 26, 2018.**

It blinks reality, moreover, to suggest that Wi-LAN had no way of grasping that its source-code evidence might be inadmissible until Defendants raised the issue.  Wi-LAN had notice in spades by no later than April 26, 2018, when "Wi-LAN obtained the last of the foreign third-party SoC manufacturer's declarations."  D.I. 565 at 7.  Wi-LAN knew well in advance of that date that a single version of the source code from 2017 and the Wi-LAN authored declarations were "all it was going to be able to get" in terms of evidence.  *Id.*  And that evidence raised "many issues," including the "crucial point of whether the source code materially changed" between 2009 and 2017, the relevant period for Wi-LAN's infringement contentions.  *Id.*  Although the declarations stated tersely that there were "no material differences" between the 2017 version of the source code and versions used since 2009, the declarations had been drafted before this Court even issued its claim-construction order, prompting the obvious "question of just how could the declarants [have known] what distinctions were material" in this case.  *Id.* at 7-8.  Making these obvious admissibility concerns worse, Wi-LAN procured its evidence under highly suspect circumstances—circumstances that Wi-LAN itself created.  *See id.*

Wi-LAN makes no serious attempt to dispute any of these facts.  Yet these facts lead

---

[3] That the Court "ordered additional briefing" on admissibility after the December 19, 2018 does not mean the issue of admissibility only arose at that hearing. D.I. 567 at 4.  In reality, the Court ordered additional briefing because Wi-LAN had ignored this issue in its briefs, "had no helpful answer to the Court's questions" on admissibility at the hearing, and indeed "seem[ed] to have no real strategy" for "how it was going to admit the evidence necessary to prove its case on the '654 patent."  D.I. 565 at 8.  That is remarkable given the serious admissibility questions that arose on the face of the evidence, which were repeatedly pointed out to Wi-LAN and which Wi-LAN discussed extensively with ████████ and ████████ counsel.  If the Court's order of additional briefing demonstrates anything, it is the exceptional lack of consideration Wi-LAN paid to a critical defect in its case, the judicial resources wasted over Wi-LAN's blunders, and the importance of deterring such litigation conduct.

directly to the Court's conclusion that Wi-LAN "had to have known" "[b]y no later than [April 26, 2018]" that it "lacked sufficient admissible evidence to prove its infringement contention." *Id.*[4]

### 3.   The Court Did Not Misapprehend Wi-LAN's Arguments Concerning Admissibility

Wi-LAN abandons all pretense of having any basis for reconsideration by simply rehashing its twice-rejected arguments on admissibility, D.I. 567 at 5-7, ignoring the fact that "both this Court and Federal Circuit found that [Wi-LAN's arguments] *did not … come close* to supporting admissibility." D.I. 565 at 8 (emphasis added).

For example, attempting to claim the source code as an admissible business record under Rule 803(6) would have required Wi-LAN to establish admissibility through testimony from a "custodian or another qualified witness" who is available to testify at trial. Fed. R. Evid. 803(6); *see also* Fed. R. Civ. P. 56(c)(2) advisory committee's notes on 2010 amendments.  But, as Wi-LAN itself knew (and the Court obviously did not misapprehend), it could not obtain that testimony.  One third party had already told Wi-LAN that it did "█████████████████

███████████████████████████████████████████████

████████████."  D.I. 423, Ex. 50, at 3.  And as Wi-LAN's counsel acknowledged to this Court, Wi-LAN did not "think that [it would be] able to force" the declarants who signed the Wi-LAN-authored declarations "to come to trial"—an unsurprising admission given the circumstances

---

[4] Wi-LAN's inability over the years to gather any evidence further belies Wi-LAN's professed ignorance:  Clearly Wi-LAN knew what evidence it would need, had a great deal of time to figure out ways to obtain it, and unsuccessfully pursued multiple avenues for doing so.  In fact, Wi-LAN's counsel told ██████ in ████████ that production of "████████ ████████████" D.I. 423-3, Ex. 50 at 1.  Yet, two months later, Wi-LAN signed an agreement with ████████████████████████████████████  D.I. 423-4, Ex. 56.  That is, Wi-LAN got the exact evidence its counsel said would "██████████."

in which Wi-LAN procured the declarations.  D.I. 471 at 43-44.[5]

Wi-LAN also had to have known by April 26, 2018 that the source code was not admissible under Rule 901(b)(4).  That Rule would have permitted the source to be admitted into evidence only if "all the circumstances" showed that the source code was what Wi-LAN claimed it to be. Fed. R. Evid. 901(b)(4).  But, as this Court found, "the highly dubious circumstances surrounding the production and the lack of indicia of trustworthiness in the source code" demonstrated just the opposite of what Rule 901(b)(4) demands.  Given that Wi-LAN itself created those dubious circumstances, there is nothing amiss in the Court's reasoning.

Wi-LAN also knew or should have known by April 26, 2018 that Rule 703 could not serve as a basis for admitting the source code.  Although that Rule allows for the admission of certain evidence through expert testimony, it "does not make admissible otherwise inadmissible evidence."  4 *Weinstein's Federal Evidence* § 703.05 n.12.  Any other rule would create a massive workaround to the rules of evidence.  *See* D.I. 416 at 10 (rejecting Wi-LAN's attempt to "create a 'backdoor' to allow the admission into evidence of otherwise inadmissible declarations and other materials simply because they might assist the jury's evaluation of an expert's opinions").  *See also Wi-LAN Inc. v. Sharp Elecs. Corp.,* 992 F.3d 1366, 1375 (Fed. Cir. 2021) ("Wi-LAN attempts to do exactly what is impermissible under Rule 703 by using its expert as a substitute for a fact witness to circumvent the rules of evidence to admit otherwise inadmissible evidence.").  As the Federal Circuit emphasized, "[t]hese principles have been reaffirmed repeatedly."  *Id.* at 1374.

---

[5] The declarations themselves plainly were not admissible business records either, and nothing about the Court's decision misapprehended that conclusion.  Wi-LAN knew that the declarations had been generated in the course of its lawsuits against third-party SoC manufacturers that were apparently filed for the specific purpose of obtaining such evidence.  That is not "in the course of a regularly conducted activity of a business."  Fed. R. Evid. 803(6)(B).

4.      **Wi-LAN's Assertion That Its Exceptional Misconduct Was Permissible Until The Defendants Challenged It Is Unavailing.**

At bottom, Wi-LAN's position is that it can advance meritless positions that make a case exceptional, but liability for that conduct only attaches when Defendants point out what Wi-LAN already knew or must have known.  *See* D.I. 567 at 4.  Defendants did not have any such obligation. Indeed, if a litigant's fee liability did not arise until after the opponent discovered and objected to improper conduct, an award of fees would fail to serve the award's "intended" purpose of "'deterrence.'"  *Id.* (quoting D.I. 565 at 11).  Wi-LAN's approach would in fact undermine that purpose by providing litigants an incentive to knowingly engage in baseless litigation maneuvers and wait and see if their opponents spend vast sums to try to knock back each meritless approach. That is what happened here, as Wi-LAN needlessly dragged out an unfounded case and racked up Defendants' litigation costs.

Although Wi-LAN is correct that attorneys' fees serve to compensate, not to punish, the April 26, 2018 date does not "penalize Wi-LAN for attempting to obtain evidence of Defendants' infringement."  D.I. 567 at 4-5.  That date is not when Wi-LAN began "attempting to obtain" such evidence; it is the date by which Wi-LAN had signed versions of declarations it had drafted almost a year earlier.  Wi-LAN knew or should have known it could not advance its case well before then. April 26, 2018 onwards thus represents the period during which Wi-LAN unquestionably continued to press costly litigation of its '654 patent claims despite knowing that it had no credible, admissible evidence in support.  The Court's award of attorneys' fees properly deters that behavior by shifting the burden of the costs Wi-LAN unnecessarily imposed on Defendants back to Wi-LAN.

B.      **This Court Did Not Misapprehend The Date Through Which Defendants Suffered Losses Due To Wi-LAN's Continued Assertion of the '654 Patent.**

Wi-LAN also challenges the date on which the Court found that Wi-LAN ceased owing

Defendants attorneys' fees.  This Court correctly determined that, as a result of Wi-LAN's pursuit of unsubstantiated claims, Defendants continued to suffer losses through the entry of final judgment on September 12, 2019.  D.I. 565 at 9, 11.  That is the date on which the Court finally dismissed Wi-LAN's claims as to the '654 patent, and thus the date on which Defendants were at last discharged from their obligation of defeating those claims.

Wi-LAN argues that there is no "causal connection between the [claimed] misconduct and the fees awarded," *In re Rembrandt Techs. LP Patent Litig.*, 899 F.3d 1254, 1280 (Fed. Cir. 2018), beyond the Court's summary-judgment order regarding the '654 patent, D.I. 567 at 5.  This ignores that even after summary judgment, Defendants still had to brief whether final judgment on the '654 patent was appropriate.  *See, e.g.*, D.I. 502.  Until the Court actually entered final judgment on the '654 patent claims, Defendants remained saddled with costs related to those claims.  Besides, when Defendants submitted their fee award, they *excluded* any fees related to patents other than the '654 patent.  *See* D.I. 570.  Thus, the causal connection between Wi-LAN's decision to continue pressing the '654 patent and Defendants' losses is clear and direct.

### C.    The Court Did Not Misapprehend Any Other "Facts."

Wi-LAN concludes its motion by rehashing arguments that it had "legitimate reasons" for continuing to assert infringement after April 26, 2018.  D.I. 567 at 6-8.  These arguments have already been rejected by this Court and none provides a basis for reargument.

Wi-LAN claims that the Court "misapprehended" that Wi-LAN allegedly had admissible evidence after April 26, 2018 from Sigma Designs, a third-party SoC manufacturer.  *Id.* at 6.  There was no misapprehension.  The other third-party SoC manufacturers accounted for virtually all the chips at issue.  *See* Attorneys' Fees H'g Tr. 50:3-5 (Ex. 1).  Sigma manufactured at most one chip, and there can be no credible claim that advancing a case when Wi-LAN knew it could not prove infringement for dozens of chips and millions of televisions was anything but exceptional.

Next, Wi-LAN claims that it could have proven infringement through testing of Defendants' televisions. But Wi-LAN conspicuously omits any evidence or argument that it tested or even could have tested every accused product, and Wi-LAN's case has never been about testing. That is why, from the start of this suit, Defendants and the Court have repeatedly said that Wi-LAN will need the source code, *see supra* at 4; and why Wi-LAN likewise has maintained in every version of its infringement contentions that "███████████████████████" infringement, D.I. 472, Ex. 6 at 3-13; Ex. 27 at 4-15. Were Wi-LAN instead able to prove infringement by merely having an expert analyze testing conducted on Defendants' products, Wi-LAN's multiple requests for extensions specifically to obtain the source code would have been puzzling indeed. And besides, as Defendants have explained and Wi-LAN has failed to refute, the technology of the devices in question is such that testing alone is incapable of revealing infringement. *See* Attorneys' Fees H'g Tr. 47:12:19 (Ex. 1).

Lastly, Wi-LAN claims that it had admissible expert testimony of infringement because the 2017 source code its expert relied upon was "of a type reasonably relied upon by experts in the field." D.I. 567 at 7. This Court and the Federal Circuit have explained the obvious error in that argument, which is that although experts may of course reasonably rely on source code, they may not reasonably rely on *unauthenticated* source code. *See, e.g.*, *Wi-LAN*, 992 F.3d at 1376; D.I. 416, at 9-10. Reargument is not the place for Wi-LAN to "rehash" these arguments that have "already [been] briefed" and rejected. *Dentsply*, 42 F. Supp. 2d at 419.

## III.   CONCLUSION

The Court should deny Wi-LAN's motion for reargument and issue an order directing Wi-LAN Inc. and Quarterhill, Inc. to immediately pay Defendants their incurred fees of $4,201,620.75. *See* D.I. 570 and exhs. thereto.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*

_____

Jack B. Blumenfeld (#1014)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Sharp Electronics Corporation*


OF COUNSEL:

Gianni Cutri
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

Michael W. De Vries
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, CA 90071
(213) 680-8400

Adam R. Alper
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
(415) 439-1400


February 23, 2022

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Pilar G. Kraman*

_____

Pilar G. Kraman (#5199)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
pkraman@ycst.com

*Attorneys for VIZIO, Inc.*


OF COUNSEL:

Stanley M. Gibson
Jessica Newman
JEFFER MANGELS BUTLER & MITCHELL LLP
1900 Avenue of the Stars, 7th Floor
Los Angeles, CA  90067
(310) 203-8080

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on March 2, 2022, a copy of the foregoing document was served on the persons listed below in the manner indicated:

**<u>BY EMAIL:</u>**

Brian E. Farnan
Michael J. Farnan
FARNAN LLP
919 N. Market Street, 12th Floor
Wilmington, DE 19801
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com


*Attorneys for Plaintiff*

Jeffrey R. Bragalone
Daniel F. Olejko
Terry A. Saad
BRAGALONE OLEJKO SAAD PC
Chase Tower
2200 Ross Avenue, Suite 4500W
Dallas Texas 75201-7924
jbragalone@bosfirm.com
dolejko@bosfirm.com
tsaad@bosfirm.com


YOUNG CONAWAY STARGATT
& TAYLOR, LLP

 */s/ Pilar G. Kraman*
Pilar G. Kraman (No. 5199)
Rodney Square
1000 N. King Street
Wilmington, DE 19801
(302) 571-6600
*pkraman@ycst.com*

Dated: March 2, 2022

*Attorneys for Defendant VIZIO, Inc.*