IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WI-LAN INC., | : |
| Plaintiff, | : |
| v. | :  C.A. No. 15-379-LPS |
| SHARP ELECTRONICS CORPORATION, | : |
| Defendant. | : |
| WI-LAN INC., | : |
| Plaintiff, | : |
| v. | : C.A. No. 15-788-LPS |
| VIZIO, INC., | : |
| Defendant. | : |

## MEMORANDUM ORDER

At Wilmington this **3rd** day of **February, 2022**:

WHEREAS, Defendants Sharp Electronics Corporation ("Sharp") and VIZIO, Inc. ("VIZIO," and, together with Sharp, "Defendants") moved for a determination that this case is exceptional and for attorneys' fees and related costs under 35 U.S.C. § 285 (*see* C.A. No. 15-788 D.I. 470; C.A. No. 15-379 D.I. 545);

WHEREAS, Defendants and Plaintiff Wi-LAN Inc. ("Wi-LAN") submitted full briefing and related materials regarding Defendants' fee motions (*see, e.g.*, D.I. 546, 555, 557);[1]

WHEREAS, having carefully considered the briefing and related materials, the Court heard argument on Defendants' fee motions by teleconference on January 26, 2022;

---

[1] Docket citations are made to C.A. No. 15-379 and apply equally to corresponding filings in C.A. No. 15-788.

1

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Defendants' motions for attorneys' fees (C.A. No. 15-788 D.I. 470; C.A. No. 15-379 D.I. 545) are **GRANTED IN PART** and **DENIED IN PART**.

The Court's Order is consistent with the bench ruling announced at the conclusion of the hearing, excerpts of which are reproduced below.[2]

> Under 35 U.S.C. § 285, in exceptional cases, the Court may award reasonable attorney fees to the prevailing party. Here, there is no dispute that the defendants are the prevailing parties, so I will not address that requirement any further.
>
> An exceptional case is one that stands out from others with respect to the substantive strength of a party's litigating position, considering both the governing law and the facts of the case or the unreasonable manner in which the case is litigated.[3]
>
> The movant, here the defendants, bears the burden of proving exceptionality by a preponderance of the evidence.
>
> Ultimately, the determination of whether a case is exceptional lies within the Court's discretion based on the totality of the circumstances. And once the Court has determined that a case is exceptional, it still retains the discretion to deny an award of attorneys' fees.[4]
>
> Important to my analysis . . . in this case is that, as the Federal Circuit explained in *I.V. v. Trend Micro*,[5] the Court must make the exceptionality determination at the level of the overall case; that is, the Court must decide whether the case as a whole is exceptional.
>
> It is possible for a case to be overall exceptional based on just one or a few isolated events, but the key is that the finding must be as to the case overall considering the totality of circumstances. Thus, a framework for the analysis that I will undertake is as follows:

---

[2] The Court adopts the full bench ruling. For clarity, the excerpt of the transcript contains some minor stylistic adjustments beyond those explicitly called out below.

[3] *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).

[4] *ICON Health & Fitness, Inc. v. Octane Fitness, LLC*, 576 F. App'x 1002, 1005 (Fed. Cir. 2014).

[5] *Intell. Ventures I LLC v. Trend Micro Inc.*, 944 F.3d 1380, 1384 (Fed. Cir. 2019).

First, I will decide, up or down, whether this case as a whole is exceptional.

Second, I will then determine whether, even if it is exceptional, [I] should . . . award fees.

Third, if I decide to award fees, I then have to decide how much to award. And this third step in turn requires me to consider two subsidiary considerations: (a) is there a reason to tailor the amount awarded to only that conduct which made the case exceptional overall; that is, is there a need to calibrate the amount the moving party must pay to reflect only the fees incurred by the prevailing party that were in some way caused by the losing party's conduct that makes the case exceptional overall? And, (b), the fees must be reasonable in terms of hours expended and rates charged.

So with that background, let me turn to the analysis. Defendants here seek attorneys' fees and costs on the basis that Wi-LAN's assertion of three patents, what I'll refer to as the '654, '250, and '774 patents[,[6]] . . . throughout the litigation was exceptional within the meaning of Section 285.

Before I turn to the arguments with respect to each patent specifically, I want to make some high-level observations about this case as they demonstrate why, in my view, determining the right resolution to the pending motions has been very challenging.

First, as I will explain, I disagree with a lot of the broad accusations defendants have made in their characterization of this case as akin to a nuisance suit and a case that was frivolous and doomed from the start. . . .

Second and relatedly, I cannot say that this is [a] case I believe plaintiff should have been deterred from ever filing.

Third, I agree with the plaintiff that this case did involve routine disputes and that plaintiff prevailed on some of them.

But fourth, and very importantly, this case consisted of more than just mere routine disputes in a run-of-the-mill patent case. In particular, how the plaintiff handled the issues relating to the source code and the other evidence necessary to prove infringement of the '654 patent does make this case stand out and makes it overall exceptional.

In relation to this evidence, plaintiff did not act with the diligence it should have, and it never attained reliable and admissible evidence that was crucial to its case. Yet, plaintiff continued to assert the '654 patent long after it knew or, at minimum, should have known, it could not prevail on its claims of infringement of

---

[6] The full citations for the patents are: U.S. Patent Nos. 6,359,654, 6,490,250, and 5,847,774.

that patent.

So let me start by analyzing the '654 patent issues. As to the '654 patent, defendants first argued Wi-LAN advocated an exceptionally weak position by asserting a direct infringement theory based on . . . *SiRF Technology*.[7]

. . .

In granting defendants' motion for summary judgment, this Court found Wi-LAN's reliance on *SiRF* "unavailing."[8]

. . .

While this Court ultimately rejected plaintiff's theory . . . at the summary judgment stage, it is not persuaded that Wi-LAN's theory was so far-fetched as to make this case exceptional. [And, a]lthough this case is distinguishable from *SiRF*, Wi-LAN's reliance on *SiRF* did not constitute such a weak litigation [position] that it makes this case, as a whole, exceptional.

. . .

Next, defendants [argue] . . . that Wi-LAN's decision to continue litigating the '654 patent after failing to obtain admissible evidence renders this case exceptional.

As the Court will explain, it does agree in part with defendants' position. From the beginning of this case, it's important to point out[,] Wi-LAN knew that to prove its direct infringement case, it would need source code from third party SoC manufacturers for the period of 2009 to 2017. And when I say "the beginning of this case," I mean no later than the initial case management conference.

Defendants explained that reality at the initial case management conference in February 2016 and reiterated it during the July 2016 discovery teleconference.

During discovery, Wi-LAN requested several extensions to serve its infringement contentions. And the Court expressed skepticism that plaintiff had been diligently pursuing this discovery.

For example, in September 2017, the Court stated: "I really am not persuaded that through reasonable diligence, plaintiff could not have met the deadline that I already set or possibly even one of the earlier deadlines that I had set."[9]

---

[7] *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319 (Fed. Cir. 2010).

[8] D.I. 487 at 12.

[9] D.I. 182 at 26.

4

At that same conference, I said that already at that time, "a really strong case" could be made that I should deny plaintiff any further time to obtain the evidence it had still yet to obtain.[10]

On appeal, the Federal Circuit also addressed Wi-LAN's diligence. And I think it agreed with me that Wi-LAN should have done better. For that, I point specifically to . . . the opinion issued by the Federal Circuit:

> Wi-LAN had ample time to obtain the source code and to find custodial witnesses to authenticate the source code over the course of discovery but failed to do so.
>
> Wi-LAN had been on notice since early 2016 that it was going to need the system-on-chip source code from third parties to prove its direct infringement case. Throughout the litigation, Wi-LAN repeatedly requested extensions of time to obtain the source code from the third-party manufacturers. Ultimately, however, Wi-LAN only procured a single printout version of the source code with declarations after suing the third party manufacturers.[11]

Wi-LAN maintains now that it diligently pursued such discovery, including by issuing subpoenas and engaging in negotiations with third parties. The process, it contends, was substantially hampered by much of the relevant source code residing out[side] of the United States and resistance from third party production of this highly confidential information. And Wi-LAN's correspondence with some of the third party SoC manufacturers reflects this resistance.

Ultimately, unable to obtain the source code it needed, Wi-LAN sued the SoC manufacturers for patent infringement. And although Wi-LAN appears to admit that these lawsuits were aimed at securing the discovery it could not obtain in this case, Wi-LAN, nonetheless, maintains that it has legitimate claims against these SoC manufacturers as inducing and/or contributory infringers.

The fact that Wi-LAN procured this evidence by filing these suits does not . . . amount to harassment, as defendants allege, or make this case exceptional.

. . . The Court doesn't agree with the defendants, as I noted, that this was harassment, but I also don't agree with Wi-LAN.

Wi-LAN contends this evidence is irrelevant and that I must focus just on the two cases before me; that is, the suits against Sharp and VIZIO, which are related and

---

[10] *Id.* at 25-26.

[11] D.I. 539-1 at 18.

are both the subject of today's hearing and of my ruling. And that I shouldn't look at any other cases. Under the circumstances here, I disagree with Wi-LAN. The other suits are the very mechanism by which Wi-LAN obtained evidence that it interjected into this case. Evidence on which my summary judgment decision largely turned.

Where that evidence came from and the circumstances under which it was acquired and produced into this case was pertinent to my summary judgment analysis. Specifically, the application of the various rules of evidence. And [it] is a relevant and fair consideration on a 285 motion.

On that point, I would add that the whole set of circumstances relating to how the plaintiff obtained the third party [declarations,] and tried to use [them] in this case, and failed to justify [their] admissibility, and did not act with the thorough diligence [with] which it should have, together make this case overall stand out from the rest and make it exceptional.

But in saying that, I do want to emphasize I disagree with defendants' nefarious interpretation of plaintiff's efforts to acquire the source code. They have not proven by the required preponderance of the evidence that plaintiff all along really preferred not to even obtain the source code as part of a strategy to drive up defendants' costs without ever genuinely intending to resolve this case on the merits.

I'm not persuaded that plaintiff's lawsuits were designed to and/or yielded false evidence . . . from the third parties or that these third parties were induced to supply false evidence as part of a sweetheart deal to avoid expensive patent litigation.

As I said in the summary judgment opinion, the circumstances by which plaintiff came to acquire the SoC manufacturers' evidence undermine the reliability and credibility of the evidence, which supported the Court's conclusion on non-admissibility. But none of that means that I'm buying into the alleged nefarious scheme that defendants accused plaintiff [of] having engaged in with respect to that evidence.

While I do not find that Wi-LAN's assertion of the '654 patent against the two defendants was frivolous or in bad faith from the start, there did come a point at which, based on the developments of the litigation and particularly all those surrounding circumstances related to the source code and the related evidence, . . . it was no longer reasonable, in my opinion, for Wi-LAN to continue to press its '654 [patent] infringement claims against these defendants.

At some point, Wi-LAN should have realized, and I think did realize, that the lawsuits against the third party manufacturers and the other efforts to obtain the evidence would ultimately yield nothing more than a single version of RTL source code from 2017, and the accompanying declarations stating that there are no

6

material differences between the version of the code produced and any versions used through 2009.

At some point, Wi-LAN should have realized that this was the best it was going to get and that it would not be enough – not enough to persuade a factfinder on the merits by a preponderance of the evidence and not enough, even, to survive a summary judgment motion for noninfringement.

Wi-LAN should have realized its evidence would not be viewed as reliable or admissible and should have, and I think did, know that its declarants would not show up at trial. So, again, from all of that, [it] should have realized it did not have sufficient admissible evidence to sustain its burden on infringement.

The . . . admissible evidence that was missing, Wi-LAN had to know, was crucial to its effort to prove infringement of the claims of the '654 patent. It was absolutely critical that Wi-LAN have sufficient admissible evidence on these points to press its case to a successful conclusion.

Wi-LAN should have, and I think did, realize this at some point. And after that point, Wi-LAN should not have continued to litigate its claim that defendants infringed the '654 patent. That Wi-LAN nonetheless continued to do so makes this case overall stand out from the rest and makes it exceptional.

So among the many difficult questions implicated by th[ese] motions [is:] what is that point? When is that date after which Wi-LAN should have turned back and not continued to assert the '654 patent against these defendants?

It's difficult to identify with precision, but I need to make some finding. And I'm sure multiple dates could be justified based on the evidence, but the date that I have determined is most fair to use is April 26, 2018. That is the day that Wi-LAN obtained the last of the foreign third party SoC manufacturers' declarations from MStar. . . . By no later than that date, Wi-LAN had to have known it could not survive the defense motion for summary judgment of noninfringement because of its lack of critical, admissible evidence.

With the declarations in hand and knowing that was all it was going to be able to get from these third parties, by no later than that date, Wi-LAN had to have known it lacked sufficient admissible evidence to prove its infringement contentions. It had to have known [about] the many issues relating to the reliability of the declarations on the crucial point of whether the source code [had] materially changed, [and about] the related issues with admissibility.

Among the problems, and they're detailed in the record, including my opinion and the Federal Circuit's opinion, . . . is that almost all of the declarations were obtained before the Court issued its claim construction order in this case, raising the question of just how could the declarants [have known] what distinctions were material as it

7

pertains to this case.

Further, MediaTek had suggested earlier in the case that it could not produce anyone who could state under oath that there are no material differences between the chips over the nearly eight years.

Wi-LAN seems to have [had] no real strategy with respect to how it was going to admit the evidence necessary to prove its case on the '654 patent. It had no helpful answer to the Court's questions on this issue at the summary judgment hearing. Later, it did cite to various Federal Rules of Evidence, but both this Court and the Federal Circuit found that they did not, any of those rules, come close to supporting admissibility here.

[W]e heard . . . some back and forth from both sides on the Federal Circuit opinion and that [it]'s a precedential opinion and fairly detailed. . . .

One could speculate, as the plaintiff has, that this means the Federal Circuit thought these are difficult, substantive issues, and that should affect or incline me to think that the case is not exceptional. The defendants alternatively speculate that some of the plaintiff's arguments, particularly on the evidentiary point, are so weak that the Federal Circuit thought it important to deal with that on a precedential opinion because it [has] never seen them before and never wanted to see them again. I don't know, and none of us know.

[T]he exceptional nature of the case was not an issue before the Federal Circuit at that time, and . . . I see no reason to credit anybody's speculation on that point for today's disputes.

But for the reasons that I have tried to give relating to the handling by Wi-LAN of the issues, relating to obtaining crucial admissible evidence necessary to prove its claims of infringement of the '654 patent, for those reasons, I do find that this case stands out from others and is overall, as a case in the totality, exceptional. And that's why I've granted the defendants' motion[s] in part.

It's notable, too, in this regard, that in connection with this whole set of issues relating to source code, infringement contentions, and the ultimate admissibility of the evidence, these issues which arose multiple times, as detailed in the record, including in the briefing and in argument on today's motion[s], it's notable that I advised the parties way back in December 2016,[12] that defendants at the conclusion of the case may cite their experience with plaintiff's infringement contentions as a basis for arguing that this case is exceptional for purposes of Section 285.

---

[12] D.I. 137.

8

This is not the only case in which I have said similar things well before the end of the case, but it doesn't happen very often. And that's further evidence that this case does stand out from the many, many other patent cases that I have handled.

So the Court will be requiring Wi-LAN to pay defendants' reasonable attorneys' fees incurred in connection with defending against assertion of the '654 patent claims from the date Wi-LAN obtained the last of the third party declarations, that is April 26, 2018, through this Court's entry of final judgment as to the '654 patent, which occurred on September 12, 2019.

The Court's fee award reflects the unnecessary effort defendants had to expend to continue defending claims that Wi-LAN knew or should have known by no later than the date I identified, rested on unreliable, insufficient, and inadmissible evidence.

This type of analysis and the award that I'm granting is, I believe, fully consistent with *I.V. v. Trend Micro*, [in which the Federal Circuit stated:] "[C]ourts frequently award attorney fees under § 285 in an amount related to particular conduct and circumstances that stood out and made a case exceptional, even when the entirety of the conduct in the case was not exceptional from start to finish."[13]

And I would just emphasize that my decision does not signify, in my view, that the case was only exceptional from April 2018. Rather, as the law requires, I find that overall, making a singular assessment of this case from start to finish based on the totality of circumstances, . . . Wi-LAN's continued litigation of the '654 patent from that date – despite the lack of reliable, admissible, sufficient evidence – when considered as part of the totality of the circumstances, rendered the entire case . . . exceptional.

That's all I have to say on the '654 patent. Let me briefly touch on the other two patents. There's much less to say on those.

With respect to the '250 patent, . . . I do not find that anything about the plaintiff's handling of the . . . patent makes this case exceptional. It adds no further weight to what I have already said about the '654 [patent].

The non-exceptionality of issues with respect to the '250 [patent] does not undermine the overall finding [that this is an] exceptional case, for the reasons I've given.

. . .

[Similarly,] I find nothing exceptional in how the plaintiff handled the '774 [patent]. . . . [This finding, too,] does not detract from the overall finding . . . that

---

[13] *Intell. Ventures I*, 944 F.3d at 1384.

9

the case, as a whole, is exceptional.

. . .

[The parties' disputes with respect to the '774 patent were] routine for patent litigation. This is not the only case in which I've seen parties unable to agree on the terms by which a patent will be dismissed, even when they agree that it will be dismissed and they have nothing further to fight about on that patent.

. . .

Let me say a few things in conclusion.

[F]irst, about the appeal. It's not entirely clear to me, [but] I think defendants are asking for me to award their fees that they incurred in relation to defending against plaintiff's appeal of my judgment in favor of defendants. I am not granting that portion of the defendants' motion[s].

Defendants have pointed to no aspect of the appeal that constituted either an objectively unreasonable litigating position or any other unreasonable manner of litigating.

I realize that I could allow defendants to recover additional attorneys' fees incurred in defending against the unsuccessful appeal by Wi-LAN to the Federal Circuit, even without finding that the appeal itself was in any way exceptional, but I see no meritorious basis for doing so here. Not only was the plaintiff well within its rights to take the appeal, it raised reasonable appellate issues. And I see nothing in the appellate record to indicate that it was anything other than a routine appeal.

. . .

[Second,] to the extent . . . defendants [seek] "other costs" beyond attorneys' fees, I don't have much detail in the briefing as to what other costs the defendants may be seeking to have awarded to them, but I also don't see any persuasive basis to do that.

So, in conclusion, as I have said, defendants' renewed motions for attorneys' fees and costs will be granted in part and denied in part.

. . .

To summarize the analysis in terms of the framework that I outlined at the start:

[First], I find by a preponderance of the evidence that this case, as a whole, stands out from the rest and is exceptional. This finding is based on Wi-LAN's handling of the source code and related evidence necessary to prove infringement of the

10

claims of the '654 patent. On all other parts of the case on which defendants rest their motion[s], defendants have failed to persuade me by a preponderance of the evidence that any of those other parts were individually or collectively exceptional. Still, again, however, the case, as a whole, I find, is exceptional.

Second, I find that fees should be awarded in this exceptional case. An award of fees will serve the important interest of deterrence . . . . I believe that plaintiff should have been deterred from continuing to press its infringement claims under the '654 patent after April 26, 2018.

This plaintiff, as well as others, should be deterred from doing in a future case what was done here. It was also appropriate to compensate defendants for the portion of their fees incurred in defending against the '654 [patent] after April 26, 2018 through the entry of final judgment on September 12, 2019.

Third, on the issue of how much plaintiff should pay defendants, I have already addressed what I labeled subpart (a) in the framework, and I have tailored the amount that plaintiff will have to pay to the amount that defendants incurred in fees in defending against infringement of the '654 patent after the date that I have found plaintiff should have no longer asserted that patent through the date of the entry of judgment.

With respect to what I call subpart (b), I do not yet have detailed records on the amount of hours and the billing rates that were charged and expended. Here, I will need to get some additional assistance from the parties to assess the reasonableness of the hours and the fees expended on the '654 patent in the time frame I identified.

HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT JUDGE