# Morris, Nichols, Arsht & Tunnell llp

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

(302) 658-9200
(302) 658-3989 FAX

Jack B. Blumenfeld
(302) 351-9291
(302) 425-3012 FAX
jblumenfeld@morrisnichols.com

Originally Filed:  February 16, 2022
Redacted Version Filed:  February 23, 2022

The Honorable Leonard P. Stark
United States District Court
 for the District of Delaware
844 North King Street
Wilmington, DE 19801

REDACTED - PUBLIC VERSION

Re:   *Wi-LAN Inc. v. Sharp Electronics Corp.*; C.A. No. 15-379 (LPS)
       *Wi-LAN Inc. v. VIZIO, Inc.*; C.A. No. 15-788 (LPS)

Dear Judge Stark:

Your Honor has ruled that Wi-LAN Inc. ("Wi-LAN") "should have, and I think did, realize" that it did not have "crucial" evidence necessary "to prove infringement of the claims of the '654 patent" "at some point. And after that point, Wi-LAN should not have continued to litigate its claim that defendants infringed the '654 patent" and that "[t]he Court's fee award reflects the unnecessary effort defendants had to expend to continue defending claims that Wi-LAN knew or should have known by no later than [April 26, 2018], rested on unreliable, insufficient, and inadmissible evidence." (D.I. 565 at 7.) Wi-LAN's objections to paying the fees incurred by Defendants Sharp Electronics Corp. ("SEC") and VIZIO, Inc. ("VIZIO") (collectively, "Defendants") when Wi-LAN continued to press its case should be overruled. Wi-LAN never meaningfully tried to resolve these issues in advance of its letter and the number of hours and rates are reasonable and appropriate here.

- **Wi-LAN Failed To Meaningfully Meet and Confer With Defendants When Doing So Would Have Mooted All of Its Concerns**

Defendants worked diligently to try to "agree on a dollar amount" with Wi-LAN, so that the parties would "not have to come back for more litigation" as the Court requested. (1/26/2022 Tr. at 26:16–17, 27:23–24.) But Wi-LAN failed to work with Defendants, instead lodging objections that clearly could have been resolved without burdening the Court. Specifically, on February 2, 2022, Defendants sent Wi-LAN a detailed letter enclosing all reasonable and necessary documentation to support the amount of fees it seeks to recover consistent with the Court's order. (*See* Ex. 1, 2/2/2022 Ltr.) In that letter, Defendants explained their approach and included detailed time entries substantiating how they complied with the Court's order regarding the fee calculation.

The Honorable Leonard P. Stark
February 16, 2022
Page 2

(*See id*.) Defendants also noted that under the controlling case law, the Court is not required to undertake a "green-eyeshade accountant[]" review of individual entries. *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1187 (2017); *see also In re Rembrandt Techs. LP Patent Litigation*, 899 F.3d 1254, 1280 (Fed. Cir. 2018) (finding an accounting of shifted fees "does not require a tedious, line-by-line investigation of the hours [the party claiming fees] expended"). Defendants also made clear that "if [Wi-LAN] d[id] have any concerns about the calculated amount to please let us know what those are and [that] we w[ould] quickly get on a meet and confer with you to try to resolve them in advance of [Wi-LAN's] submission." (Ex. 1, 2/2/2022 Ltr. at 3; *see also id*. at 4.) After receiving no response, counsel for Defendants reached out to Wi-LAN a few days later, making the same overture. (Ex. 2 at 2/7/2022 2:28 PM corresp.) But Wi-LAN did not respond until 3:31 P.M. on the day Wi-LAN's submission was due, and in that email identified a small number of entries Wi-LAN took issue with. (*Id*. at 2/9/2022 3:31 PM corresp.) The entries were immediately removed (*see id*. at 2/9/2022 2:50 PM CST corresp.) and Defendants immediately sought to resolve any other issues. (*Id*. at 2/9/2022 3:12 PM CST corresp.) In response, at 4:22 P.M. on the day its submission was due, Wi-LAN stated that it planned "to request that the Court require Defendants to provide more specificity in the descriptions so we can better assess whether they relate to the '654 patent" and to "object[] to Defendants' hourly rates and request[] that the Court utilize a lodestar rate of $500 an hour." (*Id*. at 2/9/2022 3:22 PM CST corresp.) Setting aside that the Court should overrule these objections because of Wi-LAN's failure to meaningfully meet and confer, neither of these supposed concerns have any merit.

- **Defendants' Time Entries Are Sufficiently Detailed**

Wi-LAN complains that SEC and VIZIO's billing descriptions are not detailed enough for Wi-LAN to determine "whether there are entries that relate only to the '250 and/or '774 patents." (D.I. 566 at 2.) This is not correct, nor is it required by the Court's award of fees. The Court ordered that the time frame for fees begins after April 26, 2018. (D.I. 565 at 11.) By that time, the Court had already ordered dismissal of the '774 patent from the case, (*see* D.I. 216; 11/13/2017 Text Order), so it is not possible that any of Defendants' fees relate to the '774 patent. With respect to the '250 patent, as Defendants explained in their letter to Wi-LAN, ███████████████████████████████████████████████████████████████████████████ Defendants did so to avoid precisely this kind of dispute, even though the Court ruled that "if work relates to the '654 and other patents, that's something [the Court] would find, in general, should be compensated, should be awarded to the defendant if it's in the time frame." (1/26/2022 Tr. at 27:24–28:2.) Wi-LAN does not identify any entries that are objectionable beyond a small number that were removed *before* Wi-LAN filed its letter. Instead, it appears that Wi-LAN wants to force Defendants to incur even more fees generating additional description, so that Wi-LAN can ask the Court to undertake a "tedious, line-by-line investigation" that the Federal Circuit and Supreme Court have repeatedly said should be avoided. *In re Rembrandt*, 899 F.3d at 1280; *Goodyear*, 137 S. Ct. at 1187; Ex. 1, 2/2/2022 Ltr. at 2–3. Accordingly, the Court should reject Wi-LAN's request that Defendants provide more detailed descriptions.

The Honorable Leonard P. Stark
February 16, 2022
Page 3

- **Defendants' Billing Rates Are Reasonable**

Wi-LAN first appears to contend that the fees requested by Defendants are unreasonable because they are higher than "a lodestar rate of $500 per hour." (D.I. 566 at 2.) Wi-LAN relies on *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1348 (Fed. Cir. 2008), but that Vaccine Act case has no applicability here. In *Avera*, the issue was whether attorneys who worked in locations (like Wyoming or Utah) and charged rates *lower* than those prevailing in the forum Court (which, in Vaccine Act cases, is D.C.) should obtain a "windfall" by utilizing D.C. rates that were higher than their actual, charged rates. *Id.* at 1349 (recognizing that the "limited exception to the forum rule under these circumstances. . . would prevent the occasional erratic result where the successful petitioner is vastly overcompensated."). This case says nothing about Section 285 and has no applicability here.

In any event, Wi-LAN cannot even establish what the prevailing rates in the Philadelphia area are. Wi-LAN points to pages from an alleged 2019 AIPLA survey as evidence of "hourly rates charged by IP attorneys in the greater Philadelphia area during the relevant time period," (D.I. 566 at 2) but the four excerpted pages Wi-LAN includes are hearsay assertions that are woefully incomplete and obviously unreliable. Scattered, unauthenticated pages of what an unidentified third party says another unidentified third party allegedly charged an unnamed client is not a proper evidentiary basis for the Court to conclude what attorneys in the Philadelphia area would have charged for this case. *See, e.g.*, *St. Clair Intell. Prop. Consultants, Inc. v. Toshiba Corp.*, 2015 WL 5826815, at *4 (D. Del. Oct. 2, 2015) (court's "refusal to permit St. Clair, through [its damages expert], to submit into evidence documents that could not be properly authenticated or shown to be non-hearsay was a straightforward application of the Federal Rules of Evidence"). Indeed, Defendants located additional pages of what appear to be the 2019 AIPLA Survey, and in those pages the unnamed authors state that they are basing their assertions entirely on "[a]n e-mail invitation to participate" in a survey, which yielded only "an 11.1% response rate." (Ex. 3, AIPLA Survey at 1.) Further, the supposed billing rates reflected for the "Philadelphia CMSA" region, including the alleged "[m]aximum billing rate for IP work," relied on information allegedly from a mere 4 firms, with no explanation of their relative size or the experience and expertise of the attorneys that allegedly responded. (*Id.* at F-22.) In addition, the AIPLA survey lists "ISD" (insufficient data) for numerous entries related to billing rates in Philadelphia. (*See, e.g.*, *id.* at I-42.) The statements have no hearsay exception and are inherently unreliable to establish what lawyers in the Philadelphia area actually charged, whether those lawyers could have achieved the results here, and what they would have charged to do so.

Instead, the circumstances confirm that the rates charged here were reasonable under the circumstances. ███████████████████████████████████████████████████████
and asked that those damages be enhanced for alleged willful infringement. SEC retained Kirkland & Ellis, a firm consistently ranked among the best for intellectual property litigation (*see* Ex. 4, (American Lawyer awarding Kirkland Litigation Department of the Year honors in 2021); Ex. 5, (New York Law Journal awarding Kirkland the 2021 IP Litigation Department of the year); Ex. 6 (Law360 naming Kirkland as a top law firm)), and utilized attorneys with substantial experience (*see* Exs. 7–12 (Bios of G. Cutri, C. DeCoro, J. Beard, J. Merkin, G. Polins, and R. Khanna)) to defend against Wi-LAN's aggressive infringement accusations. That effort was justified, as

The Honorable Leonard P. Stark
February 16, 2022
Page 4

Kirkland led the briefing on, and argued claim construction (which resulted in Wi-LAN ultimately dropping the '250 patent), as well as the summary judgment proceedings (which eliminated the '654 patent on multiple grounds), and the successful motion to declare this case exceptional.

Defendants' submission supplies the actual billed (and paid) rates for work defeating Wi-LAN's accusations (Ex. 1, 2/2/2022 Ltr. at Ex. 1 at Ex. A), but Wi-LAN appears to contend that "the amount of fees actually charged by Defendants' attorneys" cannot establish that those rates are reasonable. (D.I. 566 at 1.) However, "cases have consistently recognized that an attorney's actual billing rate for comparable work is presumptively appropriate for use as a market rate when making a lodestar calculation." *Jeffboat, LLC v. Dir., Off. of Workers' Comp. Programs*, 553 F.3d 487, 490 (7th Cir. 2009). Similarly, in the D.C. Circuit, "an attorney's usual billing rate is presumptively the reasonable rate, provided that this rate is in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Woodland v. Viacom Inc.*, 255 F.R.D. 278, 280–81 (D.D.C. 2008) (internal citations omitted). And although the Third Circuit has yet to rule on the issue, a district court in this Circuit found that "a given rate is presumptively reasonable if it is both less than that of the attorney's normal rate and is accepted in competitive bidding in the marketplace." *Gloucester Cty. Imp. Auth. v. Gallenthin Realty Dev., Inc.*, 2011 WL 3328474, at *2 (D.N.J. Aug. 1, 2011). [REDACTED] Given the presumption that the actual rates charged are reasonable, the burden shifted to Wi-LAN to show that the rates were unreasonable, *see Gloucester*, 2011 WL 3328474, at *2, something Wi-LAN made no serious effort to do.

Notably, Kirkland's rates for IP litigation have previously been found by courts to be reasonable, especially in hard-fought, high-value patent infringement cases like this one. *See, e.g.*, *Regeneron Pharms., Inc. v. Merus N.V.*, 2018 WL 3425013, at *4–5 (S.D.N.Y. Jun. 25, 2018) (finding Kirkland's "blended" partner rates and associate rates to be reasonable and awarding $1,717,100 in fees). The reasonableness of Kirkland's rates (and the rates of VIZIO's counsel) is also supported by the Valeo Partners LLC's 2019 Attorney Hourly Rate Report ("Valeo Report"), which [REDACTED]

Defendants' counsel's rates are also reasonable because they are comparable to the "prevailing market rate," which is the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 (1984). Given that Kirkland is the top-ranked AmLaw firm, the "prevailing market rate" would be the average rate shown in the Valeo Report for AmLaw Top 10 IP firms in 2018 and 2019. [REDACTED]

The Honorable Leonard P. Stark
February 16, 2022
Page 5

      Wi-LAN also purports to "blend[]" the rates of Defendants' "local counsel" and "out-of-state" counsel to argue that the Court should reduce all rates to $500. (D.I. 566 at 1.) But this is a manufactured and objectively wrong comparison. Wi-LAN is not "blending" rates, because during the relevant timeframe, ▇▇▇▇▇ such that there is not a "blended" rate at all (*see* Ex. 1, 2/2/2022 Ltr. at Ex. 2 at Ex. A), ▇▇▇▇▇. Second, for the time periods at issue, Delaware counsel was acting largely in the capacity of assisting lead counsel, ▇▇▇▇▇ Comparing the two is apples-to-oranges. ▇▇▇▇▇

      As for Wi-LAN's claim that ▇▇▇▇▇ is "more consistent with the typical cost of patent litigation during the relevant time period" (D.I. 566 at 2), Wi-LAN again relies solely on the hearsay AIPLA report for its input data, and then proceeds to make a series of self-serving and wrong assumptions (*i.e.*, that the parties "actively litigated the case" for 7 years, that all of that activity was equally distributed, etc). Worse, the AIPLA page Wi-LAN uses as its starting point confirms the amounts listed are nothing more than estimates for a "one patent" case by unnamed survey respondents. (D.I. 566 at Ex. A at 50.) And Wi-LAN uses the "median" cost, while ignoring the fact that the "mean" and 75% percentile amounts are much higher. (*See* Ex. 3, AIPLA Survey at I-150 ($4.43M and $6M for 60+ attorney firms)). At bottom, Wi-LAN's objections should be rejected, as they are intended to escape the full consequences of its intentional choice to continue asserting its infringement claims without the necessary evidence to prove its claims.

      Respectfully,

      */s/ Jack B. Blumenfeld*

      Jack B. Blumenfeld (#1014)

JBB/bac
Attachments

cc:    All Counsel of Record (via electronic mail; w/attachments)