# EXHIBITS 1-2
# REDACTED IN THEIR ENTIRETY

# EXHIBIT 3

# AIPLA

# 2019

## Report of the Economic Survey

Prepared Under Direction of
Law Practice Management Committee

**American Intellectual Property Law Association**
1400 Crystal Drive, Suite 600
Arlington, VA 22202

www.aipla.org



# Report of the Economic Survey 2019

**Prepared Under Direction of the
American Intellectual Property Law Association
Law Practice Management Committee**

**Frank L. Gerratana, Chair**

**September 2019**

**Prepared by:**



**910 Clopper Road, Suite 210N ■ Gaithersburg, Maryland 20878
TEL: (240) 268-1262 ■ ARI@associationresearch.com**

## INTRODUCTION

The AIPLA Economic Survey, developed and directed by the Law Practice Management Committee of the American Intellectual Property Law Association (AIPLA), reports the annual incomes and related professional and demographic characteristics of intellectual property (IP) law attorneys and associated patent agents. Conducted every other year by AIPLA, this survey also examines the economic aspects of intellectual property law practice, including individual billing rates and typical charges for representative IP law services. All U.S. AIPLA members, with the exception of student members were invited to participate.

The Law Practice Management Committee took an active role in reviewing the Economic Survey with a goal of improving the usefulness and value of the data that are collected and analyzed.

## DATA COLLECTION

An e-mail invitation to participate in the 2019 AIPLA Economic Survey was sent to a list of 9,439 AIPLA members; accounting for bounces and requests to be removed from the database, the actual sample surveyed was 8,619. The e-mail included an individualized direct link to the Web-based questionnaire along with an attached letter requesting additional participation in the Firm portion of the Economic Survey. The initial e-mail was followed up by several e-mail reminders. Additionally, AIPLA and committee members sent out promotional emails with survey links as well. Similar to 2015 and 2017, additional efforts were made to collect the Firm Survey data. Contact information was collected directly from the Individual Survey respondents that was then used for distributing Firm Survey links directly to the appropriate people identified at each firm by the Individual Survey respondents.

A total of 961 individuals responded by completing some or all of the Individual questionnaire, yielding an 11.1% response rate, nearly the same as the response rate in 2017. This is the seventh time the survey has been conducted online. Additional efforts to gather data for the Firm portion of the survey garnered 160 responses – lower than the 205 received in 2017.

All data submitted by respondents were reviewed and evaluated for reasonableness and consistency; data anomalies and outliers were analyzed and corrected or deleted.

In many cases, respondents did not answer every question, so the total counts for each table may vary.

## CHANGES TO THE SURVEY

A number of enhancements were made to the 2019 Individual Survey instrument. The committee worked to update the survey and included new questions that covered important areas of interest to the profession. In Part I, the primary practice categories were updated, and questions about remote work and work status were added. Previously, the survey asked for years of IP law attorney experience and this year non-attorney years of IP law experience was added. A number of questions were reordered in this section.

In Part II (Corporate Practitioners), a question was added to ask about the IP budget as it related to US prosecution and non-US prosecution. Part III (Private Practitioners) included new questions about discounted hourly billing rates. In Part IV (Typical Charges), one new charge was added to the section covering Trademarks (preparing and filing assignments or other formal documents). Eight new charges were added to the US Utility Patent section along with a top-level clarifying statement about US Utility Patents that indicates that the category includes foreign-origin patents where no substantive direction is received from foreign attorneys. These new items covered preparation and filing of Information Disclosure Statement (IDS), reference management, Patent Term Adjustment (PTA) calculation, formalities, preparing and filing formal drawings,

preparation for and conducting examiner interviews and providing a continuation recommendation. The PTA calculation was stated to be excluded from an above item related to issuing an allowed application. The previously titled Foreign Origin and Foreign Patents category was renamed to US Utility Patents of Foreign Origin with the following clarifying statement: *in which foreign attorneys provide substantive direction. Exclude government, foreign associate, drawing and similar fees.* An entirely new category for Filing US Applications Abroad was added, and Other US Patents and Copyrights was expanded to include charges for formal drawings for design patent application, preparing and filing international design patent application under the Hague agreement, and responding to Office action in design patent application. Transactional Work that included due diligence, and preparing licenses, including negotiations was also added.

The litigation cost question for the total cost of filing or defending a petition for a post-grant proceeding was expanded to collect data by technology.

The 2019 Firm Survey instrument updated the titles for the types of attorneys for various questions, and most significantly added a section to collect the charges data similar to those collected in the Individual Survey. The charges data collected from the Firm Survey were combined with the Individual Survey charges data, and for this reason a new question about the number of full-time IP lawyers and patent agents at all locations was added to the Firm Survey in order to have corresponding demographic data when combining the two sets of data.

In the data tables in the report, a minimum of three responses was required to show composite values. **The term "ISD" is used in the tables to show insufficient data.** Similar to the past few reports, table rows with one or two respondents have been omitted to protect the anonymity of respondents, and tables with no valid rows have likewise been omitted. In general, tables with less than 20 respondents overall were not shown in order to maintain statistical reliability of the data; however, for the new category Private Firm, Non-Partner Track Attorney, as well as for Patent Agents, a number of exceptions were made and tables were kept in spite of having fewer than 20 respondents overall. Some detailed tables for Litigation Costs by Location were not included due to low response counts. Additionally, for applicable tables, the 10th and 90th percentiles could only be shown if there were 10 or more respondents.

## DESCRIPTION OF STATISTICS AND FORMATTING CONVENTIONS

**Quartiles:** Quartiles are used to show distributions of real numbers. Responses are described by three quartiles: the first quartile, the median, and the third quartile. Quartiles identify interpolated locations on a distribution of values and do not necessarily represent actual reported values. Another label for quartiles is percentiles; the first quartile is the same as the 25th percentile, the median is the 50th percentile, and the third quartile is the 75th percentile. For example, when all reported values are listed from highest to lowest, the third quartile identifies the point on the list that is equal to or greater than 75 percent (three-quarters) of the reported values and the first quartile identifies the point on the list that is equal to or less than 25 percent (one-quarter).

**10th Percentile:** Also used to show distributions of real numbers, ninety percent of respondents reported this amount or more.

**90th Percentile:** Ten percent reported this amount or more. If there are fewer than 10 values, the 90th percentile cannot be calculated.

**Median (midpoint):** The median identifies the point in the distribution of reported values that is equal to or larger than one-half of reported values and equal to or smaller than one-half—that is, the mid-point. A median is shown when three or more values were reported by respondents. The first and third quartiles are shown when five or more values were reported by respondents. Quartiles and medians based on values reported by survey respondents are estimates of the quartiles and medians that could be determined if the

characteristics of the entire population represented by survey respondents were known. In general, the more values that are reported, the more accurately quartiles estimate the distribution of values among all AIPLA members.

**Mean (average):** The mean is shown when three or more values were reported by respondents. It is equal to the sum of all values divided by the number of values.

It should be noted that if the mean exceeds the median, it is because high values affect the calculations. It is also possible, especially with a small number of values, for the mean to exceed the third quartile.

Percentages in some tables and some graphs may not sum to exactly 100% due to rounding.

Other definitions useful in understanding tabular information presented in this report are:

**Income:** Defined as *"total gross income in calendar year 2018 from your primary practice…including any partnership income, cash bonus, share of profits, and similar income you received, and any deferred compensation in which you vested in 2018."*

**Typical Charges:** Respondents were instructed to respond *"only if you have been personally responsible for a representative sample of the type of work to which the question pertains, either as a service provider (i.e., an attorney in private practice) or as a purchaser of such services (i.e., corporate counsel)."* When reporting, respondents were directed to assume *"a typical case with no unusual complications,"* and were asked *"what did you charge (or would have charged, e.g., based on a fixed fee rate schedule) or what were you charged (or would have expected to be charged, e.g., on a fixed fee rate schedule), in 2018, for legal services only (including search fees, but not including copy costs, drawing fees or government fees) in each of the following types of US matters?" Respondents were also asked to indicate the type of fee primarily used in 2018 (i.e., fixed fee, hourly, other).* The Firm Survey instructions were similar.

**Estimated Litigation Costs:** Respondents were instructed to respond to these questions *"only if you have personal knowledge either as a service provider (attorney in private practice) or as a purchaser of such services (corporate counsel) of the costs incurred within the relatively recent past, for the type of work to which the question pertains. In each of the questions, 'total cost' is all costs, including outside legal and paralegal services, local counsel, associates, paralegals, travel and living expenses, fees and costs for court reporters, photocopies, courier services, exhibit preparation, analytical testing, expert witnesses, translators, surveys, jury advisors, and similar expenses."* Respondents were further instructed to estimate these based on a single IP asset, such as one patent at issue or one trademark, etc.

**Location:** The metropolitan areas of Boston, New York City, Philadelphia, Washington (DC-MD-VA), Chicago, and Minneapolis–St. Paul include all localities—central city and surrounding areas—within the primary metropolitan statistical area. Texas is the one state reported separately. There were sufficient responses to breakout Los Angeles and San Francisco separately; California firms outside of those metro areas were included in "Other West." Other categories exclude those named metropolitan areas.

**Private Firm, Partner-Track Attorney**

## Average hourly billing rate in 2018 (Q37)

*Private Firm, Partner-Track Attorney*

| | | Number of Individuals | Mean (Average) | 10th Percentile 10% | First Quartile 25% | Median (Midpoint) | Third Quartile 75% | 90th Percentile 90% |
|---|---|---|---|---|---|---|---|---|
| All Individuals | | 99 | $387 | $250 | $285 | $350 | $438 | $600 |
| Years of IP Law Attorney Experience | Fewer than 5 | 20 | $309 | $222 | $250 | $283 | $325 | $575 |
| | 5-6 | 21 | $406 | $252 | $284 | $360 | $458 | $719 |
| | 7-9 | 22 | $364 | $260 | $298 | $338 | $435 | $509 |
| | 10-14 | 16 | $444 | $280 | $320 | $426 | $499 | $755 |
| | 15-24 | 18 | $405 | $280 | $308 | $388 | $456 | $621 |
| Location | Boston CMSA | 4 | $671 | ISD | $533 | $675 | $806 | ISD |
| | Philadelphia CMSA | 3 | $381 | ISD | ISD | $414 | ISD | ISD |
| | Washington, DC CMSA | 16 | $436 | $285 | $315 | $400 | $516 | $669 |
| | Other East | 5 | $312 | ISD | $288 | $300 | $343 | ISD |
| | Metro Southeast | 6 | $422 | ISD | $324 | $438 | $503 | ISD |
| | Other Southeast | 4 | $335 | ISD | $233 | $336 | $438 | ISD |
| | Chicago CMSA | 5 | $378 | ISD | $350 | $360 | $415 | ISD |
| | Minne.-St. Paul PMSA | 9 | $297 | ISD | $276 | $295 | $313 | ISD |
| | Other Central | 24 | $314 | $245 | $251 | $284 | $345 | $428 |
| | Texas | 4 | $448 | ISD | $310 | $345 | $688 | ISD |
| | Other West | 14 | $413 | $243 | $269 | $427 | $500 | $664 |
| IP Technical Specialization (>=50%) | Biotechnology | 4 | $487 | ISD | $381 | $418 | $661 | ISD |
| | Chemical | 6 | $318 | ISD | $254 | $318 | $379 | ISD |
| | Computer Software | 20 | $431 | $252 | $297 | $355 | $564 | $745 |
| | Electrical | 10 | $394 | $253 | $295 | $415 | $493 | $500 |
| | Mechanical | 26 | $340 | $247 | $280 | $310 | $374 | $507 |
| | Pharmaceutical | 3 | $572 | ISD | ISD | $525 | ISD | ISD |
| Age | Younger than 35 | 29 | $341 | $250 | $265 | $300 | $350 | $591 |
| | 35-39 | 29 | $389 | $250 | $280 | $310 | $468 | $735 |
| | 40-44 | 12 | $419 | $226 | $346 | $418 | $488 | $675 |
| | 45-49 | 13 | $381 | $277 | $298 | $375 | $433 | $563 |
| | 50-54 | 9 | $431 | ISD | $360 | $414 | $459 | ISD |
| | 55-59 | 5 | $416 | ISD | $300 | $435 | $523 | ISD |
| Gender | Male | 82 | $402 | $252 | $290 | $360 | $468 | $608 |
| | Female | 16 | $319 | $247 | $259 | $296 | $325 | $486 |
| Highest Non-Law Degree | Bachelor's Degree | 65 | $395 | $266 | $298 | $350 | $458 | $595 |
| | Master's Degree | 26 | $368 | $247 | $275 | $305 | $449 | $617 |
| | Doctorate Degree | 8 | $387 | ISD | $246 | $368 | $437 | ISD |
| Ethnicity | White/Caucasian | 85 | $386 | $250 | $288 | $350 | $438 | $595 |
| Full-time Intellectual Property lawyers and agents in the firm or corporation | 3-5 | 4 | $298 | ISD | $273 | $285 | $335 | ISD |
| | 6-10 | 7 | $347 | ISD | $285 | $350 | $400 | ISD |
| | 11-25 | 21 | $350 | $259 | $285 | $324 | $395 | $491 |
| | 26-50 | 25 | $376 | $248 | $290 | $345 | $470 | $508 |
| | 51-100 | 21 | $376 | $224 | $273 | $350 | $444 | $573 |
| | 101-150 | 11 | $392 | $280 | $300 | $325 | $505 | $707 |
| | More than 150 | 9 | $611 | ISD | $467 | $600 | $768 | ISD |

## Total Costs: Litigation-Patent Infringement, All Varieties by Type of Practice

**Litigation-Patent Infringement, All Varieties $10-$25M Inclusive of discovery, motions, and claim construction (000s) by Type of Practice (Q47Aj)**

|  | Total | 1-3 Attorneys | 4-15 Attorneys | 16-59 Attorneys | 60 or more Attorneys | All Corporate |
|---|---|---|---|---|---|---|
| Number of Respondents | 72 | 10 | 8 | 13 | 31 | 9 |
| Mean (Average) | $1,623 | $672 | $524 | $1,171 | $2,432 | $1,317 |
| 10th Percentile 10% | $315 | $98 | ISD | $142 | $530 | ISD |
| First Quartile 25% | $500 | $388 | $175 | $500 | $1,500 | $625 |
| Median (Midpoint) | $1,225 | $500 | $375 | $1,000 | $2,500 | $1,000 |
| Third Quartile 75% | $2,650 | $1,000 | $875 | $1,525 | $3,500 | $1,850 |
| 90th Percentile 90% | $3,500 | $1,450 | ISD | $3,180 | $3,500 | ISD |

**Litigation-Patent Infringement, All Varieties $10-$25M Inclusive of pre-trial, trial, post-trial, and appeal (when applicable) (000s) by Type of Practice (Q47Ak)**

|  | Total | 1-3 Attorneys | 4-15 Attorneys | 16-59 Attorneys | 60 or more Attorneys | All Corporate |
|---|---|---|---|---|---|---|
| Number of Respondents | 73 | 10 | 8 | 13 | 31 | 10 |
| Mean (Average) | $3,093 | $1,733 | $1,223 | $2,065 | $4,403 | $2,930 |
| 10th Percentile 10% | $600 | $177 | ISD | $410 | $1,640 | $1,370 |
| First Quartile 25% | $1,250 | $713 | $500 | $1,050 | $3,000 | $2,000 |
| Median (Midpoint) | $2,700 | $800 | $650 | $1,500 | $4,500 | $2,000 |
| Third Quartile 75% | $6,000 | $2,875 | $2,075 | $3,200 | $6,000 | $3,750 |
| 90th Percentile 90% | $6,000 | $5,800 | ISD | $4,800 | $6,000 | $6,000 |

**Litigation-Patent Infringement, All Varieties $10-$25M Cost of mediation (000s) by Type of Practice (Q47Al)**

|  | Total | 1-3 Attorneys | 4-15 Attorneys | 16-59 Attorneys | 60 or more Attorneys | All Corporate |
|---|---|---|---|---|---|---|
| Number of Respondents | 65 | 11 | 7 | 10 | 27 | 9 |
| Mean (Average) | $98 | $68 | $61 | $66 | $112 | $149 |
| 10th Percentile 10% | $25 | $11 | ISD | $22 | $29 | ISD |
| First Quartile 25% | $50 | $35 | $30 | $48 | $50 | $23 |
| Median (Midpoint) | $80 | $70 | $50 | $63 | $150 | $100 |
| Third Quartile 75% | $150 | $90 | $100 | $85 | $150 | $275 |
| 90th Percentile 90% | $150 | $160 | ISD | $118 | $150 | ISD |

**Minimum and maximum 2018 attorney billing rates for IP work (Q30a-Q30b)**

| Number of Attorneys/Location | | | Number of Firms Reporting | Mean (Average) | First Quartile 25% | Median (Midpoint) | Third Quartile 75% |
|---|---|---|---|---|---|---|---|
| Minimum billing rate for IP work | All Firms | | 128 | $292 | $225 | $278 | $350 |
| | Number of Attorneys | One | 21 | $342 | $250 | $340 | $418 |
| | | Two | 9 | $317 | $238 | $320 | $365 |
| | | 3-5 | 14 | $345 | $300 | $333 | $374 |
| | | 6-10 | 17 | $264 | $200 | $250 | $338 |
| | | 11-30 | 26 | $234 | $170 | $235 | $289 |
| | | 31-100 | 17 | $286 | $198 | $255 | $308 |
| | | 101 or More | 24 | $293 | $250 | $275 | $345 |
| | Location | Boston CMSA | 4 | $229 | $156 | $258 | $273 |
| | | NYC CMSA | 12 | $311 | $270 | $300 | $329 |
| | | Philadelphia CMSA | 4 | $306 | $244 | $310 | $365 |
| | | Washington, DC CMSA | 21 | $334 | $238 | $340 | $405 |
| | | Other East | 9 | $295 | $205 | $300 | $375 |
| | | Metro Southeast | 3 | $192 | ISD | $225 | ISD |
| | | Other Southeast | 4 | $310 | $188 | $320 | $423 |
| | | Chicago CMSA | 13 | $348 | $238 | $285 | $345 |
| | | Minne.-St. Paul PMSA | 5 | $245 | $213 | $255 | $273 |
| | | Other Central | 25 | $228 | $178 | $230 | $278 |
| | | Texas | 6 | $295 | $216 | $318 | $363 |
| | | Los Angeles CMSA | 3 | $323 | ISD | $325 | ISD |
| | | San Francisco CMSA | 6 | $402 | $338 | $400 | $470 |
| | | Other West | 13 | $259 | $210 | $250 | $298 |
| Maximum billing rate for IP work | All Firms | | 128 | $572 | $400 | $523 | $679 |
| | Number of Attorneys | One | 21 | $418 | $288 | $385 | $498 |
| | | Two | 9 | $373 | $325 | $350 | $415 |
| | | 3-5 | 14 | $489 | $395 | $450 | $510 |
| | | 6-10 | 17 | $489 | $413 | $500 | $533 |
| | | 11-30 | 26 | $531 | $419 | $543 | $635 |
| | | 31-100 | 17 | $641 | $570 | $650 | $775 |
| | | 101 or More | 24 | $886 | $684 | $838 | $1,070 |
| | Location | Boston CMSA | 4 | $754 | $281 | $700 | $1,280 |
| | | NYC CMSA | 12 | $572 | $438 | $590 | $673 |
| | | Philadelphia CMSA | 4 | $753 | $613 | $805 | $840 |
| | | Washington, DC CMSA | 21 | $599 | $400 | $500 | $695 |
| | | Other East | 9 | $471 | $370 | $455 | $523 |
| | | Metro Southeast | 3 | $645 | ISD | $635 | ISD |
| | | Other Southeast | 4 | $391 | $364 | $378 | $433 |
| | | Chicago CMSA | 13 | $575 | $325 | $535 | $690 |
| | | Minne.-St. Paul PMSA | 5 | $783 | $688 | $830 | $855 |
| | | Other Central | 25 | $499 | $408 | $490 | $600 |
| | | Texas | 6 | $536 | $358 | $550 | $696 |
| | | Los Angeles CMSA | 3 | $617 | ISD | $480 | ISD |
| | | San Francisco CMSA | 6 | $701 | $471 | $573 | $1,084 |
| | | Other West | 13 | $530 | $438 | $500 | $633 |

# EXHIBIT 4

# SHOCK AND AWE

With the resources of the world's largest firm at their disposal,
Kirkland & Ellis litigators operate with power and precision.

## By Andrew Maloney

**I**F YOU WANT TO KNOW what Kirkland & Ellis litigation is about, look no further than the $577 million settlement that lead counsel Michael Jones and others won in a discrimination case against the state of Maryland and its higher education system in May. It took 12 years, nearly 37,500 pro bono hours, and an all-avenues approach—from the courts to the state capitol to the community—in service of the state's historically Black colleges and universities.

The schools had argued the state was depriving them of resources relative to other universities and that the practice was linked to segregation. Along with John C. Brittain of the University of the District of Columbia, the Lawyers' Committee for Civil Rights Under Law and others at Kirkland, Jones steered the plaintiffs' case through multiple district court trials, federal appeals, years of mediation and advocacy in the community and the state legislature. He coordinated with the firm's appellate strategists and spared no expense for experts.

He spoke to lawmakers and editorial boards, at press conferences and state-house rallies. And when the pandemic shuttered many of those avenues, he carried on with the task virtually, until lawmakers and the governor approved a payout and the court signed off.

That overwhelming use of force—all hands on deck, marshaling the immense resources of the world's highest-grossing firm—is emblematic of the Kirkland approach, Jones says.

"When we take on a matter, it's like the U.S. military: shock and awe. We find a way to be persistent, and to be creative, to try and get that outcome for our clients," Jones says. "In that way, I think it really is characteristic of the firm."

The firm is no stranger to big cases. But that one is especially resonant now, as the legal industry and others reckon with the largest racial justice movement in decades after the murder of George Floyd in Minneapolis last year. Mark Filip, a partner at Kirkland who helps lead its government enforcement defense practice, says the settlement also showcased another firm principle: actions speak louder than words.

"That's a tangible, palpable, thunder-on-the-mountain-type outcome that's going to produce effects for generations," Filip says. "So, if you want to know what Kirkland litigation is about, it's people putting that passion and that kind of talent into whatever setting it takes to try and get something done."

The firm says it counted nearly 900 wins between August 2019 and July of this year, with 44 trial and 111 appellate victories. Its U.S. Supreme Court practice was also difficult to match, with stalwarts Paul Clement and Erin Murphy among others arguing 14 cases before the nation's top court in that same timespan. That accounts for more than 10% of cases heard by the justices during that stretch, and puts the three-year total at 19 arguments made by six different Kirkland lawyers.

One thing that distinguishes the firm's litigation team from others, its lawyers say, is its willingness to push significant cases to even its youngest lawyers. Granted, the firm is well-known for courting very capable young lawyers. But the approach "helps train the next generation of lawyers at the



"If we won, what can we do better? If we lost? Same thing." —Mark Filip

**WINNER**

DIEGO M. RADZINSCHI/ALM

(L-R) ANDREW KASSOF, ELLISEN TURNER, SANDRA GOLDSTEIN, MIKE JONES, HARIKLIA KARIS, AND GREGG LOCASCIO

firm while securing outcomes that allow them to build durable, lasting relationships with our clients," says Andrew Kassof, one of the leaders of the firm's litigation practice and a member of Kirkland's executive committee.

In addition to one of the largest pro bono settlements in history, the firm also won big in the second trial in the largest multidistrict litigation in U.S. history this year, representing multinational conglomerate 3M against claims brought by former U.S. service members that its combat earplugs were defective. There are still more than a dozen trials pending in the litigation, lead Kirkland lawyer Hariklia "Carrie" Karis says, but early defense wins can serve as an archetype for cases going forward. In this case, Karis and her team earned the first win for 3M, defeating all 10 claims brought by the plaintiffs.

Karis says the 3M cases display the firm's roster strength, from litigators

with extensive experience to junior lawyers who are brought in and mentored to quickly contribute to major matters.

"Because of the size of the multidistrict litigation, and the speed with which it's moving, it's a good indicator, if you will, of the bench strength of Kirkland & Ellis' litigation department," she says. "I don't think that's an easy feat—to get ready for a dozen trials, period, with seasoned trial lawyers, but who have not been working on the case previously."

The firm handled and won a variety of cases for a diverse group of clients, from the state of Georgia in a long-lasting "water war" with the state of Florida over the Apalachicola-Chattahoochee-Flint River Basin, to Epic Games in litigation concerning the protection of dance steps in the popular video game "Fortnite."

The firm doesn't win every case, of course. It represented Bracket Holding Corp., which alleged in a fraud case that Express Scripts and United BioSource misrepresented the financial condition of their company in connection with a 2013 sale to Bracket Holding's

affiliate, Parthenon Capital Partners, for $187 million. A jury found for Kirkland in 2019, ordering the defendants to pay $82.1 million. But the Delaware Supreme Court reversed the ruling in February, finding the trial court gave a favorable jury instruction for the plaintiffs, and that certain evidence should not have been excluded.

The Kirkland lawyers say it was a hard-fought case, and that it's always difficult to take a loss because they live and breathe these cases. But win or lose, they try to apply lessons going forward through meticulous post-mortems.

"We try really rigorously, after a win or a loss, to roundtable the thing with colleagues. If we won, what can we do better? If we lost? Same thing," Filip says.

And although the firm doesn't welcome losses, its litigators recognize they're part and parcel when clients turn to you with their most difficult issues.

"We try to stay aggressive and hungry, and ruthlessly honest with ourselves," Filip says. "But we also try not to get paralyzed. Because if you win every case, you're probably not trying very tough cases." ∎

# EXHIBIT 5

# New York Law Journal

**OCTOBER 2021**



LITIGATION DEPARTMENT OF THE YEAR: INTELLECTUAL PROPERTY

# KIRKLAND & ELLIS

**Q&A** **What are some of the department's most satisfying successes of the past year and why?** One of the most satisfying aspects of Kirkland's business is the wide range of matters our incredible selection of clients entrusts us to handle. Highlights from the past year include a complete victory for Intel in a multi-jurisdiction litigation involving circuit layout and fabrication technology patents, where we obtained a final determination of no violation in the ITC, as well as summary judgment of non-infringement in the Northern District of California on all five asserted patents.

We also obtained a major victory for Lucky Brand in the U.S. Supreme Court in its long-running trademark dispute with Marcel. The court ruled 9-0 in Lucky Brand's favor, providing much-needed clarity on the doctrine of res judicata.

In a case for a pharmaceutical client, a Delaware judge ruled after a fully remote bench trial that all claims of a patent directed to Parkinson's disease treatments asserted against our client were invalid.

On the trade secret front, Kirkland teams won more than $1 billion in damages for clients in 2020. A Southern District of New



From left (front), partners Dale Cendali, Claudia Ray and Leslie Schmidt; (middle), partners Jeanna Wacker, Patricia Carson, Robert Appleby and Greg Arovas; (back), James Marina, Todd Friedman and Joe Loy.

York jury awarded damages to our client TriZetto, finding that competitor Syntel had misappropriated hundreds of TriZetto's trade secrets. And in a high-profile, global trade secret and copyright dispute between our client Motorola Solutions and its China-based competitor Hytera, a Northern District of Illinois jury deliberated for just over two hours before awarding Motorola Solutions our full damages request.

In addition, Kirkland resolved long-running patent litigation for WesternGeco, a Schlumberger subsidiary, in litigation against ION Geophysical over remote-sensing technology for deep-water oil and gas exploration. This result came after 11 years of litigation,

including two winning U.S. Supreme Court arguments.

**A prospective client in crisis calls and asks why your team should be retained. What is your answer?** Kirkland has a deep pool of extremely talented and committed trial lawyers, ranging from highly experienced first-chair attorneys down through our consistently strong associates. We have the ability on a moment's notice to put together an outstanding team with extensive experience in all aspects of patent, copyright, trademark, trade secret, and other areas of IP law. Trial is always first and foremost in our minds when Kirkland takes a case. Developing key theories and themes early in a litigation allows us to flesh out critical supporting evidence during discovery, ensuring that we can present a compelling story at trial to maximize our chances of winning. We also pay close attention to the client's business goals when developing our strategy, to pursue results that meet or exceed their metrics for success.

**What traits do you respect most in opposing firms and lawyers?** Competence and integrity. I always appreciate when opposing counsel is able to efficiently identify and focus on the key issues driving the case. That allows us to litigate the case's real merits, without devoting time and the client's resources to sideshows. I also appreciate when opposing counsel is honest, reasonable, and can be taken at their word. Those qualities make it much easier to work through the disputes that inevitably arise during litigation, and everyone benefits.

**What is the firm doing to ensure that future generations of litigators are ready to take the helm?** Training is a key focus at Kirkland. Our annual Kirkland Institute of Trial Advocacy does a phenomenal job of preparing associates for real-world trials, allowing them to try mock cases over 2-3 days in front of jurors drawn from the community. Beyond such formal training, Kirkland also places a great deal of emphasis on finding early opportunities for its associates to develop experience and skills in every aspect of litigation. I have seen a trend of judges commenting that they appreciate seeing more junior attorneys take stand-up roles, which makes it a win-win for us to provide our junior attorneys those opportunities.

*Responses prepared by* **Todd M. Friedman**, *partner at Kirkland & Ellis.*

Reprinted with permission from the October 2021 edition of the NEW YORK LAW JOURNAL © 2021 ALM Media Properties, LLC. All rights reserved. Further duplication without permission is prohibited. For information, contact 877-256-2472 or reprints@alm.com. # NYLJ-10052021-521644

# EXHIBIT 6



# These 4 Law Firms Are The Most 'Fearsome'

Four law firms were dubbed the most "fearsome" to face off against in court, according to a new report by BTI Consulting Group coming out Thursday.

In a survey of hundreds of legal leaders, the four were most consistently named as ones that strike "the utmost fear into the hearts of seasoned general counsel and legal decision makers," according to the report.

They are: Jones Day, Kirkland & Ellis LLP, Quinn Emanuel Urquhart & Sullivan LLP and Skadden Arps Slate Meagher & Flom LLP.

"These are the firms that clients say they don't want to see on the other side of the table in a litigation — for a positive reason," BTI President

Michael B. Rynowecer told Law360 on Wednesday.

The consulting group's report, the annual BTI Litigation Outlook, aggregated responses from over 350 interviews with legal decision makers at large organizations with $1 billion or more in revenue, including chief legal officers, business executives and thought leaders. In inquiring about the most fearsome firms, respondents were not prompted and weren't given restrictions as to size.

Jones Day, Kirkland and Quinn Emanuel were also part of the "Fearsome Foursome" last year, with Skadden returning after most recently being on the list in 2019.

Mark Filip, a Kirkland partner and executive committee member, noted his firm's development of lawyers, promotion of diversity and the space it gives people as reasons for its high marks.

"We are always trial-ready and dedicated to being the most prepared lawyers in the courtroom," Filip told Law360. "We bring litigators to the table who are best suited for tackling the specific matter, regardless of location or number of years of experience. It's about bringing the best team of diverse individuals together to get the best results for clients."

Rynowecer identified four areas in which the four firms excelled, particularly in this past year. For one, they were "fearless in nature," despite the uncertainty created by the COVID-19 pandemic.

"They were very comfortable with the uncertainty," he said. "They were sometimes quite bold in their recommendations, and they would just dive in and sort things out instead of trying to step back and be more cautious, and that was something very important."

Second, the firms acted quickly and with "urgency" when a case fell on their desks, developing a team and strategy faster than their opponents.

> **"We are always trial-ready and dedicated to being the most prepared lawyers in the courtroom ... We bring litigators to the table who are best suited for tackling the specific matter, regardless of location or number of years of experience. It's about bringing the best team of diverse individuals together to get the best results for clients."**
>
> Mark Filip, Kirkland & Ellis partner

Attorney Advertising

**KIRKLAND & ELLIS**

LAW360 | These 4 Law Firms Are The Most 'Fearsome'

"As one client put it, they are just mobilization ready," Rynowecer said. "If I call them, they get into action, and clients on the other side say they just come at you, and they're just so well-prepared."

The four firms are also known to be relentless during litigation and "don't stop until the client says stop, or they reach their goal."

"And what clients say on the other side is that, if my law firm isn't the same way, then I don't get the time to strategize as I've liked. We're not as cohesive as we'd like, and that hurts you in a litigation," he said.

Lastly, Rynowecer noted that the firms are being particularly aggressive because settlements have become harder to come by this year.

"They don't want to see it linger. They don't want to wait around to see if the settlement environment is going to get any better. They're just moving ahead," he said.

The report named 12 law firms as "Awesome Opponents" behind the top four, including Latham & Watkins LLP, which appeared in last year's foursome. Additionally, 23 firms were on an honor roll of "Intimidating Opponents."

Rynowecer also highlighted that only 60 law firms, or 9%, improved their market standing with clients out of the 650 law firms competing for business, a slight decrease from last year. He said that this "is a sign that the market is getting a little bit harder," and clients are becoming more demanding and expecting more from the law firms they choose.

"Then you've got the other issue, which is: Not every law firm improved their performance with clients as quickly as others," he said. "One of the things that was really interesting during the whole pandemic era is how some firms really invested in their client service and client-facing initiatives, and others just cut them off cold. So we're seeing the firms that invested amongst those in the 60."

The report further illuminated trends shaping litigation heading into 2022, including an increase in client spending that's rising faster than the growth of new cases.

REPRINTED WITH PERMISSION FROM THE OCTOBER 6, 2021 EDITION OF *LAW360*
© 2021 PORTFOLIO MEDIA INC.
ALL RIGHTS RESERVED. FURTHER DUPLICATION WITHOUT PERMISSION IS PROHIBITED.

WWW.LAW360.COM

Kirkland & Ellis LLP | 300 North LaSalle, Chicago, IL 60654 | +1 312 862 2000

Pursuant to applicable rules of professional conduct, this communication may constitute Attorney Advertising. Prior results do not guarantee a similar outcome.

KIRKLAND & ELLIS

# EXHIBIT 7

# KIRKLAND & ELLIS

# Gianni Cutri, P.C.

Partner  /  Intellectual Property
gianni.cutri@kirkland.com
Chicago +1 312 862 3372



## Practices

- Intellectual Property
- Patent Infringement Litigation
- ITC Section 337 Proceedings
- Patent Office Post-Grant Review Proceedings
- Trade Secrets Litigation
- Cybersecurity & Data Privacy

## Overview

Gianni Cutri is a partner focusing on high-tech IP and commercial litigation, post-grant review proceedings and data protection and privacy matters. Gianni has litigated significant actions in state and federal courts around the country, including major patent cases in the Eastern District of Texas, the District of Delaware, the Northern District of Illinois, the Northern District of California, the Western District of Wisconsin the District of Colorado, the District of New Jersey and the Federal Circuit. Gianni's practice covers the full range of specialized IP courts as well, from the International Trade Commission, where has represented Complainants and

Respondents in multiple Section 337 investigations, to the Patent Trial and Appeal Board, where he has served as lead counsel in more than 17 post-grant review proceedings.

Gianni has significant experience representing industry-leading clients, such as Intel, Cisco, Motorola, Yahoo!, Sharp, NETGEAR and Murata in high-stakes litigation involving semiconductor, telecommunications, and computer hardware. Gianni has also successfully represented some of the world's leading consumer and retail companies, including McDonald's, Home Depot, FedEx, Delta Airlines, Barnes & Noble, Starbucks, UPS, The Buckle and Lucky Brand Jeans, in defensive patent litigation. He has represented clients in a diverse array of technologies, including 3-D imaging, healthcare billing and IT systems, electronic stability controls, flat-screen LCD monitors, radio frequency identification (RFID), MP3 encoding and accelerometers and gyroscopes.

Building on his familiarity with complex technological issues in litigation, Gianni is also part of Kirkland's practice group on data security and privacy matters. He regularly advises clients on significant security breaches, such as theft of trade secrets and source code, intrusions by suspected state actors, extrusion of employee financial and tax data.  In these matters, Gianni has led the incident response teams responsible for internal investigations, crisis management, public disclosures and litigation strategies. The practice group has represented numerous companies that have experienced significant security breaches. Clients have included retailers, health care providers, media companies, transportation companies and business service providers.

Gianni holds a J.D., Order of the Coif, from the University of Illinois College of Law and a B.S. in mechanical engineering from the University of Illinois.

# Experience

## Representative Matters

### Representative Patent and IP Litigation

*EagleView Technologies, et al. v. Xactware Solutions, et al.* (D.N.J., PTAB)

- Lead counsel representing the leading suppliers of aerial imagery and analytics in litigation against competitors. The matter involves 9 patents being asserted in the

District of New Jersey and simultaneously litigated at the Patent Trial Appeals Board.

*Wi-LAN v. Sharp, et al.* (D. Del.)

- Lead counsel defending supplier of LCD televisions in multi-patent, multi-party litigation proceeding in the District of Delaware.

*TriZetto v. HealthEdge* (D. Colo.)

- Lead counsel representing top-tier supplier of healthcare software in trademark and unfair competition matter; successfully defeated motion to dismiss and obtained voluntary removal of certain of the offending statements and infringing trademarks.

*Syntel v. Cognizant and TriZetto* (S.D.N.Y)

- Lead counsel in representation of leading supplier of healthcare software and leading supplier of software consulting services in trade secret, unfair competition and breach of contract matter.

*Innovatio v. Cisco Systems, Motorola Solutions, NETGEAR, et al.*

- Defended suppliers of Internet wireless routing products in complex multi-district action concerning patents alleged to pertain to 802.11-standardized wireless technology. After a seven-day bench trial, determined that the plaintiff's damages claim was limited to a RAND rate of less than 10 cents for each accused Wi-Fi product and also found that plaintiff's demands for damages of more than a billion dollars "lacked a credible methodology" and that the plaintiff's case suffered from a failure of proof. The case was hailed as highly favorable to technology companies and consumers and received worldwide media attention including in the IPLaw 360 articles "FRAND Rulings To Rein In Standard-Essential Patent Demands" and "Judge Sets Low Royalty Rate For Essential Wi-Fi Patents."

*Wi-LAN v. Intel, et al. and Wi-LAN v. Motorola, et al.*

- Defended world's leading suppliers of Wi-Fi, WiMAX, Bluetooth and CDMA products in litigations brought in the Eastern District of Texas and the Northern District of California, involving 20 patents asserted against more than three dozen leading laptop, router and chip companies. Obtained summary judgment of no

infringement on 16 asserted patents, as well as favorable rulings on claim
construction for other asserted patents. Matter settled days before trial, shortly
after plaintiff's effort to delay its trial date was unsuccessful.

Representative Data Security Matters

- Confidential counseling pertaining to incident response in the retail space
- Confidential counseling pertaining to incident response in the B2B software space
- Confidential counseling for market-leading client in the healthcare space regarding
  HIPAA and data security matters
- Confidential counseling to educational services provider regarding incident
  response and data security matters
- Presenter, "Data Privacy and Cybersecurity: A New Legal and Enforcement
  Landscape" – The John Marshall Law School, Chicago, Illinois, April 2016

Representative Litigation

*IDX Systems Corp. v. Epic Systems, Corp., et al.*, 285 F.3d 581, 62 U.S.P.Q.2d 1278 (7th
Cir. 2002)

- Obtained reversal of trial court's summary judgment ruling against client on trade
  secret, tortious interference and breach of contract claims.

*Shuffle Master v. Awada* (D. Nev. 2007)

- Obtained summary judgment of infringement on trademark and trade dress claims,
  and dismissal of defendants counterclaims.

*Lisa Whisby-Myers v. Kiekenapp* (N.D. Ill. 2008)

- Represented pro bono plaintiffs in civil action asserting hate crime and civil rights
  violation. Secured $25,000 settlement.

## Clerk & Government Experience

Law Clerk, Honorable Christine O'Dell Cook Miller, United States Court of Federal
Claims, Washington, D.C., 2000–2001

# More

## Recognition

Recognized in *The Legal 500 United States* for Patent Litigation: International Trade Commission (2016), Patent Litigation: Full Coverage (2020), and Trade Secrets: Litigation and Non-Contentious Matters (2021)

Named one of *Managing Intellectual Property* magazine's "IP Stars," 2020

Recommended in Litigation in *IAM Patent 1000*, 2015–2018

Selected as a "Rising Star" *Illinois Super Lawyers*, 2010

Profiled in *Chicago Lawyer*, 2008

## Credentials

### Admissions & Qualifications

- 2000, Illinois

———

### Courts

- United States Court of Appeals for the Seventh Circuit
- United States Court of Appeals for the Federal Circuit
- United States District Court for the Eastern District of Texas
- United States District Court for the Northern District of Illinois
- United States District Court for the Northern District of Illinois, Trial Bar
- United States District Court for the Central District of Illinois
- United States Patent and Trademark Office
- United States Court of Federal Claims

———

### Languages

- Italian

———

### Education

- University of Illinois College of Law, J.D., 2000
  Order of the Coif
  Associate Editor, *University of Illinois Law Review*
  Articles Editor, *University of Illinois Journal of Law, Technology and Policy*
- University of Illinois at Urbana-Champaign, B.S., Mechanical Engineering, 1997
  James Scholar

## News & Insights

- 21 December 2021 Press Release
  Kirkland Represents McDonald's on Sale of Dynamic Yield to Mastercard
- 22 November 2021 Press Release Kirkland Advises Hellman & Friedman and Bain
  Capital in $17 Billion Acquisition of athenahealth
- 10 November 2021 Award Verdicts Hall of Fame 2021
- 21 June 2021 Award Top Verdicts & Settlements of the Northeast 2020
- 18 May 2021 Press Release Kirkland Advises Francisco Partners and
  HealthcareSource in Pending Sale to Clearlake-Backed symplr

# EXHIBIT 8

# KIRKLAND & ELLIS

# Christopher DeCoro, Ph.D.

Partner  /  Intellectual Property
christopher.decoro@kirkland.com
New York +1 212 446 4859



## Practices

- Intellectual Property
- Patent Infringement Litigation

## Overview

Christopher DeCoro, Ph.D. is an intellectual property litigation partner in Kirkland's New York Office. Christopher concentrates his practice on patent litigation.

## Experience

### Representative Matters

*Berall v. Verathon, Inc., et. al.* Representing individual inventor in 11-year patent litigation over a life-saving medical device known as a video laryngoscope.

*Red Hat, Inc. v. Invention Investment Ireland, LLC.* Represented Red Hat in a declaratory judgment action against an Intellectual Ventures-associated patent assertion entity

on patents related to cloud computing, and successfully achieved a highly favorable settlement for client.

*Red Hat, Inc. & IBM v. Sequoia Technologies, Inc*; *Sequoia v. HPE, Hitachi, and Super Micro*. Represented Red Hat, IBM, and their customers in defensive action against patent assertion entity on a patent related to storage management. Achieved favorable claim construction that forced patentee to stipulate to non-infringement.

*Volkswagen Diesel Emissions Litigation*. Technical lead on all aspects of VW's response to EPA enforcement proceedings related to allegations of emissions-testing defeat devices in diesel engines. Had primary responsibility for interviewing engineers and reviewing technical documentation (both in English and in German) regarding VW's engine-control software and emissions-control devices, as well as drafting technical disclosures to EPA documenting the functionality of the cars at issue.

*Ericsson Inc. v. Samsung Electronics, Co. Ltd*. Represented Samsung in standards-essential patent litigation brought by Ericsson related to 5G wireless communications standards.

*RetailMeNot, Inc. v. Honey Science LLC*. Represented RetailMeNot in a multi-patent litigation in the District of Delaware concerning e-commerce transaction technologies. Also represented RetailMeNot in parallel proceedings before the Patent Trial and Appeal Board.

*PayPal, Inc. v. RetailMeNot, Inc*. Represented RetailMeNot in a multi-patent litigation in the Western District of Texas concerning e-commerce transaction technologies.

*Hytera Corp. v. Motorola Solutions Inc.* Represented Motorola in defensive patent litigation in N.D. Ohio brought by competitor, alleging Motorola's two-way radios infringe audio-processing patent. Achieved summary judgment of non-infringement.

*Samsung v. NVIDIA*. Represented Samsung before the International Trade Commission (ITC) in a trial alleging infringement of patented manufacturing technology for small-sized devices. Responsible for two patents from complaint through trial. After a two-week trial, the Court ruled in favor of client and recommended an exclusion order barring importation of infringing products. Also represented before the US Patent and Trademark Office in connection with inter partes review of the patents asserted in the ITC.

Case 1:15-cv-00379-LPS    Document 571-1    Filed 02/23/22    Page 30 of 46 PageID #: 25987

*Sycamore Technologies LLC v. AT&T Corp.* Represented AT&T in defensive patent litigation in E.D. Texas regarding encodings for optical communications. Primarily responsible for technical analysis, non-infringement, and invalidity. Achieved summary judgment of non-infringement for an allegedly standards-essential patent after a favorable claim construction, which was affirmed on appeal.

*IPCS v. AT&T Corp.* Represented telecommunications provider in defensive patent litigation in D. Delaware regarding Voice-over-IP technologies. Primarily responsible for technical analysis, non-infringement, and validity.

Provides pre-litigation and patent prosecution advice and analysis for prominent computer-technology companies considering patent infringement actions against competitors.

Represented veteran pro bono before Dept. of Veterans Affairs, achieving compensation for injuries suffered during active duty, thus reversing 37-year-old wrongful denial of compensation.

## Clerk & Government Experience

Law Clerk, Honorable Barry T. Albin, Associate Justice, Supreme Court of New Jersey, 2013–2014

Law Intern, The United States Attorney's Office for the District of Connecticut, 2010

## Prior Experience

Associate, Wilmer Cutler Pickering Hale and Dorr LLP (New York), 2012–2013

# More

## Thought Leadership

Peer-Reviewed Publications

Christopher DeCoro et al., *Density-based Outlier Rejection in Monte Carlo Rendering*, 29 Computer Graphics Forum 2119 (2010).

Natalya Tatarchuk, Jeremy Shopf, and Christopher DeCoro, *Advanced Interactive Medical Visualization on the GPU*, 68 J. Parallel & Distributed Computing 1319 (2008).

Christopher DeCoro and Szymon Rusinkiewicz, *Subtractive Shadows: A Flexible Framework for Shadow Level of Detail*, 13 J. Graphics, GPU & Game Tools 45 (2008).

Christopher DeCoro et al., *Bayesian Aggregation for Hierarchical Genre Classification*, 8 Int'l Symposium on Music Information Retrieval 77 (2007).

Christopher DeCoro et al., *Stylized Shadows*, 5 Int'l Symposium on Non-Photorealistic Animation and Rendering 77 (2007).

Christopher DeCoro and Natalya Tatarchuk, *Real-time Mesh Simplification Using the GPU*, 21 Symposium on Interactive 3D Graphics & Games 161 (2007).

Jason Lawrence, Aner Ben-Artzi, Christopher DeCoro, Wojciech Matusik, Hanspeter Pfister, Ravi Ramamoorthi, and Szymon Rusinkiewicz, *Inverse Shade Trees for Non-parametric Material Representation and Editing*, 25 ACM Trans. Graphics 735 (2006).

Zafer Barutçuoglu and Christopher DeCoro, *Hierarchical Shape Classification Using Bayesian Aggregation*, 8 Int'l Conference on Shape Modeling and Applications 44 (2006).

Christopher DeCoro and Szymon Rusinkiewicz, *Pose-independent Simplification of Articulated Meshes*, 19 Symposium on Interactive 3D Graphics & Games 17 (2005).

Rentao Pajarola and Christopher DeCoro, *Efficient Implementation of Real-time View-dependent Multiresolution Meshing*, 10 IEEE Trans. Graphics 353 (2004).

Christopher DeCoro and Renato Pajarola, *XFastMesh: Fast view-dependent meshing from external memory*, IEEE Visualization 363 (2002).

David Wangerin, Christopher DeCoro, Luis Campos, Hugo Coyote, and Isaac Scherson, *A Modular Client-Server Discrete Event Simulator for Networked Computers*, 35 Simulation Symposium 125 (2002).

Homi Bodhanwala, Luis Campos, Calvin Chai, Christopher DeCoro, Kevin Fowler, Per Franck, Huy Nguyen, Nilesh Patel, Isaac Scherson, and Fredricio Silva, *A General Purpose Discrete Event Simulator*, Symposium on Performance Evaluation of Computer and Telecommunication Systems (2001).

Other Publications

Natalya Tatarchuk, Jeremy Shopf, and Christopher DeCoro, *Scalar to Polygonal Extracting Isosurfaces Using Geometry Shaders*, in ShaderX7 (Wolfgang Engel ed., 2009).

Christopher DeCoro et al., *Implementing Real-time Mesh Simplification Using the GPU*, in ShaderX6 (Wolfgang Engel ed., 2009).

# Credentials

## Admissions & Qualifications

- 2013, New York
- 2012, New Jersey

----

## Languages

- German

----

## Education

- Yale Law School, J.D., 2012
  Lead Submissions Editor, *Yale Journal of Law and Technology*
- Princeton University, Ph.D., Computer Science, 2009
  Teaching and Research Assistant
- University of California, Irvine, B.S., Computer Science, *summa cum laude*, 2002

# News & Insights

- 03 October 2017 Press Release Kirkland Announces New Partners

# EXHIBIT 9





# James W. Beard Partner

He / Him / His

DENVER
1801 California Street, Suite 3300
Denver, CO 80202
jbeard@merchantgould.com
D: 303.357.1189

LOS ANGELES
8383 Wilshire Blvd., Suite 935
Beverly Hills, CA 90211
D: 612.332.5300

CONTACT MY ASSISTANT
Shannon Maney
smaney@merchantgould.com
D: 303.357.1246

James W. Beard is an IP attorney in Merchant & Gould's Denver office. While his practice involves all facets of intellectual property law, James focuses on patent, trade secret, and trade dress litigation for clients from a diverse range of industries.

**IP LITIGATION ATTORNEY WITH OVER 10 YEARS OF EXPERIENCE**

James brings over ten years of litigation experience on complex matters to the table. His experience includes representing high-technology household names and Fortune 500 companies in a wide range of industries such as:

- Computer hardware and software
- Electronics
- Consumer products and technology
- Biotechnology
- Medical devices

James works in all stages of litigation, from general advice and counseling to complex discovery, trials, and appeals. His experience also includes motion practice, claim construction, and post-trial motion practice and appeal. In the past, he's represented clients in district courts around the country, the International Trade Commission and the Federal Circuit Court of Appeals.

**DEDICATED TO CREATING INNOVATIVE STRATEGIES FOR IP CASES**

Intellectual property cases are complex and require a great depth of strategy to address each client's overarching business goals. James prides himself on being able to find novel and innovative arguments based on complex fact patterns and aligning his clients' business interests with their litigation needs.

**Litigation Requires Curiosity**

Litigation requires curiosity; attorneys must enjoy seeking new challenges, arguments, and ideas to best serve their clients. As an inquisitive litigator, James is passionate about new technology as well as discovering how innovative techniques and methods can benefit his clients.



James received his J.D. from the University of California, Hastings College of Law. He has been selected for inclusion in Super Lawyers Rising Stars Edition lists each year from 2013 to 2019. He has also authored multiple publications, including:

- Chapter Editor, *Annual Review of Intellectual Property Law Developments,* American Bar Association, Intellectual Property Section (2011).
- Karen Boyd and James Beard, *Patent Marking: True AND False* in 11th Annual Silicon Valley Advanced Patent Law Institute, Advanced Patent Law Institute (2010).
- James Beard, *Note: A Better Carrot: Incentivizing Patent Reexamination,* 1 Hastings Sci. & Tech. L.J. 169 (2009).
- James Beard and Albert Halluin, *An Analysis of CIGS Solar Cell Technology,* 6 Nano. L. & Bus. 19 (2009).
- James Beard, *The Limits of Licensing: Quanta v. LGE and the New Doctrine of Simultaneous Exhaustion,* 2008 UCLA J. L. Tech. 3 (2008)
- James Beard, *Weeds in the Docket: Patent Continuation Reform and Its Effects on the Biotechnology Industry,* 90 J. Pat. & Trademark Off. Soc'y 423 (2008).

In his spare time, James enjoys downhill skiing, road cycling, home brewing, and Texas-style barbecue.

## REPRESENTATIVE CASES

Represented plaintiff and counter-defendant as lead counsel in multi-forum patent and trade dress dispute. Secured dismissals with prejudice of patent claims, six denials of institution of petitions for inter partes review, and an amicable settlement agreement was reached dismissing all claims between the parties.

**Before joining, James was involved in representations including:**

Represented an HVAC manufacturer in multi-patent dispute, that resulted in a final verdict of non-infringement in favor of the client and additional verdicts of invalidity for numerous asserted claims.

Represented a consumer products manufacturer in a multi-forum dispute spanning district court, the International Trade Commission, and the Court of International Trade, which resulted in an amicable resolution.

Represented a consumer products manufacturer in a patent dispute relating to the use of QR codes. Secured a stipulation of dismissal with prejudice following filing of a motion to dismiss and exchange of invalidity positions.

## EDUCATION

University of California, Hastings College of the Law,
   *J.D., 2009, Executive Editor, Hastings Communications & Entertainment Law Journal*

University of California, Berkeley,
   *B.S., Political Science, Religious Studies, 2006, Highest Honors in Religious Studies; Distinction in General Scholarship*

## ADMISSIONS

Colorado State Bar
California State Bar
Washington State Bar

## PUBLICATIONS & SPEAKING
### Publications

INSIGHT: How Covid-19 Changed the Future of Litigation, Co-Authored with Heather Kliebenstein, Bloomberg Law (May 7, 2020)

Best Practices For Managing Litigation During Pandemic, Co-Authored with Heather Kliebenstein, Law360 (April 23, 2020).





# EXHIBIT 10



MENU ☰

# The GLS Team

Management Background & Experience

## Joel Merkin 

Joel Merkin serves as a Principal at GLS and is responsible for due diligence and monitoring of patent investments.

Prior to joining GLS, Joel was a partner in the intellectual property litigation group at Kirkland & Ellis LLP in Chicago, where he practiced for over a decade. At Kirkland & Ellis, Joel's practice focused on complex patent litigation before federal district courts, the Patent Trial and Appeal Board (PTAB), the International Trade Commission (ITC), and the Federal Circuit.

Joel is a registered patent attorney and uses his patent litigation experience and engineering background to evaluate patent opportunities, particularly in the high-tech space. Joel's patent experience includes working with a wide range of technologies, including computer hardware and software, communication systems, consumer electronics, and medical devices. He has significant experience in all phases of patent litigation, including practicing in many of the nation's most popular patent venues, and arguing and obtaining a complete appellate victory before the Federal Circuit. Joel also represented both patent owners and petitioners in over 75 PTAB proceedings, including arguing over a dozen cases before the PTAB.

Joel holds a J.D. and B.S. in Computer Engineering from the University of Illinois.

## Meet the Team

For years, the GLS Capital team has been a united front in designing litigation finance solutions for businesses and law firms. Our principals rely on years of experience as underwriters at the world's largest litigation finance providers and as litigators at elite law firms.

# EXHIBIT 11

# KIRKLAND & ELLIS

# Greg Polins

Partner  /  Intellectual Property
greg.polins@kirkland.com
Chicago +1 312 862 3511



## Practices

- Intellectual Property
- Patent Infringement Litigation
- Advertising, Marketing & Promotions
- Patent Office Post-Grant Review Proceedings
- Trade Secrets Litigation
- Trademark Litigation & Counseling
- Open Source Software
- Cybersecurity & Data Privacy

## Overview

Greg Polins has litigated cases at both the trial and appellate stage in federal and state courts throughout the country, including patent infringement, trade secret, trademark infringement, false advertising, and product liability litigation. In addition to substantial trial experience, Greg has experience with other avenues of dispute resolution, including *inter partes* review and arbitration proceedings. Greg's cases have involved a wide range of technologies such as media streaming, electronic asset

protection, wireless technologies and protocols, semiconductor manufacturing, mechanical design, automotive technology, medical devices, and medical implants. Prior to becoming an attorney, Greg worked as a computer programmer in the financial and sports media entertainment sectors.

# Experience

## Representative Matters

### Patent Litigation

- *Adobe v. Wowza* (N.D. Cal.): Patent litigation relating to digital asset protection and media streaming technologies. Achieved summary judgment of non-infringement of two of four asserted patents. Case resolved shortly after summary judgment order.

- *ZiiLabs v. Samsung, et. al.* (E.D. Tex.): Patent litigation relating to memory management, GPU hardware, and 3D graphics processing. Achieved dismissal of six patents based on favorable claim constructions and institution of inter partes review petitions.

- *Personalized Media Communications Litigation* (E.D. Tex.): Patent litigation relating to digital asset protection and media streaming technologies. All asserted claims cancelled or dismissed based on favorable claim construction or petitions for inter partes review.

- *Intellectual Ventures v. Citibank* (S.D.N.Y.): Patent litigation relating to online banking and security technology. Achieved dismissal of asserted patent after filing and winning multiple petitions for inter partes review of asserted claims.

- *Broadcom v. Sony* (C.D. Cal.): Patent litigation related to semiconductor manufacturing and wireless technologies. Case resolved shortly after favorable Markman ruling.

- *Microspherix v. Merck* (D.N.J.): Patent litigation relating to contraceptive implants.

- *Wright Medical v. Paragon 28* (D. Colo.): Patent, false advertising, and trade secret litigation relating to surgical plates and devices.

### Non-Patent IP Litigation

- *Dyson v. SharkNinja* (N.D. Ill.): False advertising litigation relating to carpet cleaning claims. Achieved $16M+ jury verdict on behalf of client.

### Product Liability Litigation

- *In re General Motors LLC Ignition Switch Litigation*: Multidistrict federal and state civil litigation relating to voluntary recall of vehicles in 2014.

## Prior Experience

Before attending law school, Greg created software for the equities trading desk at Lehman Brothers. Greg also developed web software at ESPN.

## Pro Bono

Prior to joining Kirkland & Ellis, LLP, Greg worked as a PILI Fellow at the Chicago-Kent School of Law, representing indigent criminal defendants. During law school, Greg also worked on behalf of the Michigan Innocence Clinic representing innocent defendants in criminal appeals and re-trials.

# More

## Credentials

### Admissions & Qualifications

- 2012, Illinois

———

### Education

- University of Michigan Law School, J.D., *magna cum laude*, 2012
- Rensselaer Polytechnic Institute, B.S., Computer Science, *magna cum laude*, 2005

# News & Insights

- 25 January 2021 Award
  Client Service All-Stars 2020
- 04 October 2018 In the News Disputes Promotions Dominate Kirkland's Class of 2018
- 01 October 2018 Press Release Kirkland Announces New Partners

# EXHIBIT 12



# Rajat Khanna

Associate
Chicago Office
Direct Tel: -+1 312 705 7491
rajatkhanna@quinnemanuel.com

## Biography

Rajat Khanna is an associate in Quinn Emanuel's Chicago office, and his practice focuses on high-stakes patent litigation. He has represented a variety of technology companies in federal court, at the ITC, and in AIA proceedings before the USPTO. Rajat's cases have involved a wide range of technologies, including digital rights management (DRM), data encryption, communications and network systems, databases, and mobile computing. Rajat is also actively involved in pro bono service and has helped clients in matters involving disability benefits, domestic violence, and family law.

Before attending law school, Rajat worked as an engineer for over five years at Motorola, Inc. where he helped develop hardware, software, and manufacturing strategy for radio infrastructure systems.

## Education

**Indiana University Maurer School of Law**

(J.D., *cum laude*, 2014)

*Indiana Journal of Global Legal Studies:*

Managing Editor

**University of Texas at Austin**

(B.S., Electrical Engineering, 2004)

## Admissions

- The State Bar of Illinois

## Languages

- Hindi
- Punjabi

## Publications and Lectures

Terminating AIA Post-Grant Proceedings, THE PATENT LAWYER 33-35, (May 2016)

Procedural Grounds for Raising a Section 101 "Alice" Motion, 26 AMERICAN BAR ASSOCIATION'S INTELLECTUAL PROP. LITIG. NEWSLETTER 4 at 2–9, (Summer 2015)

Reissue Proceedings: Another Twist in the Tale of AIA Post-Grant Review, Intellectual Prop. Magazine 36–37, (Mar. 2015)

# EXHIBITS 13-15
# REDACTED IN THEIR ENTIRETY