## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WI-LAN INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 15-379-LPS |
| | : | |
| SHARP ELECTRONICS CORPORATION, | : | |
| | : | |
| Defendant. | : | UNSEALED ON APRIL 26, 2022 |
| | : | |
| WI-LAN INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 15-788-LPS |
| | : | |
| VIZIO, INC., | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM ORDER

Pending before the Court is Plaintiff Wi-LAN Inc.'s ("Wi-LAN") motion for reconsideration of the Court's February 3, 2022 Order (D.I. 565)[1] (the "Order") granting in part and denying in part the motions brought by Defendants Sharp Electronics Corporation ("Sharp") and VIZIO, Inc. ("VIZIO," and, together with Sharp, "Defendants") for a determination that this case is exceptional and for attorneys' fees and related costs under 35 U.S.C. § 285 (D.I. 567).

Having reviewed the parties' submissions (D.I. 567, 572 & Ex. 1), **IT IS HEREBY ORDERED** that, for the reasons that follow, the reconsideration motion (D.I. 567) is **GRANTED IN PART** and **DENIED IN PART**.

A motion for reconsideration is governed by Local Rule 7.1.5.  *See, e.g.*, *Helios*

---

[1] Docket citations are made to C.A. No. 15-379 and apply equally to corresponding filings in C.A. No. 15-788.

*Software, LLC v. Awareness Techs., Inc.*, 2014 WL 906346, at *1 (D. Del. Mar. 5, 2014).   A motion for reconsideration "must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice."   *Parkell v. Frederick*, 2019 WL 1435884, at *1 (D. Del. Mar. 31, 2019).   Reconsideration may be appropriate where "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the court by the parties, or has made an error not of reasoning but of apprehension."   *Wood v. Galef-Surdo*, 2015 WL 479205, at *1 (D. Del. Jan. 26, 2015).

"A motion for reconsideration is not properly grounded on a request that a court rethink a decision already made."   *Smith v. Meyers*, 2009 WL 5195928, at *1 (D. Del. Dec. 30, 2009); *see also Glendon Energy Co. v. Borough of Glendon*, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993).   It is not an opportunity to "accomplish repetition of arguments that were or should have been presented to the court previously."   *Karr v. Castle*, 768 F. Supp. 1087, 1093 (D. Del. 1991). While a decision on a motion for reconsideration is within the discretion of the Court, such motions "should only be granted sparingly."   *Kavanagh v. Keiper Recaro Seating, Inc.*, 2003 WL 22939281, at *1 (D. Del. July 24, 2003).

Wi-LAN requests that the Court reconsider its Order granting Defendants' motions, or, in the alternative, tailor its fee award to relate to Wi-LAN's conduct during a narrower window of time.   (*See* D.I. 567 at 8)   In support, Wi-LAN argues that the Court misapprehended the appropriate start and end dates for the period of attorneys' fees, as well as other facts relevant to its decision to award fees.   (*See id.* at 2-8)

Previously, the Court determined that this case was exceptional based on Wi-LAN's conduct with respect to the '654 patent after April 26, 2018 – when Wi-LAN obtained the last of

the foreign third party "system-on-chip" ("SoC") manufacturers' declarations – through the

Court's entry of final judgment for Defendants as to the '654 patent on September 12, 2019.

(*See* D.I. 565 at 9)   In Wi-LAN's view, a more appropriate window of time (even on the Court's

reasoning) is between December 19, 2018 – when, during oral argument on their summary

judgment motion, Defendants purportedly first "challenge[d] the admissibility of the source code

and SoC declarations (as a whole)" – and the Court's entry of summary judgment on February

14, 2019.[2]   (D.I. 567 at 1)   The Court agrees with part of Wi-LAN's analysis.

As to the appropriate start date, Wi-LAN's arguments are unpersuasive.   In identifying

the date by which Wi-LAN should not have continued to assert the '654 patent, the Court

explained that, although "multiple dates could be justified based on the evidence," the date it had

"determined is most fair to use is April 26, 2018."   (D.I. 565 at 7)   The Court's view remains

unchanged.   As Defendants note, Wi-LAN contends that liability for its conduct should only

attach "when Defendants point out what Wi-LAN already knew or must have known."   (D.I.

572 at 8)   This approach lacks merit, both in the context of this case and as a broader principle.

(*See id.*) ("Wi-LAN's approach would . . . undermine [the fee award's] purpose [of deterrence]

by providing litigants an incentive to knowingly engage in baseless litigation maneuvers and

wait and see if their opponents spend vast sums to try to knock back each meritless approach.")

Wi-LAN is correct that, by April 26, 2018, Defendants had not yet filed a motion for

summary judgment raising admissibility challenges.   (*See* D.I. 567 at 2)   But Wi-LAN's

suggestion that it "had no way of grasping that its source-code evidence might be inadmissible

until Defendants raised the issue" is wrong.   (D.I. 572 at 5)   Instead, the record establishes that

---

[2] Alternatively, Wi-LAN proposes a start date of October 23, 2018, when Defendants filed their
motion for summary judgment of noninfringement.   (D.I. 567 at 4 n.1, 8)

Wi-LAN knew or should have known by that date that it did not have sufficient admissible evidence to sustain its burden on infringement.   As the Court has noted, Wi-LAN understood early in this case that to prove direct infringement, it would need source code from third-party SoC manufacturers for the period of 2009 to 2017.   (*See, e.g.*, D.I. 565 at 4)   By April 26, 2018, Wi-LAN knew that the best evidence it could obtain was a single version of source code from 2017 and accompanying declarations stating that there are no material differences between that version of the code and any versions used through 2009.   (*See id.* at 6-7)   And Wi-LAN likewise knew by then that it probably could not get even this limited evidence admitted at trial.

As Defendants have noted, the declarations could not "substitute for Wi-LAN actually obtaining code going back to 2009 (which it admittedly did not do)."   (D.I. 332 at 2)   Further, MediaTek – whose chips accounted for "something in the order of 92 percent of the [accused] chips," according to Defendants (D.I. 572 Ex. 1 at 50; *see also* D.I. 418 at 1 (referring to MediaTek as "the dominant SoC manufacturer")) – told Wi-LAN in April 2017 that it could not produce anyone who could state under oath that there are no "material differences" among the chips manufactured over a period of nearly eight years (D.I. 547-1 Ex. 2 at 3).   Moreover, almost all of the declarations were obtained before the Court issued its claim construction order in this case, raising the question of how the declarants (or anyone) could have known what distinctions were "material."   (*See* D.I. 565 at 7-8)

As Defendants noted well before filing their summary judgment motion, Wi-LAN faced an "insurmountable" failure of proof with respect to the '654 patent.   (D.I. 332 at 2)   It was unreasonable for Wi-LAN to think it could overcome this failure with just one version of source code and unreliable declarations from declarants who would not appear at trial.

As the Court already concluded, these facts, as well as the apparent lack of any viable

4

strategy by Wi-LAN with respect to admissibility, provide ample support for the Court's

conclusion that April 26, 2018 is the most appropriate start date for the period of attorneys' fees.

(*See* D.I. 565 at 7-8)

Further, the Court agrees with Defendants that, as to the appropriate start date, Wi-LAN

"merely disagree[s] with the Court's reasoning," and has not "demonstrate[ed] a

misapprehension of facts or the law."   (D.I. 572 at 2-3)   This provides further support for the

Court's decision to deny the request for reconsideration of this aspect of its Order.

As to the appropriate end date, on reconsideration the Court agrees with Wi-LAN that

during the period between the Court's entry of summary judgment and its entry of final judgment

as to the '654 patent, "[t]here was no perpetuation of the 'exceptional' conduct found by the

Court."   (D.I. 567 at 5)   While Defendants are correct that, during that time, they incurred costs

as they prepared briefing related to final judgment on the '654 patent, at that time the parties

were "simply engaged in disputes as to how exactly to resolve the underlying case prior to

appeal."   (*Id.*)   Having reconsidered the issue, the Court finds it made an error of apprehension;

it overlooked the fact that there is no causal connection between Wi-LAN's misconduct and the

fees expended by Defendants between February 14, 2019 and September 12, 2019.   *See*

*generally Glendon Energy*, 836 F. Supp. at 1122 ("[A] motion for reconsideration addresses . . .

factual . . . matters that the Court may have overlooked . . . .").   Given the absence of

misconduct during that period (i.e., February to September 2019), the parties – reasonably – did

not focus on it during briefing and argument.   Nor did the Court.   Relatedly, the Court does not

view Wi-LAN's argument relating to this period as one that "should have been presented"

previously, *Karr*, 768 F. Supp. at 1093, as it did not become particularly relevant until ***after*** the

Court issued its Order establishing the pertinent window of time.

Upon reconsideration, the record does not reveal any conduct by Wi-LAN after February 14, 2019 that the Court should be seeking to deter.   Therefore, the Court exercises its discretion to modify its Order and sets the end date for the period of attorneys' fees to February 14, 2019, the date it entered summary judgment in favor of Defendants.   *See In re Rembrandt Techs. LP Pat. Litig.*, 899 F.3d 1254, 1279 (Fed. Cir. 2018) ("[T]he amount of the award must bear some relation to the extent of the misconduct.").

Wi-LAN argues the Court misapprehended other facts relevant to its decision even to award any attorneys' fees.   (*See* D.I. 567 at 6-8)   For example, in Wi-LAN's view, the Court's findings as to the unreliability of the SoC declarations and source code do not apply to the evidence Wi-LAN obtained from Sigma Designs ("Sigma").   (*Id.* at 6)   As Defendants point out, however, even if this were true, "Sigma manufactured at most one chip, and there can be no credible claim that advancing a case when Wi-LAN knew it could not prove infringement for dozens of chips and millions of televisions was anything but exceptional."   (D.I. 572 at 9) Since the other third-party SoC manufacturers accounted for virtually all of the chips at issue, Wi-LAN's arguments as to Sigma do not render this case non-exceptional.   (*See id.*)

Wi-LAN next argues that, in addition to the SoC declarations and source code, it also relied on separate, admissible testing testimony from its expert, Dr. Ionut Mirel, to demonstrate infringement.   (*See* D.I. 567 at 7)   This argument fails for the same reason as Wi-LAN's arguments regarding Sigma: the testing, at best, might establish a small portion of the alleged infringement.   (*See* D.I. 572 at 10)   Wi-LAN knew from the start that it could not rely solely on testing to prove the full scope of the infringement allegations it always insisted this case was about.   (*See id.*)

Relatedly, Wi-LAN claims it could have proven infringement based on Dr. Mirel's

review of the native source code and declarations from software engineers with knowledge of the

code.   (*See* D.I. 567 at 7)   Wi-LAN argues that the facts relied on by Dr. Mirel were "of a type

reasonably relied upon by experts in the field."   (*Id.*)   As both this Court and the Federal Circuit

have explained, however, Wi-LAN did not show that source code experts reasonably rely on

***unauthenticated*** source code.   *See Wi-LAN Inc. v. Sharp Elecs. Corp.*, 992 F.3d 1366, 1376

(Fed. Cir. 2021); D.I. 487 at 9-10.

In sum, the Court concludes that this case was exceptional based on Wi-LAN's conduct

with respect to the '654 patent during the period of April 26, 2018 through February 14, 2019.

Turning next to the appropriate amount of fees to order Wi-LAN to pay Defendants, the

Court has considered Wi-LAN's objections to the fees sought by Defendants (consistent with the

Court's February 3, 2022 Order) (*see* D.I. 566) and Defendants' responses (*see* D.I. 570).   Wi-

LAN primarily objects to Defendants' use of Defendants' attorneys' actual billed rates to

calculate the total requested fee award of over $4.2 million.   (D.I. 566 at 1)   Wi-LAN urges the

Court instead to use an hourly rate of $500 to calculate the proper lodestar amount – that is, "a

reasonable hourly rate [multiplied] by the reasonable number of hours required to litigate a

comparable case."   *Lumen View Tech. LLC v. Findthebest.com, Inc.*, 811 F.3d 479, 483 (Fed.

Cir. 2016).   Relying on excerpts from the American Intellectual Property Law Association's

("AIPLA") 2019 Report of the Economic Survey, Wi-LAN estimates that Philadelphia IP

attorneys, on average, billed approximately $490 per hour during the relevant period.   (*See* D.I.

566 at 2) (citing D.I. 566-1 at 5-6)   Further, according to AIPLA's 2019 Report, a total award of

nearly $2.9 million that would result from applying an hourly rate of $500 is more consistent

with the cost of typical patent litigation during the relevant period.   (*See id.*) (citing D.I. 566-1 at

4)

Defendants respond that the AIPLA materials on which Wi-LAN relies are not reliable, for reasons including that they contain hearsay.[3]   (D.I. 570 at 3, 5)   The Court agrees with Defendants that Wi-LAN has not established that $500 was the prevailing market rate for Philadelphia.   (*See id.* at 3)   More importantly, the rate proposed by Wi-LAN does not account for the skill and experience of Defendants' actual attorneys or the other circumstances of this case.   (*See id.* at 3-4)

In the Court's view, the more appropriate hourly rates to apply are the actual rates paid by Defendants for Defendants' attorneys' work in defeating Wi-LAN's accusations.[4]   (*See id.* at 4)   The Federal Circuit has explicitly approved the award of attorney fees under § 285 at the rates that the attorneys actually charged.   *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1311 (Fed. Cir. 2019) ("We take no issue with the district court's award of attorneys' fees at the attorneys' billing rates without adjusting them to Delaware rates.").   Here, Defendants, faced with serious allegations of patent infringement (and large alleged damages), retained highly experienced patent litigators, who billed based on their expertise and the specific circumstances of this case (including, for example, a 10% discount for Sharp from Kirkland & Ellis, which obtained the representation following a competitive bidding process).   *See, e.g.*, *Gloucester*

---

[3] Other issues Defendants identify with Wi-LAN's reliance on AIPLA's 2019 Report include: the data was derived from an e-mail invitation to participate in a survey that yielded only an 11.1% response rate, and the average billing rates from the "Philadelphia CMSA" region appear to be based on information collected from only four firms, "with no explanation of their relative size or the experience and expertise of the attorneys that allegedly responded."   (D.I. 570 at 3) (citing D.I. 570-1 Ex. 3 at 1, F-22)

[4] Defendants note that, although the Third Circuit has not yet ruled on this issue, other circuits have recognized that an attorney's actual billing rate is presumptively reasonable if it is comparable to rates provided for similar services performed by similarly skilled and experienced attorneys.   (D.I. 570 at 4) (citing *Jeffboat, LLC v. Dir., Off. of Workers' Comp. Programs*, 553 F.3d 487, 490 (7th Cir. 2009); *Woodland v. Viacom Inc.*, 255 F.R.D. 278, 280-81 (D.D.C. 2008))

*Cnty. Improvement Auth. v. Gallenthin Realty Dev., Inc.*, 2011 WL 3328474, at *2 (D.N.J. Aug. 1, 2011).   Further, relying on the 2019 Valeo Partners LLC's Attorney Hourly Rate Report (*see* D.I. 570-1 Exs. 13-15), Defendants have shown their rates are comparable to the prevailing market rate "for similar services by lawyers of reasonably comparable skill, experience and reputation."   *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *see also Regeneron Pharms., Inc. v. Merus N.V.*, 2018 WL 3425013, at *4-5 (S.D.N.Y. June 25, 2018) (finding Kirkland's rates for IP litigation reasonable).

Additionally, and importantly, this Court remains of the view that the appropriate "market" for assessing rates in a high-stakes patent litigation like the instant case is the market for national (and Delaware) counsel who litigate patent cases in Delaware.   *See, e.g.*, *Belcher Pharms., LLC v. Hospira, Inc.*, 2022 WL 606075, at *5 (D. Del. Feb. 3, 2022) ("[I]n my view, the relevant market here is the market for national counsel that practices patent litigation in the District of Delaware.").   The Court simply disagrees with Wi-LAN's contention that the only proper comparators for all patent litigators practicing in this Court are Delaware lawyers (or even lawyers in the broader "Philadelphia" market).

For these reasons, the Court finds Defendants' actually charged rates are reasonable and applicable.

Wi-LAN also argues that Defendants do not specify in their time entries how particular work related to the '654 patent, and requests that the Court order Defendants to provide more detailed descriptions.   (D.I. 566 at 2-3)   Wi-LAN, however, does not provide any significant detail as to the entries it claims lack sufficient detail.   Defendants have already agreed to remove the few entries Wi-LAN did identify as being unrelated to the '654 patent.   (D.I. 570 at 2)

The Court further finds that Defendants have made a good faith effort to comply with the

9

Court's February 3, 2022 Order.[5]   Defendants explain that "time entries that pertained to the '250 patent were removed in their entirety, and where time entries related to both the '654 and '250 patents, the '250 patent portions were removed and the entries were reduced accordingly." (*Id.*)   Defendants further point out that no time entries relate to the '774 patent, as that patent was dismissed from the case before April 26, 2018, the start date for the period of attorneys' fees being awarded.   (*Id.*)   Based on this record, and considering the fact that the Court need not engage in a "tedious, line-by-line investigation of the hours [Defendants] expended," *In re Rembrandt*, 899 F.3d at 1280, Wi-LAN's request that Defendants provide more detailed descriptions as to their entries is denied.

Accordingly, **IT IS FURTHER ORDERED** that:

1. Wi-LAN's objections (D.I. 566) are **OVERRULED**.

2. No later than **April 27, 2022**, the parties shall submit a proposed order, consistent with this ruling, that identifies the amount of fees to be awarded to Defendants, which shall be adjusted to reflect the narrower window of time set out in this Order.   The submitted order should be one the Court can sign and conclude this case and put it in a posture where one or both sides could, if it chooses, take an appeal.

3. Because this Memorandum Order is filed under seal, the parties shall meet and confer and, no later than **3:00 p.m.** on **April 26, 2022**, submit a proposed redacted version, accompanied by a supporting memorandum detailing how, under applicable law, the Court may

---

[5] By contrast, Wi-LAN appears to have dodged Defendants' efforts to meet and confer ahead of filing its objections.   (*See* D.I. 570 at 1-2)

10

approve any requested redactions.   In the absence of a timely, compliant request, the Court will

unseal the entire Order.

April 25, 2022
Wilmington, Delaware

HONORABLE LEONARD P. STARK
UNITED STATES CIRCUIT JUDGE

11